FILED

2008 Mar-14  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| JULIE BEST GRIMES, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:07-CV-01397-WMA |
| | ) | |
| RAVE MOTION PICTURES BIRMINGHAM, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DEFENDANT BOSTON VENTURES MANAGEMENT, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

4307412v2

## Table of Contents

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF UNDISPUTED AND RELEVANT MATERIAL
      FACTS ....................................................................................................3

III.  ARGUMENT...........................................................................................10

      A.    Relevant Standard..........................................................................10

      B.    Boston Ventures Cannot Be Liable Under FACTA's Plain
            Meaning Because Boston Ventures Does Not Transact Business
            Using Credit Or Debit Cards And Because Boston Ventures
            Neither Printed Nor Provided Receipts To The Plaintiff Or Any
            Other Individuals............................................................................11

      C.    Boston Ventures Is Merely A Passive Investor That Does Not
            Exercise Dominance Or Control Over Rave Reviews, And Thus
            It Cannot Be Held Vicariously Liable Under Veil-Piercing
            Theory Or Common Law Agency Principles For The Acts Of
            The Rave Defendants That Allegedly Violated FACTA ....................15

            1.   Boston Ventures Cannot Be Liable For Any
                 Alleged Violation Of FACTA Committed By Rave
                 Reviews Or The Rave Theaters Under A Veil-
                 Piercing Theory.......................................................................15

            2.   Boston Ventures Cannot Be Liable For Any
                 Alleged Violation Of FACTA Committed By Rave
                 Reviews Or The Rave Theaters Under Common
                 Law Agency Principles ............................................................20

      D.    Boston Ventures' Motion For Summary Judgment Should Be
            Granted Because FACTA Is Unconstitutional On Its Face And
            As Applied To Boston Ventures ......................................................21

IV.   CONCLUSION........................................................................................22

CERTIFICATE OF SERVICE

i

## I.     __Introduction__

Defendant Boston Ventures Management, LLC ("BV") submits this memorandum in support of its Motion For Summary Judgment ("Motion").  This action was initiated by plaintiff Julie Best Grimes ("Plaintiff") against Rave Reviews Cinemas, LLC ("Rave Reviews") and several of Rave Reviews' wholly-owned movie theaters ("Rave Theaters").[1]  The Plaintiff alleges willful violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. §§ 1681, *et seq.* ("FACTA"), and she seeks to bring this action on behalf of herself and a class of persons similarly situated in the United States.  Second Amended Complaint, at ¶ 1.

FACTA, which amended the Fair Credit Reporting Act ("FCRA"), provides, in relevant part, that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681c(g)(1).  The Plaintiff alleges that the Rave Defendants willfully and repeatedly violated this provision by printing credit/debit card receipts that included either (a) more than the last five digits of the credit or debit card number or (b) the expiration date of the credit or debit card used.  Second Amended Complaint, at ¶ 1.

---

[1]     Rave Reviews and the Rave Theaters are referred to herein collectively as the "Rave Defendants" or "Rave."

1

In an obvious effort to reach into another pocket, the Plaintiff has included BV as a defendant, alleging that BV, as an equity interest-holder of Rave Reviews, violated FACTA because it allegedly "was/is involved in the business of Rave Review[s]" (and its subsidiary movie theaters) and "participated in the violation" of the statute. Id. at ¶ 5. The Plaintiff also claims that BV "accepts credit cards or debit cards for the transaction of business" under the FCRA. Id. at ¶ 6. These allegations, in their entirety, are without merit.

Summary judgment should be entered for BV on three independent grounds. First, section 1681c(g) of FACTA cannot be applied to BV, and thus BV cannot be liable, either independently or vicariously, for the alleged violations of the Rave Defendants. Under the plain meaning of section 1681c(g), liability can only be imposed on an entity that both (a) accepts credit or debit cards for the transaction of business, and (b) printed and provided the customer receipts in question. In this case, the Plaintiff cannot produce any evidence establishing that BV is such an entity. Second, even if, *arguendo*, section 1681c(g) were deemed to apply to BV, BV cannot be held vicariously liable for the alleged violations of FACTA committed by the Rave Defendants, under veil-piercing, agency or other theories, because the Rave Defendants are independent entities and BV, as a passive investor, had no control over any Rave entity. Finally, and in any event, BV

2

cannot be liable under FACTA because FACTA is unconstitutional both on its face and as applied to BV.

## II.     Statement Of Undisputed And Relevant Material Facts

**The Parties.**

1.     BV is a private equity firm, established in or about 1983.  BV's Ex. 1, Declaration of Elizabeth Granville-Smith, at ¶ 4.  BV invests in private companies that focus primarily on middle-market media, information and publishing, and entertainment and communications.  Id. at ¶ 5.

2.     BV has two investment funds—BV Management Fund V and BV Management Fund VI—that have equity interests in Rave Reviews.  Id. at ¶ 6.

3.     Rave Reviews is a limited liability company ("LLC") organized in Delaware.  Id. at ¶ 7.

4.     The individual Rave Theaters that are defendants in this lawsuit are wholly-owned by Rave Reviews.  Id. at ¶ 8.

**Boston Ventures Exerts No Control Over Rave Reviews.**

5.     BV is not involved with the day-to-day management of Rave Reviews or any other Rave entity.  Id. at ¶ 13.

6.     BV possesses no management authority over any particular Rave movie theater.  Id. at ¶ 14.  Rave Reviews has a "fully developed [and] experienced management team."  BV's Ex. 2, Deposition of Elizabeth Granville-Smith, at p.

3

12.    That management team is responsible for Rave's day-to-day business operations.  BV's Ex. 1, Declaration of Elizabeth Granville-Smith, at ¶ 15.

7.    BV and Rave Reviews are totally independent and distinct entities. Id. at ¶ 12.  They each have separate corporate headquarters.  Id. at ¶ 16.  Rave Reviews maintains its own bank accounts, and files tax returns separate from BV. Id. at ¶¶ 17, 18.

8.    BV personnel Roy F. Coppedge, III, Elizabeth Granville-Smith, and Joseph E. Casey are (or were during the relevant time period) among the members of Rave Reviews' Board of Managers ("Board").  Id. at ¶¶ 19, 20.  During the relevant time period, the other members of Rave Reviews' Board were Tom Stephenson and Scott Potter, each of whom has no affiliation with BV.  Id. at ¶ 21. Rave Reviews' Board is responsible for the general business strategy of the company, and helps to maintain the financial health of the company.  Id. at ¶ 22. The Board does not control the day-to-day operations of the business.  Id. at ¶ 23. The Board meets formally four times per year.  Id. at ¶ 24.

9.    BV has not made any organizational or business model changes that relate in any way to any Rave entity or business.  Id. at ¶ 25.

**Conduct Allegedly Violating FACTA.**

10.    The Rave Theaters generate credit/debit card receipts to customers in the following ways: (1) at ticket box offices—a customer receipt is automatically

4

generated; (2) at automated ticket kiosks—a customer receipt is automatically generated; and (3) at concession stands—credit/debit card transactions are processed but receipts are not generated unless specifically requested by the customer, at which time a receipt is prepared. BV's Ex. 3, Rave Defendants' Response to Plaintiffs' First Set of Interrogatories, at Int. No. 22, p. 14.

11.     When the Rave Defendants opened their respective theaters, they performed what they believed was a global configuration of their relevant software to both truncate the credit/debit card number to show only the last four digits and to mask the expiration date on customer receipts for credit/debit card transactions. Id. at Int. No. 7, p. 5. The Rave Defendants followed the instructions of their software provider, Radiant Systems, Inc. ("Radiant"), and the prompts of the initial installation program in order to mask expiration dates and all but four digits of the card number. Id. at Int. No. 7, p. 5-6.

12.     Unbeknownst to the Rave Defendants, the software used to truncate card numbers required additional configuration to be performed at each point of sale ("POS") terminal. Id. at Int. No. 7, p. 6. This additional configuration was not instructed at the time of initial installation. Id. As a result, the Rave Defendants' kiosks, and some of its box offices, printed receipts showing expiration dates and/or the first four and last four digits of a card number. Id. at Int. Nos. 7 and 33, pp. 6, 20. The dissemination of receipts containing this information from some of

5

the Rave Defendants' box offices was random.  BV's Ex. 4, Rave Defendants' Amended Answers to Plaintiff's Second Set of Interrogatories, at Int. No. 1, p. 2. Similarly, receipts containing more than the last five digits of customers' account numbers from kiosks also were disseminated randomly.  Id.  The Rave Defendants were unaware that the manner in which the software was configured (as instructed by Radiant) was allowing receipts to reflect card expiration dates and/or more than the last four digits of card numbers.  BV's Ex. 3, Rave Defendants' Response to Plaintiffs' First Set of Interrogatories, at Int. No. 33, p. 20.

13.     On or about May 5, 2007 and July 21, 2007, in random incidents, Plaintiff Julie Best Grimes ("Grimes") purchased movie tickets at individual Rave theaters and received printed receipts containing the expiration date of Grimes' credit card.  BV's Ex. 5, Rave Defendants' Responses to Plaintiff's First Set of Requests for Admission, at p. 2-3.

14.     Within days of receiving notice of this lawsuit in late July 2007, the Rave Defendants, with instructions from Radiant, reconfigured the software in order to mask all expiration dates and card numbers except the last four digits. BV's Ex. 3, Rave Defendants' Response to Plaintiffs' First Set of Interrogatories, at Int. No. 7, p. 6.

6

**The Plaintiff Has Not Suffered Any Actual Injury.**

15.     As of January 8, 2008, Grimes has not knowingly been a victim of identity theft since receiving credit card receipts from theaters operated by the Rave Defendants.  BV's Ex. 6, Deposition of Julie Best Grimes, at pp. 76, 83.

16.     Grimes knows of no one who has had his or her identity stolen originating from a receipt received from a theater operated by any of the Rave Defendants.  Id. at p. 116.

**Boston Ventures Does Not Accept Credit or Debit Cards In Its Business.**

17.     BV is not an entity that accepts credit or debit cards for the transaction of its business.  BV's Ex. 1, Declaration of Elizabeth Granville-Smith, at ¶ 9.

18.     BV neither printed nor provided to any Rave (or any other) customer—including the Plaintiff and any prospective class member—a receipt commemorating any transaction.  Id. at ¶ 10.

19.     No credit or debit card transactions, or communications involving such transactions, have occurred between BV and either the named Plaintiff or any prospective class member.  Id. at ¶ 11.

7

**Boston Ventures Exerts No Control Over, And Is Not Involved In, The Rave Defendants' Processing Of Credit Or Debit Cards.**

20.     Until BV received notice of this lawsuit, BV was not aware that any of the Rave Defendants possibly had faulty software producing, at random, non-truncated credit/debit card receipts. Id. at ¶ 26.

21.     BV has never had any communications with any credit card marketing or processing company regarding the use of cash registers or other devices to generate credit or debit card receipts at any Rave theater or otherwise. Id. at ¶ 27. BV has never had any communications with any credit card marketing or processing company regarding the truncation of certain card information on receipts provided to any customer of the Rave Defendants or to any other person. Id. at ¶ 28.

22.     BV's only internal communication regarding the alleged truncation of credit/debit card information on receipts provided by Rave Theaters occurred after the commencement of this lawsuit. Id. at ¶ 29. This communication concerned the Plaintiff's allegations in this lawsuit. Id.

23.     BV has no control—or ability to control—the information printed on credit or debit card receipts that are generated by Rave and received by Rave's customers. Id. at ¶ 30. Similarly, BV has no control—or ability to control—the programming of cash registers located in Rave Theater's automated kiosks, cash

8

registers at ticket windows, or the systems generating receipts printed by Rave customers on their personal computers. Id. at ¶ 31.

24.   BV has no, and never has had any, responsibility for ensuring that the Rave Defendants comply with the provisions of FACTA or the FCRA. Id. at ¶ 32. Except to the (possible) extent that certain of its personnel may have had general awareness of FACTA, BV was not aware of FACTA until it was served with the legal papers in this action. Id. at ¶ 33.

25.   BV had no knowledge about any company-wide ticketing system upgrades done by Rave in 2006 until this litigation commenced, and Rave Reviews' Board was not involved in any decision to upgrade Rave's ticketing systems during this time period. Id. at ¶ 34. BV had no knowledge of the kind of business transacted between Radiant and Rave. Id. at ¶ 35.

26.   BV's only communications with Rave concerning the printing of customer receipts showing more than five digits of a card number or a card expiration date occurred after this litigation had commenced. Id. at ¶ 36. BV has no knowledge regarding what expenses Rave Reviews or any other Rave entity incurred to resolve the technical issues relating to credit/debit card receipts generated by Rave. Id. at ¶ 37.

9

27.    Prior to this litigation, BV, except to the extent that certain of its personnel may (possibly) have had general knowledge, had no knowledge about how Rave's ticket terminals or kiosks worked or operated. Id. at ¶ 38.

### III.    Argument

#### A.    Relevant Standard.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In order to defeat a properly-supported motion for summary judgment, the non-moving party is required "to go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." Davis v. Equifax Info. Servs. LLC, 346 F. Supp. 2d 1164, 1167 (N.D. Ala. 2004) (summary judgment granted for defendant where plaintiff alleged violations of the FCRA). See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Where, as here, the non-moving party bears the burden of proof at trial, the non-movant must present sufficient evidence proving every element of the claims asserted to survive a motion for summary judgment. Johnson v. Equifax, Inc., 510 F. Supp. 2d 638, 644 (S.D. Ala. 2007). See also Celotex, 477 U.S. at 322. The moving party is not required to disprove every element of the plaintiff's case, but need only point out to the Court "'that there is an absence of evidence to support the non-moving

10

party's case.'" Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993)

(quoting U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437-38 (11th Cir.

1991) (en banc)); Johnson, 510 F. Supp. 2d at 644.  If the non-movant's response

consists of nothing more than conclusory allegations, the court must enter

summary judgment for the movant.  Peppers v. Coates, 887 F.2d 1493, 1498 (11th

Cir. 1989).

A dispute is not genuine if the evidence is such that a reasonable jury could

not return a verdict for the non-moving party.  Heupel v. Trans Union LLC, 193 F.

Supp. 2d 1234, 1238 (N.D. Ala. 2002) (summary judgment granted for defendant

where plaintiff alleged violations of the FCRA).  The non-moving party "need not

be given the benefit of every inference but only of every *reasonable* inference."

Id. (emphasis in original).

**B.     Boston Ventures Cannot Be Liable Under FACTA's Plain Meaning Because Boston Ventures Does Not Transact Business Using Credit Or Debit Cards And Because Boston Ventures Neither Printed Nor Provided Receipts To The Plaintiff Or Any Other Individuals.**

When the words of a statute are unambiguous "judicial inquiry is complete."

Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461-62 (2002).  Thus, a court begins

its inquiry into the meaning of a statutory provision by looking to the language of

the statute itself.  Consol. Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury, 118

F.3d 1461, 1463 (11th Cir. 1997).  If the statute's terms are unambiguous, a court

will enforce the statute's plain meaning "absent a clear indication of congressional

11

intent to the contrary." <u>Royal Caribbean Cruises, Ltd. v. United States</u>, 108 F.3d 290, 292 (11th Cir. 1997).

FACTA was signed into law in 2003 with the goal of, among other things, helping to combat identity theft by prohibiting certain merchant behavior. The FACTA provision at issue in this case states that "no person that *accepts credit cards or debit cards for the transaction of business* shall *print* more than the last 5 digits of the card number or the expiration date upon any receipt *provided to the cardholder* at the point of sale or transaction." 15 U.S.C. § 1681c(g)(1) (emphasis added).[2]

Section 1681c(g) is clear and unambiguous as to when FACTA's provisions apply to a particular entity. To establish that a party is liable under FACTA, the plaintiff must show that the defendant (1) is an entity "that accepts credit cards or debit cards for the transaction of business, and (2) *both printed and provided* a credit or debit card receipt to a cardholder. <u>See</u> 15 U.S.C. § 1681c(g)(1).[3]

The undisputed facts in this case demonstrate that BV (1) is not an entity that accepts credit or debit cards for the transaction of business, and (2) neither printed nor provided any receipts to the Plaintiff or to any other Rave customer.

---

[2]   A "person" is defined in FACTA as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. 1681a(b).
[3]   Thus, if any one of these elements cannot be proven by the Plaintiff, summary judgment should be granted in BV's favor. <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

BV Statement of Undisputed and Relevant Material Facts ("BV SOF") at ¶¶ 17-18. The Plaintiff has never alleged, and cannot prove, otherwise.

BV is not an entity that "accepts credit cards or debit cards for the transaction of business," and it does not own any credit/debit card POS terminals or other equipment. See id. at ¶ 17. BV is not, and has never been, in the business of selling movie tickets. See id. at ¶ 1. Rather, BV is a private equity firm whose business consists of investing in private companies. Id. BV does not generate receipts, and it has not engaged in any communications with credit card marketing or processing companies regarding the use of credit/debit cards at any Rave theater or otherwise. Id. at ¶ 21. Moreover, it is undisputed that no credit or debit card transactions, or communications involving such transactions, have ever occurred directly between BV and either the named Plaintiff or any prospective class member. Id. at ¶¶ 18, 19.[4]

For the same reasons, the plain language of FACTA precludes the Plaintiff from establishing that BV is vicariously liable for any FACTA violations allegedly

---

[4]    The legislative history of FACTA demonstrates that Congress did not intend to extend liability, either independently or vicariously, to entities not engaged in credit or debit card transactions. Congress' clear goal in passing FACTA was to limit liability to *merchants* engaging in credit or debit card transactions. Congressman Michael G. Oxley, who spearheaded the passage of FACTA in the House of Representatives, stated that the statute prohibited "*merchants* from printing more than the last five digits of a payment card on an electronic receipt." 149 Cong. Rec. H12215 (Nov. 21, 2003) (emphasis added). The Congressional Budget Office, in its statement on FACTA's private sector mandates, stated that the law applied to "individuals and businesses *that accept* credit cards." 149 Cong. Rec. E1742 (Sept. 9, 2003) (private sector mandate for H.R. 2622) (emphasis added). President George W. Bush, upon signing FACTA, announced that the law required "*merchants* to delete all but the last five digits of a credit card number on store receipts." Statement by President George W. Bush Upon Signing H.R. 2622, 2004 U.S.C.C.A.N. 1755, 1757 (Dec. 4, 2003) (emphasis added). Thus, Congress' intent is clear that FACTA was

committed by the Rave Defendants. Nothing in FACTA or the FCRA provides a basis for vicarious liability where the defendant was not the merchant involved in the transaction. In fact, the statute expressly prohibits it. Section 1681c(g) clearly states that a business is liable only if it both accepts credit or debit card transactions, and prints and provides a receipt containing excess credit/debit card information. Distorting FACTA to permit vicarious liability runs contrary to the statute's express terms and would open the door to potential liability for every non-merchant investor who has a stake, no matter how small, in any entity engaging in credit/debit card transactions with customers.[5]

---

designed to only impose liability on merchants engaging in credit and debit card transactions, and not on entities who, like BV, have no involvement in such transactions.

[5]     The only reported case BV could find addressing when vicarious liability may apply under FACTA is Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197 (C.D. Cal. 2007), where the United States District Court for the Central District of California implied that vicarious liability can only be applied to a defendant under section 1681c(g) if the defendant had directly committed all the other elements required under the statute. See id. at 1211-12. In Edwards, Toys "R" Us ("Toys") hired NCR Corporation ("NCR") to upgrade its cash register software to stay compliant with FACTA. Id. at 1203. An employee for NCR modified the "change request," which consisted of a set of rules used by NCR programmers to devise software for the upgrade. Id. at 1204. Software was produced and used consistent with this modification, resulting in the production of receipts that were not compliant with FACTA. Id. The Court held that the NCR employee's "willfulness"—a requirement to impose statutory damages under FACTA—could be imputed to Toys, and denied Toys' motion for summary judgment on the grounds that a reasonable jury could conclude that the NCR employee was an agent of Toys. Id. at 1211-12. Edwards is inapposite to this case. In Edwards, despite the willful actions of the NCR employee, Toys was (unlike BV in this case) the merchant that printed and provided the receipts to the plaintiffs. Moreover, Toys (unlike BV) is a merchant that accepts credit and debit cards for the transaction of business.

     Other cases addressing vicarious liability under the FCRA or FACTA involve either employer/employee or franchisor/franchisee relationships, none of which exist in the case at bar. See Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 964-65 (6th Cir. 1998) (involving employer/employee relationship in FCRA case); Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 972-73 (4th Cir. 1987) (involving attorney employed by credit union in FCRA case); Del Amora v. Metro Ford Sales and Serv., Inc., 206 F. Supp. 2d 947, 951 (N.D. Ill. 2002) (involving employer/employee relationship in FCRA case); Patterson v. Denny's Corp., No. 07-1161, 2008 WL 250552, at *1 (W.D. Pa. Jan. 30, 2008) (involving franchisor/franchisee relationship in FACTA case).

4307412v2

Thus, because the undisputed facts in this case, as well as the plain meaning of section 1681c(g), demonstrate that BV cannot be held either independently or vicariously liable under FACTA, summary judgment should be granted for BV.

**C.    Boston Ventures Is Merely A Passive Investor That Does Not Exercise Dominance Or Control Over Rave Reviews, And Thus It Cannot Be Held Vicariously Liable Under Veil-Piercing Theory Or Common Law Agency Principles For The Acts Of The Rave Defendants That Allegedly Violated FACTA.**

BV cannot, as a matter of law, be held vicariously liable for the alleged FACTA violations committed by the Rave Defendants, under veil-piercing, common law agency principles or otherwise.   Simply stated, there is no viable basis on which to hold BV liable because BV lacks control over the Rave Defendants' independent business operations.

**1.    Boston Ventures Cannot Be Liable For Any Alleged Violation Of FACTA Committed By Rave Reviews Or The Rave Theaters Under A Veil-Piercing Theory.**

In assessing whether a plaintiff can pierce the corporate veil and hold the equity-holders of a company liable for the obligations of the company, Alabama federal courts apply "the law of the state under which the corporation exists." See Horton Homes, Inc. v. Bandy, No. 2:07-cv-506-MEF, 2007 WL 4571251, at *2 (M.D. Ala. Dec. 26, 2007).   Thus, because Rave Reviews is an LLC organized in Delaware, Delaware law applies.   BV SOF at ¶ 3.   See generally Del. Code Ann. Tit. 6, § 18-303(a).

15

BV is not aware of any Delaware case expressly holding that the doctrine of piercing the corporate veil applies to LLCs.  However, Delaware courts have noted that "to disregard the corporate entity is a difficult task."  See, e.g., Mason v. Network of Wilmington, Inc., No. Civ.A. 19434-NC, 2005 WL 1653954, at *2 (Del. Ch. July 1, 2005) (declining to pierce the veil).  Plaintiffs can only impose liability on equity-holders of a company if they can show that those equity-holders treated the corporation as their own "instrumentality" or alter ego.  See Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 987-89 (Del. Ch. 1987) (holding that there was insufficient control to warrant veil piercing); Geyer v. Ingersoll Publ'ns Co., 621 A.2d 784, 793 (Del. Ch. 1992).

While Delaware courts consider many factors in deciding whether to pierce the corporate veil, "'the concept of complete domination by the parent is decisive.'"  Albert v. Alex. Brown Mgmt. Svcs., Inc., Nos. Civ.A. 762-N & Civ.A. 763-N, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005) (quoting Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988)).  "Ownership alone is not sufficient proof of domination or control."  Id. at *10 (holding insufficient control).  See also S. Ala. Pigs, LLC v. Farmer Feeders, Inc., 305 F. Supp. 2d 1252, 1258 (M.D. Ala. 2004) (quoting, under Alabama law, that "[t]he mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the corporate identity").  Additionally, liability should not be

16

imposed on a parent company "merely because directors of the parent corporation also serve as directors of the subsidiary." Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001), cert. denied, 534 U.S. 950 (2001). See also Loral Fairchild Corp. v. Victor Co. of Japan, Ltd., 803 F. Supp. 626, 632 (E.D.N.Y. 1992) (holding that the presence of four representatives of a parent company on a seven-member board of a subsidiary company is, by itself, insufficient to establish control even when the subsidiary is wholly-owned by the parent); United States v. Bestfoods, 524 U.S. 51, 69 (1998). Rather, the parent company's control must amount to "complete dominion" to the point that the subsidiary "no longer has legal or independent significance of its own." See Wallace v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999). Also relevant is whether the plaintiff can show that corporate formalities have not been observed, because compliance with such formalities "demonstrate[] that those in control of a corporation treated [it] as a distinct entity and had a reasonable expectation that the conventional attributes of corporateness, including limited liability, would be accorded to it." Irwin & Leighton, Inc., 532 A.2d 983 at 989.

The Plaintiff has not and cannot produce any evidence establishing that BV dominates or controls the Rave Defendants such that they are the instrumentalities or alter egos of BV. BV is a passive investor in Rave Reviews, and the Rave Defendants exist as completely independent entities. BV is not involved in the

17

day-to-day management of Rave Reviews, and it possesses no management authority over any Rave movie theater. BV SOF at ¶¶ 5, 6. The Rave Reviews' Board—of which three BV representatives are (or were during the relevant time period) members—is not involved in the day-to-day operations of the business and, instead, makes strategy and finance decisions. Id. at ¶ 8. Operational decisions are made by Rave Reviews' "fully developed [and] experienced management team." Id. at ¶ 6. The Board is not and was not involved in any decision to upgrade the ticketing systems of any Rave theater. Id. at ¶ 25.

Furthermore, BV is not (and was not) involved in the procedures and methods the Rave Defendants utilize in engaging in credit/debit card transactions with its customers. Prior to this litigation, BV was neither aware of nor involved with the actions taken by the Rave Defendants regarding the processing of credit and debit card transactions. Id. at ¶¶ 20-27. BV neither communicated with any credit card marketing or processing company regarding the processing of credit card transactions at any Rave Theaters, nor was it aware of alleged problems concerning Rave's processing software until after this lawsuit commenced. Id. at ¶¶ 20-22. BV has never been in control of the programming of machines designed to process credit/debit card transactions. Id. at ¶ 23. Consistent with this, BV does not have, and never had, responsibility for the Rave Defendants' compliance with FACTA. Id. at ¶ 24. BV has no knowledge of how Rave's ticket terminals or

18

kiosks operate.  Id. at ¶ 27.  Furthermore, BV had no knowledge of company-wide upgrades to Rave's credit card processing systems prior to this litigation, and was not involved in upgrades conducted after this litigation commenced.  Id. at ¶¶ 25, 26.

These undisputed facts—compounded by the reality that the Plaintiff cannot demonstrate that either BV or Rave disregarded any corporate formalities—are more than sufficient to warrant the entry of summary judgment in BV's favor.  The Plaintiff can only show that three of the five members of Rave Reviews' Board are (or were) BV personnel and that BV has a substantial equity interest in Rave Reviews.  Id. at ¶¶ 2, 8.  These facts alone are grossly insufficient for a reasonable jury to conclude that veil piercing should apply because, as courts have routinely held, dominance cannot be inferred solely from board membership or equity-holder status.  See, e.g., Albert, 2005 WL 2130607, at *9; Pearson, 247 F.3d at 484.  The Plaintiff must present evidence that go beyond these facts, and she cannot do so. Thus, as a matter of law, there is no basis for BV to be held vicariously liable for the alleged conduct of the Rave Defendants under veil-piercing principles.

19

2. **Boston Ventures Cannot Be Liable For Any Alleged Violation Of FACTA Committed By Rave Reviews Or The Rave Theaters Under Common Law Agency Principles.**

A parent corporation may be liable for the acts of its subsidiary only if the plaintiff can show that the subsidiary has been so controlled as to render it an agent of its parent, and that the subsidiary acted pursuant to some form of authority— either actual or apparent. See Potera v. Winn Dixie of Montgomery, Inc., 996 F. Supp. 1418, 1425 (M.D. Ala. 1998). See also Ledlow v. Goodyear Tire & Rubber Co. of Ala., 189 So. 78, 80 (Ala. 1939) (holding that controlling ownership of stock is insufficient to show agency relationship). "Agency is the 'fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and *subject to his control*, and consent by the other so to act.'" Carr v. Stillwaters Dev. Co., LP, 83 F. Supp. 2d 1269, 1279 (M.D. Ala. 1999) (quoting Restatement (Second) of Agency § 1 (1958)) (emphasis added). Control is essential to the finding of an agency relationship. Id.

For the same reasons stated above, the Plaintiff cannot establish that BV controlled (or controls) Rave Reviews or any of the Rave Defendants in such a manner that any agency relationship could be deemed to exist. As noted above, the mere facts that BV personnel are members of Rave Reviews' Board and that BV owns an equity interest in Rave Reviews do not permit the Plaintiff to surmount the threshold necessary to demonstrate control. See Potera, 996 F. Supp. at 1425

20

(holding that no agency relationship existed where (a) the parent supermarket company wholly-owned its subsidiary, (b) each entity shared some common managers, and (c) each entity maintained separate bank accounts, filed separate tax returns, and had separate corporate headquarters).  As in <u>Potera</u>, BV and Rave Reviews have separate corporate headquarters.  BV SOF at ¶ 7.  Rave Reviews maintains its own bank accounts, and files tax returns separate from BV.  <u>Id.</u> Simply put, the Plaintiff can point to no evidence showing the requisite level of control.  Therefore, as a matter of law, no agency relationship exists between BV and any of the Rave Defendants.

Accordingly, there is no basis upon which BV could be held vicariously liable for the alleged conduct of the Rave Defendants.

**D.     Boston Ventures' Motion For Summary Judgment Should Be Granted Because FACTA Is Unconstitutional On Its Face And As Applied To Boston Ventures.**

The Rave Defendants have moved for summary judgment on the grounds that the relevant provisions of FACTA are unconstitutional.  BV joins in that motion, and hereby adopts and joins in the arguments made by the Rave Defendants in support of that motion.

Because the relevant provisions of FACTA are unconstitutional, BV's Motion should be granted.

## IV.    <u>Conclusion</u>

For the foregoing reasons, the Plaintiff cannot prove the claims set forth in

the Second Amended Complaint and therefore BV respectfully requests that this

Court grant this Motion for Summary Judgment.

Respectfully submitted,

BOSTON VENTURES MANAGEMENT,
LLC

By its attorneys,

/s/ A. Inge Selden III
A. Inge Selden III (SEL003)
(iselden@maynardcooper.com)
Joshua D. Jones (JON147)
(jjones@maynardcooper.com)
MAYNARD COOPER & GALE, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL  35203
Tel.:  (205) 254-1000
Fax:  (205) 254-1999

Of Counsel:

Mark D. Cahill (BBO #544693)
(mcahill@choate.com)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel.:  (617) 248-5000
Fax:  (617) 248-4000

Dated:  March 14, 2008

22

4307412v2

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2008, a true and correct copy of the foregoing was filed electronically with the Court which will automatically serve counsel of record as follows:

> Alexander W. Jones, Jr.
> William S. Pritchard, III
> Pritchard, McCall & Jones, LLC
> 800 Financial Center
> 505 North 20th Street
> Birmingham, AL 35203-2605
>
> Joseph H. Aughtman
> Beasley Allen Crow Methvin Portis & Miles, PC
> 218 Commerce Street
> Montgomery, AL 36104
>
> James W. Gewin
> Dylan C. Black
> Bradley Arant Rose & White, LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, AL 35203

I hereby also certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

> William Perry Brandt
> Heather S. Esau Zerger
> Joletta M. Friesen
> Bryan Cave LLP
> 3500 One Kansas City Place
> 1200 Main Street
> PO Box 419914
> Kansas City, MO 64141-6914

/s/ Joshua D. Jones
Joshua D. Jones

4307412v2