FILED
2008 May-09  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JULIE BEST GRIMES, *et al.*, **Plaintiffs,**<br>UNITED STATES OF AMERICA, **Intervenor-Plaintiff,**<br>v.<br>RAVE MOTION PICTURES BIRMINGHAM LLC, et al., **Defendants.** | No. 2:07-CV-01397-WMA |

| | |
|---|---|
| BOBBIE HARRIS, **Plaintiff,**<br>UNITED STATES OF AMERICA, **Intervenor-Plaintiff,**<br>v.<br>MEXICAN SPECIALTY FOODS, INC., d/b/a LA PAZ RESTAURANTE & CANTINA, **Defendant.** | No. 2:07-CV-1930-WMA |

| | |
|---|---|
| EDMUND RUSH, **Plaintiff,**<br>UNITED STATES OF AMERICA, **Intervenor-Plaintiff,**<br>v.<br>HOOTERS OF EAST BIRMINGHAM, **Defendant.** | No. 2:07-CV-2154-WMA |

| | |
|---|---|
| WILLIAM C. FLOYD, **Plaintiff,**<br>UNITED STATES OF AMERICA, **Intervenor-Plaintiff,**<br>v.<br>EXPRESS OIL CHANGE, LLC, **Defendant.** | No. 2:07-CV-2043-WMA |

**RESPONSE OF INTERVENOR-PLAINTIFF THE UNITED STATES TO
DEFENDANTS' SUMMARY JUDGMENT MOTIONS**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      STATUTORY BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Fair and Accurate Transactions Act of 2003 (FACTA). . . . . . . . . . . . . . . . . . . . . . 2

        B.      1996 amendments to FCRA's damage provisions. . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     UNITED STATES' RESPONSE TO DEFENDANTS' STATEMENTS OF "UNDISPUTED FACTS"
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      IT IS PREMATURE FOR THE COURT TO WEIGH THE CONSTITUTIONALITY OF FCRA'S
        DAMAGES SCHEME BEFORE LIABILITY IS DETERMINED AND WITHOUT EVIDENCE OF
        DEFENDANTS' RECKLESSNESS (OR CAREFULNESS) IN SEEKING TO COMPLY WITH THE
        LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     FCRA'S MINIMUM STATUTORY DAMAGES FOR WILLFUL VIOLATIONS ARE FULLY
        CONSISTENT WITH DUE PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      Defendants' due process challenges to minimum statutory damages for
                willful violations under FCRA are controlled by *St. Louis, Iron Mountain &
                Southern Railway Co. v. Williams*, 251 U.S. 63 (1919), not by standards that
                apply to jury awards of punitive damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                1.      FCRA's statutory damage range passes due process review under the
                        *Williams* test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                2.      Statutory damage ranges enacted by Congress are not subject to the
                        due process tests applied to jury awards of punitive damages. . . . . . . . . . 14

        B.      FCRA does not violate due process by authorizing statutory damages without
                proof of actual damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.   FCRA's statutory damage provisions are not "punitive" on grounds that they do not require proving actual damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.   Defendants do not have greater due process rights in class-action cases than in individual party actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.   FCRA IS NOT "VOID FOR VAGUENESS" BECAUSE IT DOES NOT IDENTIFY CRITERIA TO DETERMINE STATUTORY DAMAGES WITHIN THE $100 TO $1,000 STATUTORY RANGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV.   DEFENDANTS' OTHER CONSTITUTIONAL ARGUMENTS ARE MISPLACED. . . . . . . . . . . . . . 30

A.   Punitive damages under FCRA would not be a multiple recovery or other due process violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

B.   Equal protection does not require FCRA to give fact-finders guidance on how to determine statutory damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

C.   It does not violate due process to certify a class under FACTA.. . . . . . . . . . . . . 32

V.   PROCEDURAL AND CASE-MANAGEMENT ISSUES RAISED BY THE COURT. . . . . . . . . . . . . 33

A.   Jury instructions under FCRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

B.   The Court may approve a settlement of less than $100 per class member. . . . . . 35

C.   Pending legislation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

D.   Procedure to reduce a constitutionally excessive damage award.. . . . . . . . . . . . 37

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

APPENDIX 1: Legislative History of 1996 Amendments to FCRA'S Damage Provisions. . . . . 40

APPENDIX 2:  Civil Liability Provisions under Various Titles of the Consumer Credit Protection Act (CCPA).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

ii

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Accounting Outsourcing, LLC. v. Verizon Wireless Personal Communications*,
329 F. Supp. 2d 789 (M.D. La. 2004). ..................................................... 11, 16

*Adler v. Duval County School Board*,
206 F.3d 1070 (11th Cir. 2000) (*en banc*), *vacated*, 531 U.S. 801,
*opinion & judgment reinstated*, 250 F.3d 1330 (11th Cir. 2001). ................... 7

*Anderson v. Capital One Bank*,
224 F.R.D. 444 (W.D. Wis. 2004). .................................................... 23

*Arcilla v. Adidas Promotional Retail Operations, Inc.*,
488 F. Supp. 2d 965 (C.D. Cal. 2007). ................................................ 6, 8, 18

*Arrez v. Kelly Services, Inc.*,
522 F. Supp. 2d 997 (N.D. Ill. 2007). ................................................ 8, 16, 29

*Ashwander v. Tennessee Valley Authority*,
297 U.S. 288, 347 (1936) ............................................................ 7

*BMG Music v. Gonzalez*,
430 F.3d 888 (7th Cir. 2005). ......................................................... 34

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996). ................................................................. passim

*Behrens v. Wometco Enterprises, Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988). ..................................................... 36

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984). ........................................................ 36

*Brady v. Daly*,
175 U.S. 148 (1899). ................................................................. 19, 20

*Braxton v. Farmer's Insurance Group*,
209 F.R.D. 654 (N.D. Ala. 2002). .................................................... 32

iii

*Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*,
   492 U.S. 257 (1989)...................................................................................... 15

*Cable/Home Communication Corp. v. Network Products, Inc.*,
   902 F.2d 829 (11th Cir. 1990). ...................................................................... 28

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)............................................................................... 24, 32

*Carey v. Piphus*,
   435 U.S. 247 (1978) ..................................................................................... 19

*Centerline Equip. Corp. v. Banner Personnel Service, Inc.*,
   ___ F. Supp. 2d. ___, 2008 WL 597604 (N.D. Ill. Mar. 3, 2008). ................. 10

*Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*,
   135 S.W.3d 365 (Tex. App. 2004), *rev'd*, 184 S.W.3d 707 (Tex.),
   *cert. denied sub. nom. Kosoy v. GTE Mobilnet of Houston, Inc.*,
   548 U.S. ___, 126 S. Ct. 2941 (2006)........................................................... 11

*Cicilline v. Jewel Food Stores, Inc.*,
   ___ F. Supp. 2d ___, 2008 WL 895682 (N.D. Ill. Mar. 31, 2008). ................. 8

*City of Chicago v. Morales*,
   527 U.S. 41 (1999)......................................................................................... 6

*Concrete Pipe & Products of California, Inc. v. Construction Laborers*
   *Pension Trust for Southern California*,
   508 U.S. 602 (1993)....................................................................................... 9

*DA Mortgage, Inc. v. City of Miami Beach*,
   486 F.3d 1254 (11th Cir. 2007). .................................................................... 6

*Deposit Guaranty National Bank v. Roper*,
   445 U.S. 326, 339 (1980).............................................................................. 32

*Dikeman v. Progressive Express Insurance Co.*,
   ___ Fed. App'x ___, No. 07-10547, 2008 WL 786618
   (11th Cir. Mar. 26, 2008) (*per curiam*) (unpublished opinion). ..................... 36

*DirecTV, Inc. v. Cantu*,
   No. SA-04-CV-136-RF, 2004 WL 2623932 (W.D. Tex. Sept. 29, 2004). ...... 16

*DirecTV v. Spillman*,
   *No. Civ.A.SA-04-82-XR*, 2004 WL 1875045 (W.D. Tex. Aug. 23, 2004). ....... 8

*Douglas v. Cunningham,*
   294 U.S. 207 (1935)............................................................................ 20, 28

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,*
   50 P.3d 844 (Ariz. Ct. App. 2002).......................................................... 11, 27

*Express Valet, Inc. v. City of Chicago,*
   869 N.E.2d 964 (Ill. App. Ct. 2007). ...................................................... 16

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,*
   344 U.S. 228 (1952)............................................................................ 20, 27

*Feltner v. Columbia Pictures Television, Inc.,*
   523 U.S. 340 (1998)............................................................................ 20

*Follman v. Village Squire, Inc.,*
   ___ F. Supp. 2d. ___, No. 07-C-3767, 2007 WL 4522614
   (N.D. Ill. Dec. 18, 2007). ..................................................................... 6, 8

*Giaccio v. Pennsylvania,*
   382 U.S. 399 (1966),............................................................................ 29, 30

*Gore v. United States,*
   357 U.S. 386 (1958)............................................................................ 12

*Griffin v. Oceanic Contractors, Inc.,*
   458 U.S. 564 (1982)............................................................................ 25

*Guess?, Inc. v. Gold Ctr. Jewelry,*
   997 F. Supp. 409 (S.D.N.Y. 1998), *rev'd sub nom.*
   *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631 (2d Cir. 1998). ............... 35

*Halperin v. Interpark Inc.,*
   No. 07-CV-2161, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007)....................... 8

*Harjoe v. Herz Finance,*
   108 S.W.3d 653 (Mo. 2003) (*per curiam*). ............................................. 11, 12

*Hawaii v. Standard Oil Co. of Cal.,*
   405 U.S. 251 (1972)............................................................................ 24

*Hooters of Augusta, Inc. v. American Global Insurance Co.,*
   272 F. Supp. 2d 1365 (S.D. Ga. 2003), *aff'd,* 157 Fed. App'x. 201, 208
   (11th Cir. 2005) (*per curiam*) (unpublished decision)................................ 23

*In re Marriage of Chen & Ulner,*
  820 N.E.2d 1136 (Ill. App. Ct. 2004). ........................................................... 16

*In re Marriage of Miller,*
  879 N.E.2d 292 (Ill. 2007). ........................................................................ 11

*In re Trans Union Corp. Privacy Litigation,*
  211 F.R.D. 328 (N.D. Ill. 2002). ................................................................ 31

*In re Wood,*
  643 F.2d 188 (5th Cir. 1980). ..................................................................... 24

*Iosello v. Leiblys, Inc.,*
  502 F. Supp. 2d 782 (N.D. Ill. 2007). ......................................................... 18

*Italia Foods, Inc v. Marinov Enterprises, Inc.,*
  No. 07-C-2494, 2007 WL 4117626 (N.D. Ill. Nov. 16, 2007). ..................... 10

*Jacobs v. The Florida Bar,*
  50 F.3d 901 (11th Cir. 1995). ....................................................................... 6

*Jewell-La Salle Realty Co. v. Buck,*
  283 U.S. 202 (1931). .................................................................................. 20

*Johansen v. Combustion Engineering, Inc.,*
  170 F.3d 1320 (11th Cir. 1999) . ................................................................. 38

*Kaufman v. ACS Systems, Inc.,*
  2 Cal. Rptr. 3d 296 (Ct. App. 2003) ........................................................ 8, 11

*Kavu, Inc. v. Omnipak Corp.,*
  246 F.R.D. 642 (W.D. Wash. 2007). ........................................................ 8, 27

*Kenro, Inc. v. Fax Daily, Inc.,*
  962 F. Supp. 1162 (S.D. Ind. 1997). ...................................................... 11, 16

*Klay v. Humana, Inc.,*
  382 F.3d 1241, 1271 (11th Cir. 2004). ......................................................... 33

*Klingensmith v. Max & Erma's Restaurants, Inc.,*
  No. 07-C-0318, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007). .................. 8, 36

*Krey v. Castle Motor Sales, Inc.,*
  241 F.R.D. 608 (N.D. Ill. 2007). ............................................................. 8, 32

vi

*L.A. Westermann Co. v. Dispatch Printing Co.*,
    249 U.S. 100 (1919)................................................................... 20

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994)................................................................... 37

*Levine v. World Finance Network National Bank*,
    437 F.3d 1118 (11th Cir. 2006). ................................................ 19

*London v. Wal-Mart Stores, Inc.*,
    340 F.3d 1246, 1255 n.5 (11th Cir. 2003) . ............................... 33

*Louis Vuitton Malletier and Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567 (E.D. Pa. 2002). ...................................... 35

*Lowry's Reports, Inc. v. Legg Mason, Inc.*,
    302 F. Supp. 2d 455 (D. Md. 2004). ................................... 16, 20

*Matthews v. United Retail, Inc.*,
    248 F.R.D. 210 (N.D. Ill. 2008). ................................................ 8

*McClain v. Metabolife International, Inc.*,
    259 F. Supp. 2d 1225 (N.D. Ala. 2003) ................................... 38

*Mirfashi v. Fleet Mortgage Corp.*,
    450 F.3d 745 (7th Cir. 2006). ................................................... 36

*Mourning v. Family Publications Service, Inc.*,
    411 U.S. 356 (1973)......................................................... 10, 24, 34

*Murray v. GMAC Mortgage Corp.*,
    434 F.3d 948 (7th Cir. 2006). ........................................... 8, 18, 37

*Native America Arts, Inc. v. Bundy-Howard, Inc.*,
    168 F. Supp. 2d 905 (N.D. Ill. 2001). ................................. 11, 16

*Pacific Mutual Life Insurance Co. v. Haslip*,
    499 U.S. 1 (1991)......................................................... 12, 30, 31

*Palamara v. Kings Family Restaurants*,
    No. 07-CV-317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008)..................... 36

*Parker v. Time Warner Entertainment Co.*,
    331 F.3d 13 (2d Cir. 2003)........................................................ 27

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 809 (1985) ................................................................... 32

*Phillips Randolph Enterprises, LLC v. Rice Fields*,
  No. 06-C-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007)................................ 11, 16, 27

*Pirian v. In-N-Out Burgers*,
  No. SACV-06-1251 DOC (MLGx),
  2007 WL 1040864 (C.D. Cal. Apr. 5, 2007). .................................................. 8

*Ramirez v. Midwest Airlines, Inc.*,
  537 F. Supp. 2d 1161 (D. Kan. 2008). ...................................................... 8, 18

*Ratner v. Chemical Bank New York Trust Co.*,
  54 F.R.D. 412 (S.D.N.Y. 1972) . ............................................................. 33

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)......................................................................... 32

*Sadowski v. Medical1 Online, LLC*,
  No. 07-C-2973, 2008 WL489360 (N.D. Ill. Feb. 20, 2008). ..................................... 10, 16

*Safeco Insurance Co. of America v. Burr*,
  551 U.S. ___, 127 S. Ct. 2201 (2007)........................................................ 4

*Simpleville Music v. Mizell*,
  451 F. Supp. 2d 1293 (M.D. Ala. 2006). ...................................................... 34

*Smith v. No. 2 Galesburg Crown Finance Corp.*,
  615 F.2d 407 (7th Cir. 1980), *overruled by Pridegon v.
  Gates Credit Union,* 683 F.2d 182, 194 (7th Cir. 1982). ..................................... 12

*Solem v. Helm*,
  463 U.S. 277 (1983).......................................................................... 12

*St. Louis, Iron Mountain & Southern Railway Co. v. Williams*,
  251 U.S. 63 (1919)................................................................... passim

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
  538 U.S. 408 (2003)................................................................. passim

*TXO Production Corp. v. Alliance Resources Corp.*,
  509 U.S. 443 (1993).................................................................. 14, 17

viii

*Terra Nova Insurance Co. v. Fray-Wither*,
    869 N.E.2d 565 (Mass. 2007). ..................................................................... 24

*Texas v. American Blastfax, Inc.*,
    121 F. Supp. 2d 1085 (W.D. Tex. 2000).................................................... 11, 38

*Texas v. American Blastfax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001).......................................................... 38

*Troy v. Home Run Inn, Inc.*,
    No. 07-C-4331, 2008 WL 1766526 (N.D. Ill. Apr. 14, 2008). ........................ 8

*Troy v. Red Lantern Inn, Inc.*,
    No. 07-CV-2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007). ........................ 8

*Turner Broadcasting System, Inc. v. Federal Communications Commission*,
    520 U.S. 180 (1997).................................................................................... 12

*United States ex rel. Tyson v. Amerigroup Ill., Inc.*,
    488 F. Supp. 2d 719 (N.D. Ill. 2007), *appeals filed*, Nos. 07-2111 & 07-2113
    (7th Cir. oral arg. set for June 8, 2008). .................................................... 16

*United States v. 817 NE 29th Drive, Wilton Manors, Florida*,
    175 F.3d 1304 (11th Cir. 1999). ................................................................ 12

*United States v. Bajakajian*,
    524 U. S. 321 (1998)................................................................................... 12

*United States v. Frandsen*,
    212 F.3d 1231 (11th Cir. 2000). .................................................................. 6

*United States v. Resendiz-Ponce*,
    549 U.S. 102, 127 S. Ct. 782 (2007)............................................................. 7

*United States v. Welden*,
    568 F. Supp. 516 (N.D. Ala. 1983), *rev'd in part sub nom.*
    *United States v. Satterfield,* 743 F.2d 827 (11th Cir. 1984)........................... 31

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. ___, 128 S. Ct. 1184 (2008). .......................................................... 6

*Williams v. Illinois*,
    399 U.S. 235, 243 (1970) ............................................................................. 31

*Williamson v. Lee Optical of Oklahoma*,
    348 U.S. 483 (1955)................................................................................ 18

*Zamarippa v. Cy's Car Sales, Inc.*,
    674 F.2d 877 (11th Cir. 1982). ............................................................ 10

*Zomba Enterprises, Inc. v. Panorama Records, Inc.*,
    491 F.3d 574 (6th Cir. 2007), *reh'g en banc denied*, (6th Cir. Oct. 5, 2007),
    *petition for cert. filed*, 76 USLW 3443 (Jan. 3, 2008) (No. 07-1028). ............... 15, 17, 20

## STATUTES

Class Action Relief Act of 1995, Pub. L. No. 104-12, 109 Stat. 161
    (codified at 15 U.S.C. § 1640(*i*)) . ................................................ 26

Consumer Credit Protection Act (CCPA), Pub. L. No. 90-321,
    82 Stat. 146 (1968)................................................................................ 1

Consumer Credit Reporting Reform Act of 1996 (CCRRA),
    Pub. L. No. 104-208, secs. 2401-2422, 110 Stat. 3009-426
    to 3009-454 (codified as amended at 15 U.S.C. §§ 1681-1681v).................... 2

Copyright Act of 1790, Act of May 31, 1790, ch. 15, 1 Stat. 124. ............................ 20

Credit Repair Organizations Act, Pub. L. No. 104-208, 110 Stat. 3009-454 (1996).......... 26, 42

Fair and Accurate Transactions Act of 2003 (FACTA), Pub. L. No. 108-159,
    117 Stat. 1952. ..................................................................................... 2

Fair Credit Reporting Act (FCRA), Pub. L. No. 91-508, 84 Stat. 1114 (1970) .............. 1, 42

Statute of Anne, 1710, 8 Anne, ch. 19 (Eng.). ............................................... 20

12 U.S.C. § 3417(a)(1) (Right to Financial Privacy Act). ........................................ 21

15 U.S.C. § 1117(c) (Anticounterfeiting Consumer Protection Act of 1996). .......... 15, 26, 28, 35

15 U.S.C. § 1117(d) (Anticybersquatting Consumer Protection Act). ............................ 15, 26, 28

15 U.S.C. § 1640(a) (Truth in Lending Act, Title I of Consumer Credit Protection Act)........... 42

    15 U.S.C. § 1640(a)(2)(A). ................................................................ 10

    15 U.S.C. § 1640(a)(2)(B). ................................................................ 25

15 U.S.C. § 1640(*i*) ........................................................................................... 26

15 U.S.C. § 1679g (Credit Repair Organizations Act, Title IV of Consumer
Credit Protection Act). ................................................................................ 42

15 U.S.C. § 1679g(a)(2)(B))  26

15 U.S.C. §§ 1681-1681v (Fair Credit Reporting Act, Title VI of Consumer
Credit Protection Act). ............................................................................ 1, 2

15 U.S.C. § 1681c(g) (Fair and Accurate Credit Transactions Act of 2003).................... 3

15 U.S.C. § 1681c(g)(1).......................................................................... 2

15 U.S.C. § 1681c(g)(3) .......................................................................... 2

15 U.S.C. § 1681c(g)(3)(A) . .................................................................. 5

15 U.S.C. § 1681c(g)(3)(B) . .................................................................. 4

15 U.S.C. § 1681m ........................................................................... 23

15 U.S.C. § 1681n ................................................................... 4, 37, 42

15 U.S.C. § 1681n(a)(1)................................................................. 4, 30

15 U.S.C. § 1681n(a)(2)..................................................................... 30

15 U.S.C. § 1681*o*............................................................................ 4, 42

15 U.S.C. § 1681t(b)(5)(A) . .................................................................. 3

15 U.S.C. § 1691e(b) (Equal Credit Opportunity Act, Title VII of Consumer
Credit Protection Act). ................................................................................ 42

15 U.S.C. § 1692k (Fair Debt Collection Practices Act, Title VIII of Consumer
Credit Protection Act). ................................................................................ 42

15 U.S.C. § 1692k(a)(2)(B). .................................................................. 25

15 U.S.C. § 1692k(c). ........................................................................... 25

15 U.S.C. § 1693m (Electronic Fund Transfer Act, Title IX of Consumer
Credit Protection Act). ................................................................................ 42

xi

15 U.S.C. § 1693m(a)(2)(B). ............................................................................ 25

15 U.S.C. § 1693m(c). ..................................................................................... 25

15 U.S.C. § 2310(e). ........................................................................................ 25

15 U.S.C. § 6614. ............................................................................................. 25

17 U.S.C. § 504(c) (Copyright Act). ...................................................... 15, 26, 28

17 U.S.C. § 1203(c)(3) (Digital Millennium Copyright Act). ................. 15, 26, 28

18 U.S.C. § 2520(c)(2). .................................................................................... 22

18 U.S.C. § 2707(c) . ....................................................................................... 22

18 U.S.C. § 2710(c)(2)(A) . ............................................................................. 22

18 U.S.C. § 2724(b)(1) . ................................................................................... 22

25 U.S.C. § 305e(a)(2) ..................................................................................... 11

26 U.S.C. § 7431(c)(1)(A). ............................................................................... 22

29 U.S.C. § 732(d). .......................................................................................... 25

42 U.S.C. § 669a(c)(3)(A) . .............................................................................. 22

42 U.S.C. § 1983. ............................................................................................. 19

47 U.S.C. § 227(b)(3)(B) (Telephone Consumer Protection Act). ..................... 8, 10

47 U.S.C. § 338(*i*)(7). ..................................................................................... 22

47 U.S.C. § 551(f)(2)(A). .................................................................................. 22

50 U.S.C. § 1810. ............................................................................................. 22

## RULES

Fed. R. Civ. P. 23. ........................................................................................... 24

Fed. R. Civ. P. 23(e)(2) .................................................................................... 35

# LEGISLATIVE HISTORY

## Bills

Credit and Debit Card Receipt Clarification Act of 2007, H.R. 4008, 110th Cong. (2007)......... 37

H.R. 194, 102d Cong. (1991)................................................................................. 40

H.R. 421, 102d Cong. (1991)................................................................................. 40

H.R. 561, 104th Cong. (1995)................................................................................ 40

H.R. 619, 103d Cong. (1993)................................................................................. 40

H.R. 630, 103d Cong. (1993)................................................................................. 40

H.R. 633, 102d Cong. (1991)................................................................................. 40

H.R. 670, 102d Cong. (1991)................................................................................. 41

H.R. 909, 101st Cong. (1989)................................................................................ 41

H.R. 1015, 103d Cong. (1993)............................................................................... 40

H.R. 1197, 103d Cong. (1993)............................................................................... 40

H.R. 1566, 101st Cong. (1989).............................................................................. 41

H.R. 1751, 102d Cong. (1991)............................................................................... 41

H.R. 3596, 102d Cong. (1992)............................................................................... 45

H.R. 3740, 101st Cong. (1989).............................................................................. 41

H.R. 4122, 101st Cong. (1990).............................................................................. 41

H.R. 4213, 101st Cong. (1990).............................................................................. 41

H.R. 4278, secs. 2401-2422, 104th Cong. (1996)........................................................ 40

H.R. 4806, 102d Cong. (1992)............................................................................... 41

H.R. 5178, 103d Cong. (1994)............................................................................... 40

S. 650, secs. 401-425, 104th Cong. (as reported by S. Comm. on Banking, Housing, & Urban Affairs Dec. 14, 1995) ........................................................................................ 40

S. 709, 104th Cong. (1995) ........................................................................................ 40

S. 783, 103d Cong. (1993) (as passed by Senate May 4, 1994, and as passed with amendments by House Sept. 27, 1994) ........................................................................................ 40

S. 783, sec. 110, 103d Cong. (as passed by Senate May 4, 1994) ................................... 13

S. 2764, 101st Cong. (1990) ........................................................................................ 41

S. 2776, 102d Cong. (1992) ........................................................................................ 41

## Reports

H.R. Rep. No. 102-692 (1992) ........................................................................................ 41

H.R. Rep. No. 103-486 (1994) ........................................................................................ 40

H.R. Rep. No. 108-263 (2003) ........................................................................................ 20

H.R. Rep. No. 108-396 (2003) (Conf. Rep.) ................................................................. 3, 20

S. Rep. No. 103-209 (1993) ........................................................................................ 40

S. Rep. No. 104-185 (1995) ........................................................................................ 4, 40

S. Rep. No. 108-166 (2003) ................................................................................. 2, 17, 21

## Signing Statement

Presidential Signing Statement, 39 Weekly Comp. Pres. Doc. 1746 (Dec. 4, 2003), *reprinted in* 2004 U.S.C.C.A.N. 1755 ........................................................................ 17

## Hearings

*Amendments to the Fair Credit Reporting Act: Hearings Before the Subcomm. on Consumer Affairs & Coinage of the H. Comm. on Banking, Finance, & Urban Affairs*, 101st Cong. (1990).............................................................. 41

*Consumer Problems with Credit Reporting Bureaus: Hearings Before the Subcomm. on Consumer of the S. Comm. on Commerce, Science, & Transportation*, 102d Cong. (1992). ........................................................... 41

*Consumer Reporting Reform Act of 1993: Hearing Before the S. Comm. on Banking, Housing, & Urban Affairs*, 103d Cong. (1993). ................................... 13, 14, 40

*Consumer Reporting Reform Act of 1993: Hearing Before the Subcomm. on Consumer Credit & Insurance of the H. Comm. on Banking, Finance, & Urban Affairs*, 103d Cong. (1993). .......................................................... 11, 13, 40

*Fair Credit Reporting Act: Hearings Before the Subcomm. on Consumer Affairs & Coinage of the H. Comm. on Banking, Finance, & Urban Affairs*, 101st Cong. (1989)................................................................. 41

*Fair Credit Reporting Act: Hearings Before the Subcomm. on Consumer Affairs & Coinage of the H. Comm. on Banking, Finance, & Urban Affairs*, 102d Cong. (1991). ................ 40

*Fair Credit Reporting Act: Hearings Before the Subcomm on Consumer & Regulatory Affairs of the S. Comm. on Banking, Finance, & Urban Affairs*, 102d Cong. (1991). ..... 41

*Fair Credit Reporting Act: How It Functions for Consumers and the Economy: Hearing Before the Subcomm. on Financial Institutions & Consumer Credit of the H. Comm. on Financial Services*, 108th Cong. (2003). ........................................................ 3

*Fighting Identity Theft—The Role of FCRA: Hearing Before the Subcomm. on Financial Institutions & Consumer Credit of the H. Comm. on Financial Services* (2003)      18

*H.R. 1015; Consumer Reporting Reform Act of 1993: Hearing Before the Subcomm. on Consumer Credit & Insurance of the H. Comm. on Banking, Finance, & Urban Affairs* 103d Cong. (1993). .......................................................... 13, 14, 40

*Identity Theft: Assessing the Problem and Efforts to Combat It: Hearing Before the Subcomm. on Oversight & Investigations of the H. Comm. on Energy & Commerce*, 108th Cong. (2003)................................................................. 2, 18

**MISCELLANEOUS**

William H. Manz & Reba A. Best, *Federal Identity Theft Law: Major Enactments of the 108th Congress: A Legislative History of the Fair and Accurate Credit Transactions Act and Identity Theft Penalty Enhancement Act* (William H. Manz ed. 2005)............. 18

Kevin F. O'Malley, Jay E. Grenig, & the Hon. William C. Lee, *Federal Jury Practice & Instructions* (5th ed. 2001)............................................................................... 35

## INTRODUCTION

Defendants in these four cases appear to acknowledge printing specific credit-card information on their consumer's receipts in violation of an identity-theft measure Congress enacted in 2003. If their apparent violations are found to be "willful," defendants would be subject to $100 to $1,000 in statutory damages per violation, which would lead to large damage awards. Defendants contend that the possibility of what they consider excessive damages is contrary to due process, and that the Court should therefore declare the statutory damages provision unconstitutional.

Intervenor-Plaintiff United States of America respectfully urges that, due to these cases' current procedural posture, the Court should not yet weigh whether defendants' potential liability might be so excessive as to violate due process. Rather, if damages are ultimately awarded and the Court determines that the award is grossly excessive under the Due Process Clause, it should then reduce the award to comply with due process. Nonetheless, if the Court does consider defendants' constitutional arguments now, the United States urges the Court to find Congress's statutory damage scheme constitutional and to deny defendants' summary judgment motions. The United States also addresses some procedural questions the Court raised at the February 14, 2008, status hearing.

## STATEMENT OF FACTS

### I.   STATUTORY BACKGROUND

Beginning in 1968, Congress enacted several laws to safeguard consumers seeking credit; protect consumer privacy; and, more recently, protect consumers from identity theft. The first of these, enacted in 1968, was the Consumer Credit Protection Act (CCPA), Pub. L. No. 90-321, 82 Stat. 146 (1968). In 1970, Congress enacted the Fair Credit Reporting Act (FCRA) as Title VI of the CCPA. FCRA, Pub. L. No. 91-508, 84 Stat. 1114, 1127 (1970) (codified as amended at 15

U.S.C. §§ 1681-1681v).  Then, in 1996, Congress amended FCRA to increase consumer privacy and

enhance the accuracy of credit reporting.  Consumer Credit Reporting Reform Act of 1996

(CCRRA), Pub. L. No. 104-208, secs. 2401-2422, 110 Stat. 3009-426 to 3009-454 (codified as

amended at 15 U.S.C. §§ 1681-1681v).

### A.  Fair and Accurate Transactions Act of 2003 (FACTA)

In 2003, Congress further amended FCRA to protect consumers from identity theft.  Fair and

Accurate Transactions Act of 2003 (FACTA), Pub. L. No. 108-159, 117 Stat. 1952.  In the provision

of FACTA at issue here, Congress responded to the dramatic rise in identity theft and its increasing

toll on consumers.  To reduce identity theft, FACTA prohibits businesses from printing "more than

the last 5 digits of the [credit-]card number or the expiration date upon any [electronically printed]

receipt provided to the cardholder at the point of the sale or transaction."  FACTA, sec. 113, 117

Stat. at 1959 (codified at 15 U.S.C. § 1681c(g)(1)).  This requirement took effect January 1, 2005,

for credit-card receipt printers first put into use on or after that date; and December 4, 2006, for

credit-card receipt printers which were in use before January 1, 2005.  15 U.S.C. § 1681c(g)(3).

As a Senate committee explained, this portion of FACTA was adopted to "protect consumers

from identity thieves" and "to limit the number of opportunities for identity thieves to 'pick off' key

card account information."  S. Rep. No. 108-166, at 3 (2003).  Kayce Bell, the Chief Operating

Officer of the Alabama Credit Union, a non-profit primarily serving the University of Alabama,

testified that mandatory truncation of credit-card account numbers was a "sound security practice

that will help protect our members from identity theft."  *Identity Theft: Assessing the Problem and*

*Efforts to Combat It: Hearing Before the Subcomm. on Oversight & Investigations of the H. Comm.*

*on Energy & Commerce*, 108th Cong. 115 (2003).

Protecting consumers from identity theft was only one of the two reasons Congress enacted this federal legislation. Two States—California and Ohio—had already imposed requirements for credit-card receipts; and a dozen more were considering doing so. *Fair Credit Reporting Act: How It Functions for Consumers and the Economy: Hearing Before the Subcomm. on Financial Institutions & Consumer Credit of the H. Comm. on Financial Services*, 108th Cong. 61 (2003). To protect industry from the possibility of fifty different, possibly inconsistent, State standards, FACTA includes vigorous preemption measures. The conference committee made plain the dual intention of the federal legislation: "It is the conferees' belief that this legislation will assist the victims of identity theft, and ensure the operational efficiency of our *national* credit system by creating a number of *preemptive national standards*." H.R. Rep. No. 108-396, at 66 (2003) (Conf. Rep.) (emphases added).

The federal legislation preempts States from regulating what expiration date and credit-card account information may be printed on credit-card receipts. FACTA sec. 711(2), § 625(b)(5)(A), 117 Stat. at 2011 (codified at 15 U.S.C. § 1681t(b)(5)(A)) ("No requirement or prohibition may be imposed under the laws of any State . . . with respect to the conduct required by the specific provisions of . . . section 605(g) [the provision codified at 15 U.S.C. § 1681c(g) that prohibits printing expiration dates and requires truncating credit-card account numbers on credit-card receipts].").

### B.    1996 amendments to FCRA's damage provisions

FACTA's identity-theft protection measures were incorporated into FCRA as it was originally enacted in 1970 and then amended by CCRRA in 1996. As a result, violations of FACTA's identity-theft protection measures were made subject to FCRA's relatively limited pre-

existing civil liability enforcement provisions.  *See* FCRA, sec. 601, §§ 616-617, 84 Stat. at 1134 (codified at 15 U.S.C. §§ 1681n-1681*o*; amended by CCRRA in 1996).

As part of its 1996 amendments, Congress modified FCRA to provide modest statutory damages for plaintiffs who proved willful noncompliance.  "In cases of willful non-compliance, the consumer is entitled to recover either: (i) the actual damages sustained by the consumer as a result of the failure to comply with the FCRA; or (ii) damages in an amount ranging from $100 to $1,000."  S. Rep. No. 104-185, at 48 (1995) (discussing what is now 15 U.S.C. § 1681n(a)(1)).[1]

In a recent class-action case, the Supreme Court held that "willfulness" under FCRA's damages provision may be established by showing a defendant violated FCRA's requirements either recklessly or knowingly.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. ___, 127 S. Ct. 2201 (2007).  Thus, a defendant's "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."  *Id.*, 127 S. Ct. at 2216.

## II.   UNITED STATES' RESPONSE TO DEFENDANTS' STATEMENTS OF "UNDISPUTED FACTS"

Due to the shortened briefing schedule the Court requested for this brief, the United States is unable to respond in detail to defendants' statements of "undisputed facts."  That said, the United States highlights the following items:

1.   For credit-card receipt printers first put into use on or after January 1, 2005, FACTA's requirements took effect on December 4, 2004.  15 U.S.C. § 1681c(g)(3)(B).

---

[1] This legislation came after considerable deliberation.  From 1989 through 1996, Congress considered nearly two *dozen* bills to amend FCRA to increase consumer privacy and enhance the accuracy of credit reporting.  In the process, congressional committees held eight hearings and produced four reports.  *See* Appendix 1 ("Legislative History of 1996 Amendments to FCRA's Damage Provisions"), *infra*, at pages 40-41.

4

2.      FACTA allowed until December 4, 2006, for credit-card receipt printers in use prior to 2005 to come into compliance with its requirements.  15 U.S.C. § 1681c(g)(3)(A).

3.      It appears that the defendants in all four cases acknowledge that printing credit-card receipts with information prohibited by FACTA after FACTA became effective for all credit-card receipt printers on December 4, 2006.  See:

      a.      *Grimes v. Rave Motion Pictures*:  Rave Defs.' Am. Ans. to the 2d Am. Compl. (R. 21), ¶¶ 14-15 (expiration dates); Rave Defs.' SJ Mot. at 5 ¶ 13 (account numbers).

      b.      *Floyd v. Express Oil Change*: Def.'s Ans. (R. 5), ¶ 14 (expiration dates).

      c.      *Harris v. Mexican Specialty Foods*: Def.'s Evid. App'x (R. 21), Nickoloff Decl. ¶ 10 (expiration dates and/or credit-card account numbers).

      d.      *Rush v. Hooters of E. Birmingham*: Def.'s SJ Mot., § II(B) at 3 (expiration dates).

4.      It appears that the defendants in all four cases did not replace their pre-2005 credit-card printing machines or install the necessary software to comply with FACTA until after being sued in the second half of 2007.  See:

      a.      *Grimes v. Rave Motion Pictures*: Complaint (R. 1); Rave Defs.' Am Ans. to Pl.'s 2d Interrogatories, ¶ 2 at 3 (filed as Pl.'s Evid. App'x, Ex. G).

      b.      *Floyd v. Express Oil Change*: Complaint (R. 1); Def.'s Evid. App'x, Glover Decl. ¶ 3.

      c.      *Harris v. Mexican Specialty Foods*: Complaint (R. 1); Def.'s Evid. App'x (R. 21), Nickoloff Decl. ¶ 10.

      d.      *Rush v. Hooters of E. Birmingham*: Complaint (R. 1); Def.'s Evid. App'x (R. 22), Tessmer Decl. ¶ 5.

## ARGUMENT

Defendants assert both facial and as-applied challenges to FCRA's statutory minimum damage penalties. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *United States v. Frandsen,* 212 F.3d 1231, 1235 (11th Cir. 2000). When a party mounts a facial challenge to a statute, it bears the burden of proving that the law could never be applied in a constitutional manner. *DA Mortgage, Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007); *Jacobs v. The Florida Bar*, 50 F.3d 901, 906 n.20 (11th Cir. 1995). This is because a party who asserts a facial challenge to a statute is seeking not only to vindicate his own rights, but also those of others who may be adversely impacted by the statute. *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999).

I.   IT IS PREMATURE FOR THE COURT TO WEIGH THE CONSTITUTIONALITY OF FCRA'S DAMAGES SCHEME BEFORE LIABILITY IS DETERMINED AND WITHOUT EVIDENCE OF DEFENDANTS' RECKLESSNESS (OR CAREFULNESS) IN SEEKING TO COMPLY WITH THE LAW

The United States respectfully submits that it is premature to consider whether FCRA's damage scheme may violate due process. Several courts have held that defendants' abstract concerns that statutory damages under FCRA might prove grossly excessive are not properly addressed at the pleading stage, but must be postponed until—at the earliest—the class certification stage. *Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F. Supp. 2d 965, 973 (C.D. Cal. 2007); *Follman v. Vill. Squire, Inc.*, No. 07-C-3767, 2007 WL 4522614, at *4 (N.D. Ill. Dec. 18, 2007). It remains to be seen whether any classes will be certified in these cases.

Moreover, as the Supreme Court said earlier this year, "[c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash. State Republican Party*, 552

U.S. ___, 128 S. Ct. 1184, 1191 (2008) (internal quotation marks, brackets and citations omitted). The parties have not completed discovery into the merits of their claims and defenses; indeed, as the United States understands it, none of these cases has even had a class certification motion filed yet (in part because the Court stayed activity until it resolves the present constitutional summary judgment motions).  In the absence of discovery into what measures, if any, the defendants took to apprise themselves of the law and to comply with it, it seems impossible to hypothesize that defendants' apparent violations of FACTA were "willful," while simultaneously judging in the abstract that defendants' conduct and states of mind—and the need to discourage wrongdoing on the part of others—could not possibly justify the statutory damage scheme Congress enacted. Constitutional challenges based upon assumptions about what the evidence may ultimately show are "far better suited to an as-applied challenge, where the record has been properly developed, rather than to a facial challenge."  *Adler v. Duval County Sch. Bd.*, 206 F.3d 1070, 1083 (11th Cir. 2000) (*en banc*), *vacated on other grounds*, 531 U.S. 801, *opinion & judgment reinstated*, 250 F.3d 1330 (11th Cir. 2001).

Because discovery into defendants' conduct and states of mind is not complete, the record in these cases has not yet been properly developed.  There is no reason for the Court to rush into a constitutional analysis of what damages might ultimately be constitutionally permissible for conduct that the parties have not yet been able to explore fully during discovery, much less to subject to cross-examination during depositions.  *United States v. Resendiz-Ponce*, 549 U.S. 102, ___, 127 S. Ct. 782, 785 (2007) ("'It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to the decision of the case.'") (quoting *Ashwander v. Tenn. Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).  Until liability is determined and there is an actual damages award to evaluate, there is no constitutional analysis for this Court to

7

apply.  Instead, the Court should wait until an award is determined.  As discussed below, *see* Section

V.D, at page 37, *infra*, if the Court then finds a particular award constitutionally excessive, it should

then reduce it.  This is the procedure other courts have used in excessiveness challenges to statutory

damages in other class-action cases brought under FCRA for alleged violations of FACTA's credit-

card receipt requirements,[2] under the Telephone Consumer Protection Act (TCPA) for sending

unsolicited fax advertisements—which is subject to $500 in *mandatory* statutory damages per

violation, 47 U.S.C. § 227(b)(3)(B)—and under other statutes.[3]

---

[2] As the Central District of California held in *Pirian v. In-N-Out Burgers*, No. SACV-06-1251 DOC (MLGx), 2007 WL 1040864, at *5 (C.D. Cal. Apr. 5, 2007):

> As other courts have recognized, concerns regarding excessive damages are best addressed if the class is certified and damages are assessed. . . . If Plaintiff is able to prove that [Defendant] willfully violated Section 1681c(g)(1) on a large scale, entitling Plaintiff and the class to statutory damages, the Court will reduce any unconstitutionally excessive damages award at that time.

(citations omitted).  *Accord Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1169 (D. Kan. 2008); *Arcilla,* 488 F. Supp. 2d at 973; *Klingensmith v. Max & Erma's Rests., Inc.*, No. 07-C-0318, 2007 WL 3118505, at *3 (W.D. Pa. Oct. 23, 2007).  At least seven different district judges in the Northern District of Illinois have held that the possibility that a class-action case brought under FCRA for FACTA violations might result in a constitutionally excessive statutory damages award should be addressed after a class is certified and damages awarded, not before.  *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008) (Castillo, J.); *Cicilline v. Jewel Food Stores, Inc.*, ___ F. Supp. 2d ___, No. 07-CV-2333, 2008 WL 895682, at *6 (N.D. Ill. Mar. 31, 2008) (Dow, J.); *Troy v. Home Run Inn, Inc.*, No. 07-C-4331, 2008 WL 1766526, at *3 (N.D. Ill. Apr. 14, 2008) (Kennelly, J.); *Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 617-18 (N.D. Ill. 2007) (Coar, J.); *Follman*, No. 07-C-3767, 2007 WL 4522614, at *4 (Kendall, J.); *Troy v. Red Lantern Inn, Inc.*, No. 07-CV-2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007) (Aspen, J.); *Halperin v. Interpark , Inc.*, No. 07-CV-2161, 2007 WL 4219419, at *4 (N.D. Ill. Nov. 29, 2007) (Bucklo, J.).

[3] Cases deferring the constitutional question in challenges to TCPA's $500 mandatory statutory damage amount include *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650-51 (W.D. Wash. 2007); and *Kaufman v. ACS Sys., Inc.*, 2 Cal. Rptr. 3d 296, 325 (Ct. App. 2003).

Cases deferring the constitutional question in challenges to other statutory damage provisions include *Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1008 (N.D. Ill. 2007); and *DirecTV v. Spillman*, No. Civ.A.SA-04-82-XR, 2004 WL 1875045, at *4 (W.D. Tex. Aug. 23, 2004).

## II.   FCRA'S MINIMUM STATUTORY DAMAGES FOR WILLFUL VIOLATIONS ARE FULLY CONSISTENT WITH DUE PROCESS

Should the Court decide to consider the merits of defendants' arguments without evidence of their recklessness (or care) in complying with the law, it will bear in mind that FCRA's statutory damages provision is part of a Congressional scheme to regulate economic transactions. Accordingly, defendants bear a heavy burden. As the Supreme Court has stated, "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 637 (1993) (internal quotation marks and citations omitted). As shown below, defendants cannot carry this burden.

### A.   Defendants' due process challenges to minimum statutory damages for willful violations under FCRA are controlled by *St. Louis, Iron Mountain & Southern Railway Co. v. Williams*, 251 U.S. 63 (1919), not by standards that apply to jury awards of punitive damages

Defendants claim that if they are found liable for willfully violating the law, FCRA's statutory damages would be grossly excessive and therefore the statute itself violates the Due Process Clause. As shown below, this argument is foreclosed by a 1919 Supreme Court decision, *St. Louis, Iron Mountain & Southern Railway Co. v. Williams*, 251 U.S. 63 (1919).

### 1.   FCRA's statutory damage range passes due process review under the *Williams* test

In *Williams*, the Supreme Court considered statutory damages of $75 awarded to each of two railway passengers who were charged 66 cents more than the lawful rate. *Id.* at 63-64. The passengers sued separately under a State law imposing statutory penalties of $50 to $300, and the jury awarded each of them $75. *Id.* The *Williams* test is whether the penalty is "so severe and

oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 67. Under this test, the "validity" of a penalty "is not to be tested," as the present defendants suggest, simply by contrasting the penalty with any actual damages caused. *Id.* Rather, the penalty must be "considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to" the law. *Id.*

FCRA's statutory damage range of $100 to $1,000—available only for *willful* violations— passes constitutional muster. A survey of other statutory minimum damage provisions which have been challenged on the same grounds raised here is instructive. FCRA's $100 minimum statutory damage amount is only twice the minimum amount of $50 affirmed for small railway overcharges nearly 90 years ago in *Williams* itself. *Id.* at 64. Its $100 to $1,000 range is precisely the same range that Congress set in 1968 for creditors who fail to make mandatory disclosures under the Truth in Lending Act (TILA), 15 U.S.C. § 1640(a)(2)(A)—a range that the Supreme Court has called "modest," *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 376 (1973), and that the Eleventh Circuit has recognized "must be imposed for such a [TILA] violation regardless of the district court's belief that no actual damages resulted or that the violation is *de minimis*." *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982). FCRA's statutory minimum damage of $100 is one-fifth of the $500 mandatory statutory damage amount that Congress set for transmitting unsolicited fax advertisements in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(3)(B); and the courts have repeatedly rejected the same due-process excessiveness challenge raised here when made against TCPA's $500 statutory damage provision.[4]

---

[4] *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, ___ F. Supp. 2d. ___, No. 07-C-1611, 2008 WL 597604, at *6 (N.D. Ill. Mar. 3, 2008) (Pallmeyer, J.); *Sadowski v. Med1 Online, LLC*, No. 07-C-2973, 2008 WL489360, at *5-*6 (N.D. Ill. Feb. 20, 2008) (Aspen, J.); *Italia Foods, Inc v. Marinov Enters., Inc.*, No. 07-C-2494, 2007 WL 4117626, at *4 (N.D. Ill. Nov. 16, 2007)

Moreover, Congress and state legislatures impose some statutory minimum penalties *per day* of violations, and these also been upheld against due-process excessiveness challenges. For example, the Indian Arts and Crafts Act prohibits selling goods in a manner falsely suggesting that they are "Indian produced," and sets statutory damages at a *minimum* of $1,000 *per day*. 25 U.S.C. § 305e(a)(2). This *daily* statutory minimum damage amount—ten times higher than FCRA's $100 minimum statutory damage amount—was upheld against the same due-process excessiveness challenge defendants bring here. *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 168 F. Supp. 2d 905, 914-15 (N.D. Ill. 2001) (Shadur, J.). And, applying the same analysis, the Illinois Supreme Court recently upheld the constitutionality of nearly $1.2 million in statutory damages awarded against an architect for failing nearly 12,000 times to forward timely $82/week in child-support money that he withheld from his son's pay, under an Illinois statute that imposed a statutory penalty of $100 for *each day* that *each payment* was knowingly late. *In re Marriage of Miller*, 879 N.E.2d 292, 300-05 (Ill. 2007).

The courts owe strong deference to Congress's determination that $100 to $1,000 is the appropriate statutory damage range for violations of FCRA. In *Williams*, where the Supreme Court upheld damages under a statutory range of $50 to $300 per violation, the Court stressed that although such awards are subject to the Due Process Clause, legislatures "possess a wide latitude

---

(Andersen, J.); *Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-C-4968, 2007 WL 129052, at *2 (N.D. Ill. Jan. 11, 2007) (Kocoras, J.); *Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Commc'ns,* 329 F. Supp. 2d 789, 808-09 (M.D. La. 2004); *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090-91 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1165-67 (S.D. Ind. 1997); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844, 850 (Ariz. Ct. App. 2002); *Kaufman*, 2 Cal. Rptr. 3d at 325-26; *Harjoe v. Herz Fin.*, 108 S.W.3d 653, 654-55 (Mo. 2003) (*per curiam*); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 385-86 (Tex. App. 2004), *rev'd on other grounds*, 184 S.W.3d 707 (Tex.), *cert. denied sub nom. Kosoy v. GTE Mobilnet of Houston, Inc.*, 548 U.S. ___, 126 S. Ct. 2941 (2006).

11

of discretion in the matter." *Williams*, 251 U.S. at 66. *See also Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 196 (1997) ("Even in the realm of First Amendment questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided *and to the remedial measures adopted for that end*.") (emphasis added); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 20 (1991) ("As long as the discretion [allowed in determining punitive damages] is exercised within reasonable constraints, due process is satisfied."). Congress has discretion to design a remedy that will "serve to liquidate uncertain actual damages and to encourage victims to bring suit to redress violations." *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 415 (7th Cir. 1980), *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182, 194 (7th Cir. 1982); *see also Harjoe*, 108 S.W.3d at 655.

Caselaw under the analogous provisions of the Excessive Fines Clause of the Eighth Amendment confirm the deference owed to Congress. In *United States v. Bajakajian*, the Supreme Court held that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." 524 U. S. 321, 336 (1998) (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983) ("Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes"); *Gore v. United States*, 357 U.S. 386, 393 (1958) ("Whatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy.")). In the same way, the Eleventh Circuit has held that Congress's penalty determinations "represent the collective opinion of the American people as to what is and is not excessive. Given that excessiveness is a highly subjective judgment, the courts should be hesitant to substitute their opinion for that of the people." *United States v. 817 NE 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999) (footnote and citation omitted).

12

The legislative history demonstrates that CCRRA was the culmination of substantial Congressional deliberation over many years.  Congress enacted the statute in 1996, after considering dozens of bills to modify FCRA over the better part of a decade.  *See* Appendix 1 (legislative history), *infra*, at pages 40-41 below.  Congress made statutory damages available for FCRA violations after receiving testimony, for example, that "under current law consumers can recover no minimum statutory damages for non-compliance."  *H.R. 1015; Consumer Reporting Reform Act of 1993: Hearing Before the Subcomm. on Consumer Credit & Insurance of the H. Comm. on Banking, Finance, & Urban Affairs* [hereinafter *"Hearing on H.R. 1015"*], 103d Cong. 212 (1993) (statement of Michelle Meier, counsel for government affairs, Consumers Union).  During the previous Congress, the Senate passed a bill which would have set statutory damages for willful violations of FCRA at *$300* to $1,000.  S. 783, sec. 110, § 616(b)(2), 103d Cong. (as passed by Senate May 4, 1994).  Congress heard testimony that "the Fair Credit Reporting Act civil liability provisions are the weakest . . . in the context of consumer banking laws.  Even the Truth-in-Lending Act provisions are stronger."  *Consumer Reporting Reform Act of 1993: Hearing Before the S. Comm. on Banking, Housing, & Urban Affairs*, 103d Cong. 35 (1993) (testimony of Michelle Meier, counsel for government affairs, Consumers Union); *see also id.* at 38.[5]  Another witness advocated that *all* FCRA violations should be subject to uniform statutory damages of *$1,000*—ten times the minimum

---

[5]Ms. Meier submitted more detailed written testimony to a House subcommittee:

In short, the industry scored a major victory when FCRA was first enacted some 20 years ago by getting Congress to adopt these weak civil liability provisions.  These provisions are far weaker than even those found in the Truth in Lending Act and other consumer laws in the financial services area. . . .  The Truth in Lending Act makes statutory damages available without the need to show that the violation was "willful."  Modest but important statutory damages are always available [under the TILA] to compensate any prevailing plaintiff for the burden of bringing a lawsuit.

*Hearing on H.R. 1015*, 103d Cong. at 213.

13

level Congress eventually enacted. *Hearing on H.R. 1015*, 103d Cong. at 416 (statement of Edmund Mierzwinski, consumer program director, U.S. Public Interest Research Group).  Especially in light of Congress's extensive deliberations over modifying FCRA's statutory damages provisions, the Court should exercise great caution before substituting its own judgment that some other, smaller minimum damage amount would have been sufficient to achieve Congress's objectives.

> **2.     Statutory damage ranges enacted by Congress are not subject to the due process tests applied to jury awards of punitive damages**

Defendants rely upon cases such as *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993), and, most recently, *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), which set out due process limits to *punitive* damages awarded by *juries*.  These cases are inapposite.

In the first instance, the Supreme Court's principal concern in these cases was whether the defendant had "adequate notice of the magnitude of the sanction," *Gore*, 517 U.S. at 574, and "'fair notice . . . of the severity of the penalty.'"  *Campbell*, 538 U.S. at 417 (quoting *Gore*, 517 U.S. at 574).  This concern simply is not present here.  Congress set the minimum and maximum statutory damage amounts per willful FCRA violation when it enacted CCRRA in 1996; and then in 2003, it gave companies ample notice before FACTA's requirements for credit-card receipts became effective.

More fundamentally, as the Supreme Court has explained in reviewing jury awards of punitive damages, judicial review "of a jury's award for arbitrariness and the review of legislation surely are significantly different." *TXO Prod. Corp.*, 509 U.S. at 456.  Indeed, *Gore* instructs courts to compare challenged *punitive* damage *jury* awards against *statutory* damage provisions enacted by *legislatures*—precisely the kind of statutory provision being challenged here.  *Gore*, 517 U.S.

at 575, 584.  Far from supporting defendants, *Gore* holds that "a reviewing court engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *Id.* at 583 (internal quotation marks omitted) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (O'Connor, J., concurring in part and dissenting in part)).

Another indication that the Supreme Court did not intend the *Gore* guideposts to apply to statutory damages is that the guideposts specifically compare a punitive damages award to civil penalties available for comparable conduct.  *Gore*, 517 U.S. at 583; *Campbell*, 538 U.S. at 418. Applying this guidepost to a statutory award of damages is a meaningless exercise; such an award is by definition within the statutory range set by Congress.  Because the *Gore* guideposts do not pertain to statutory damages provisions and such provisions are distinct from punitive damages, this Court should not apply those guideposts here.

Further guidance on the allowable range of statutory damages is provided by cases examining the Copyright Act, which provides that, rather than proving actual damages and profits from infringement, a copyright holder may seek statutory damages of $750 to $30,000 per work infringed (and up to $150,000 for willful infringement).  17 U.S.C. § 504(c).[6]  In rejecting a recent due-process excessiveness challenge to this statutory damage provision, the Sixth Circuit observed that "[t]he Supreme Court has not indicated whether *Gore* and *Campbell* apply to awards of *statutory* damages," and it declined to do so, applying the *Williams* test instead.  *Zomba Enters., Inc.*

---

[6] Congress imposed an even broader range of statutory damages—from $500 to $100,000 (and up to $1 *million* for willful violations) in the Anticounterfeiting Consumer Protection Act of 1996.  15 U.S.C. § 1117(c).  Statutory damages under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d), are set at $1,000 to $100,000 per domain name.  And the Digital Millennium Copyright Act also imposes statutory damages.  17 U.S.C. § 1203(c)(3).

*v. Panorama Records, Inc.*, 491 F.3d 574, 587 (6th Cir. 2007) (emphasis in original), *reh'g en banc denied*, (6th Cir. Oct. 5, 2007), *petition for cert. filed*, 76 USLW 3443 (Jan. 3, 2008) (No. 07-1028). As a district judge in the Northern District of Illinois recently said, in a decision under the False Claims Act and a similar state statute that imposed $190 *million* in minimum statutory penalties and that rejected an Excessive Fines Clause argument, "considerations pertinent to the validity of jury awards are not the same as those attendant to damage amounts set by statutes." *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 748 (N.D. Ill. 2007), *appeals filed*, Nos. 07-2111 & 07-2113 (7th Cir. oral arg. set for June 8, 2008).

At least four district judges have refused to apply *Campbell*, *Gore*, and other punitive-damage decisions to due-process excessiveness challenges to the TCPA's mandatory $500 statutory damage amount.[7]  Courts considering excessiveness challenges to a variety of other statutes have likewise declined to apply punitive-damage standards.[8]  Indeed, as this Court acknowledged during its February 14, 2008, status conference in these four cases, it appears that it would be unprecedented for any court to determine the constitutionality of a legislatively-enacted statutory

---

[7] *Accounting Outsourcing*, 329 F. Supp. 2d at 809; *Kenro*, 962 F. Supp. at 1165; *Sadowski*, No. 07-C-2973, 2008 WL 489360, at *5; *Phillips Randolph*, No. 06-C-4968, 2007 WL 129052, at *2.

[8] *Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1008 (N.D. Ill. 2007) (statutory damages under state law for failure to pay earned vacation and holiday pay); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 459-60 (D. Md. 2004) (statutory damages under Copyright Act for infringement); *DirecTV, Inc. v. Cantu*, No. SA-04-CV-136-RF, 2004 WL 2623932, at *4 (W.D. Tex. Sept. 29, 2004) (statutory damages under state statute prohibiting interception of satellite broadcasts); *Native Am. Arts*, 168 F. Supp. 2d at 914 n.6 (statutory damages under Indian Arts and Crafts Act for falsely presenting goods as made by Indians); *Express Valet, Inc. v. City of Chicago*, 869 N.E.2d 964, 981-82 (Ill. App. Ct. 2007) (statutory penalties for operating valet parking facilities without required municipal license); *In re Marriage of Chen & Ulner*, 820 N.E.2d 1136, 1152 (Ill. App. Ct. 2004) (statutory damages under state law for employer's failing to forward child-support moneys withheld from employee's pay).

damage scheme by applying *Campbell* and *Gore*'s standards for jury awards of punitive damages, rather than *Williams*'s standards for statutory damages.  Tr. 2/14/08 status hr'g at 25; *Zomba Enters.*, 491 F.3d at 587.

**B.    FCRA does not violate due process by authorizing statutory damages without proof of actual damages**

Defendants contend that FCRA violates due process because it provides for statutory damages without actual damages; and that FCRA is unconstitutional as applied here because the plaintiffs "did not suffer any actual harm or legitimate risk of harm."[9]  In the first instance, even in the punitive-damage decisions upon which defendants rely, the Supreme Court requires courts to examine both "potential harm," as well as actual harm, in evaluating a defendant's conduct.  *Gore*, 517 U.S. at 575, 582; *TXO Prod. Corp.*, 509 U.S. at 462.  More fundamentally, Congress enacted FACTA precisely "to limit the number of opportunities for identity thieves to 'pick off' key card account information."  S. Rep. No. 108-166, at 13 (2003).[10]  Defendants' suggestion that their apparent violations of FACTA did not pose even a *risk* of harm is squarely contrary to the extensive testimony Congress received on the vulnerability of identity theft posed when businesses print their

---

[9] Rave Defs.' SJ Mot. in *Grimes v. Rave Motion Pictures*, at 12; Def.'s SJ Mot. in *Harris v. Mexican Specialty Foods, Inc.*, at 12.  *See also* Def.'s SJ Mot. in *Floyd v. Express Oil*, at 4 n.1 ("Express Oil Change disagrees with the premise that a receipt with too many numbers on it can increase the risk of identity theft"; citing Alabama state-court cases to the effect that Alabama tort law does not recognize increased risk of future harm as a presently compensable injury); Rave Defs.' SJ Mot. in *Grimes v. Rave Motion Pictures*, at 11 ("Plaintiff was not harmed, *and could not have been harmed*, by such conduct.") (emphasis added).

[10] *See also* Presidential Signing Statement, 39 Weekly Comp. Pres. Doc. 1746 (Dec. 4, 2003), *reprinted in* 2004 U.S.C.C.A.N. 1755, 1757 ("[T]his law will help prevent identity theft before it occurs, by requiring merchants to delete all but the last five digits of a credit card number on store receipts.  Many restaurants and merchants have already adopted this practice.  All will now do so.").

customers' credit-card expiration dates or account numbers on the customers' receipts.[11]   Nor may defendants ask the Court to second-guess Congress's decision to prohibit businesses from printing credit-card expiration dates even when they do truncate account numbers.[12]   Whether printing expiration dates on credit-card receipts (with or without truncated credit-card account numbers) poses an unacceptable risk of identity theft is a matter for Congress, rather than the courts. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 487 (1955).  In any event, when a business prints a customer's expiration date on her credit-card receipt, it "placed her at an increased risk of being a victim of credit card fraud.  This is a loss, albeit one that is likely small and hard to quantify, which is why statutes such as FCRA provide for modest damages without proof of injury." *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1169 (D. Kan. 2008) (citing *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).  *Accord Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 972 (C.D. Cal. 2007); *see also Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 786 (N.D. Ill. 2007).

---

[11] *See, e.g.*, *Identity Theft: Assessing the Problem and Efforts to Combat It: Hearing Before the Subcomm. on Oversight & Investigations of the H. Comm. on Energy & Commerce*, 108th Cong. 36-37 (2003) (statement of Rep. Jim Greenwood, chairman of the Subcommittee on Oversight and Investigations); *id.* at 50 (statement of Betsy Broder, Assistant Director, Division of Planning and Information, Bureau of Consumer Protection, FTC).  Congress conducted extensive deliberations before enacting FACTA.  *See generally* William H. Manz & Reba A. Best, *Federal Identity Theft Law: Major Enactments of the 108th Congress: A Legislative History of the Fair and Accurate Credit Transactions Act and Identity Theft Penalty Enhancement Act* (William H. Manz ed. 2005) (10-volume compiled legislative history, including 166 legislative history documents).

[12] *See Fighting Identity Theft—The Role of FCRA: Hearing Before the Subcomm. on Financial Institutions & Consumer Credit of the H. Comm. on Financial Services*, 108th Cong. 132 (2003) (statement of James K. Kallstrom, senior executive vice president,  MBNA America Bank, N.A.) ("The recent policy change to mandating truncation on all electronically printed receipts *to include expiration date* is strongly supported across the industry.") (emphasis added).

But even if defendants' apparent unlawful conduct did not pose even *potential* harm, Congress would still have constitutional authority to impose statutory damages.  The Eleventh Circuit has previously held that FCRA's statutory damage provision for willful violations does not require plaintiffs to plead or prove physical injury, emotional distress, or "any other 'objectively verifiable harm' such as an injury to [the plaintiff's] credit rating," and it made no suggestion that this posed a due process concern.  *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1123 (11th Cir. 2006).  One defendant quotes *Carey v. Piphus* for the proposition that "substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights."  *Carey v. Piphus*, 435 U.S. 247, 266 (1978), *quoted in* Def.'s SJ Mot., *Rush v. Hooters of E. Birmingham* (R. 21), at 8.  But the issue before the Court in *Carey v. Piphus* was what damages are available against a governmental body for procedural due-process violations under a specific statute, 42 U.S.C. § 1983, that (unlike FCRA) does not provide for statutory damages.  To resolve the issue, the Court specifically applied "the common law of torts" and "common-law tort rules of damages." *Id.* at 258 & n.13. The Court's conclusion in *Carey* that only nominal damages are available under § 1983 for procedural due-process violations has nothing to do with whether *substantive* due process allows Congress to impose statutory damages only if a plaintiff can prove actual harm or damages.

That statutory damages may be awarded without proof of actual harm or damages is indicated by over a century's worth of Supreme Court decisions on copyright infringement that upheld (and in one case, ordered) statutory damage awards without any proof of actual damages. In a case decided in 1899, a producer infringed on a playwright's play with 126 infringing performances over two years. *Brady v. Daly*, 175 U.S. 148, 151 (1899).  The trial court imposed statutory minimum damages of $50 per infringement, totaling $6,300 plus costs. *Id.*  The Supreme

19

Court upheld the statutory minimum award per violation, and rejected the producer's claim that

because the Copyright Act set minimum statutory damages, it was "a penal statute." *Id.* at 153.

From the first federal copyright law enacted in 1790 to the present, Congress has imposed minimum

statutory damages for copyright infringement without proof of actual damages or harm.  Copyright

Act of 1790, Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124, 125 (imposing damages for copyright

infringement of published works in "the sum of fifty cents for every sheet which shall be found in

[the infringer's] possession"; no evidence of actual damages or harm required).  *See generally*

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 349-52 (1998) (tracing history of

statutory damages for copyright infringement from the first English copyright statute, the Statute

of Anne, 1710, 8 Anne, ch. 19, § 1 (Eng.), to the present day).  The Supreme Court has had ample

opportunity to consider statutory damages without actual damages or harm under the copyright

statutes, and has never suggested that this scheme violates the Due Process Clause.[13]

---

[13]*See, e.g.*, *Feltner*, 523 U.S. at 353, 355 (recognizing that statutory damages for copyright infringement are "not fixed or readily calculable from a fixed formula" (internal quotation marks and citation omitted); holding that if a party so demands, they are to be determined by jury, rather than by judge); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-33 (1952) (stating that statutory damages are awarded when no actual damages are proven, or when actual damages and profits are difficult to calculate; Copyright Act authorizes statutory damages "[e]ven for uninjurious and unprofitable invasions of copyright"); *Douglas v. Cunningham*, 294 U.S. 207, 208, 210 (1935) (upholding maximum statutory damages of $5,000 where newspaper published author's story in 384,000 Sunday issues; "at the close of the trial the petitioners admitted inability to prove actual damages"); *Jewell-La Salle Realty Co. v. Buck*, 283 U.S. 202, 203, 206-08 (1931) (upholding $250 minimum statutory damages for unauthorized orchestral performance of musical composition; "[t]he infringement was proved, but there was no showing of actual damages"); *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 103, 106-08 (1919) (finding district court erred by awarding less than $250 statutory minimum damages for each infringement on illustrations of women's apparel; there was "undisputed testimony to the effect that the damages could not be estimated").

*See also Zomba Enterprises*, where the Sixth Circuit considered—and rejected—a *Gore* and *Campbell*-based due-process challenge to $806,000 awarded as statutory damages for willful copyright infringement.  *Zomba Enters.*, 491 F.3d at 580, 586-88; *accord Lowry's Reports*, 302 F. Supp. 2d at 459-60 (rejecting similar excessiveness challenge to jury's $19 *million* statutory

Nor should the Court credit one defendant's suggestion that statutory damage schemes are permissible for Copyright Act violations and others where an economic motivation might be present, but statutory damages for FCRA violations are different because (defendants allege) such violations are not motivated by "economic benefit."  Def.'s SJ Mot. in *Floyd v. Express Oil*, at 11 n.4 (seeking to distinguish various statutes that authorize statutory penalties from FCRA on grounds that by violating those other statutes, "the defendant stands to gain something by the violation, or the conduct could cause plaintiff some harm, or both").  In the first instance, this argument would require the Court to overlook defendants' considerable economic incentives to violate FACTA's credit-card receipt requirements as long as possible.  The Congressional Budget Office estimated in 2003 that complying with the law would cost retailers between $300 and $1,000 per credit-card machine, and that, assuming merchants would need to replace 25% percent of currently-used machines in the year the law took effect for existing machines, "the cost . . . would amount to at least $85 million in that year."  S. Rep. No. 108-166, at 30 (2003).  By postponing the necessary replacements until they were sued, *see* U.S. Resp. to Defs.' Statements of "Undisputed Facts," *supra*, at page 5, ¶ 4, the defendants obtained a competitive advantage over other businesses.

Further, the suggestion that the Constitution prohibits Congress from enacting statutory damages for violations that are neither motivated by "economic benefit" nor cause measurable "harm" heralds a principle that would undermine numerous statutes imposing minimum statutory damage amounts in the area of privacy alone:

- Unauthorized disclosures of customers' bank records, *see* Right to Financial Privacy Act, 12 U.S.C. § 3417(a)(1);

damages award for willful infringement).

21

•       Unauthorized inspection or disclosure of taxpayer returns or return information, 26 U.S.C. § 7431(c)(1)(A);

•       Electronic eavesdropping and wiretapping, *see* Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2520(c)(2);

•       Unauthorized disclosure of video rental consumer information, *see* Video Privacy Protection Act of 1988, 18 U.S.C. § 2710(c)(2)(A);

•       Failure to protect against unauthorized access to cable subscribers' and satellite television subscribers' personally identifiable information, 47 U.S.C. § 551(f)(2)(A), 47 U.S.C. § 338(*i*)(7);

•       Unauthorized disclosure by an electronic communication service of the content of e-mails or voice-mails, *see* Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2707(c);

•       Illegal electronic surveillance done under color of law, 50 U.S.C. § 1810;

•       Unauthorized disclosure of (or obtaining unauthorized access to) driver's license information, 18 U.S.C. § 2724(b)(1); and

•       Unauthorized disclosure of financial records from State child support enforcement agencies, 42 U.S.C. § 669a(c)(3)(A).

In each instance, businesses and others with access to sensitive personal information have the opportunity to invade or diminish consumers' and citizens' privacy interests by allowing improper disclosure of private information.   Businesses that fail to comply may not do so for immediate economic benefit; but they nonetheless do avoid the time, trouble, and expense of dedicating the resources needed to assure that they comply with these laws' requirements.  To give businesses a strong incentive to take the steps necessary to protect such information from unauthorized disclosures, Congress enacted statutory damages for violating these requirements.  Interpreting the Due Process Clause to mean that Congress can protect its citizens' privacy rights through private causes of action *only* for those victims who can prove *actual* harm or *actual* damages would efface these protections.  The Constitution does not require such a result.

22

### C.   FCRA's statutory damage provisions are not "punitive" on grounds that they do not require proving actual damages

At least one defendant contends that FCRA's imposing statutory damages without requiring proof of actual damages is "arbitrary punishment."  Def.'s SJ Mot. in *Harris v. Specialty Mexican Foods* (R. 20), at 14.  (A different defendant entirely foreswears the notion that FCRA damages are "punishment" of any form.  Def.'s SJ Mot. in *Rush v. Hooters of E. Birmingham*, at 9 ("FACTA creates a new category of damages that is neither compensatory nor punitive").)  But the constitutionality of FCRA's statutory penalties was not at issue in the primary case this defendant relies upon,  *Anderson v. Capital One Bank*, 224 F.R.D. 444, 453 (W.D. Wis. 2004).  *Anderson* considered a bank's alleged failure to comply with what the court referred to as "the technical requirements of § 1681m of the Fair Credit Reporting Act," *id.* at 452; under this section, lenders who take adverse actions on consumer credit applications must make particular disclosures within set time-frames.  15 U.S.C. § 1681m.  The *Anderson* court declined to certify a class on superiority grounds, in part on the confusing grounds that "if plaintiffs *cannot* show that defendant acted wilfully," then FCRA's statutory damages for *willful* violations would be unwarranted.  *Anderson*, 224 F.R.D. at 453 (emphasis added).  It was in this context that the *Anderson* court referred to statutory damages under FCRA as "[p]enalties."  *Id.*  This decision does not establish that statutory damages under FCRA are "penalties."  To the contrary, as the Southern District of Georgia said about alleged TCPA violations, "although the statutory damages do not closely correspond to actual damages, this fact does not convert a remedial statute into a penal one.  Decisional law binding on this court indicates that disproportionate statutory damages and even multiplied damages awards do not necessarily make a statute penal." *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F. Supp.

2d 1365, 1376 (S.D. Ga. 2003) (citing *In re Wood*, 643 F.2d 188, 193 n.12 (5th Cir. 1980)), *aff'd*,

157 Fed. App'x 201, 208 (11th Cir. 2005) (*per curiam*) (unpublished decision).

Nor may defendants claim that statutory damages under FCRA are "arbitrary punishment."

To the contrary, such statutory damages can be as low as $100 per willful violation, and are capped

at $1,000 per willful violation.   Moreover, statutory damages under FCRA are anything but

"arbitrary"; a business's exposure to such statutory damages is precisely calibrated to the number

of times it willfully violates the law.  *See also Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356,

376 (1973) (rejecting claim that statutory damages of $100 to $1,000 under TILA are punitive).

### D. Defendants do not have greater due process rights in class-action cases than in individual party actions

Defendants suggest that their due-process challenges against FCRA's statutory minimum

damage provision apply with particular vigor because these are class actions.   But defendants cite

no caselaw for the proposition that the constitutionality of a statutory damages provision is

determined differently in a class action than in a non-class action suit.

To the contrary, Supreme Court decisions strongly suggest that class action suits are subject

to the same constitutional analysis as any other lawsuit.   Class actions have been authorized by Fed.

R. Civ. P. 23 since the Federal Rules were enacted in 1937.   The Supreme Court has recognized that

class actions "may enhance the efficacy of private actions by permitting citizens to combine their

limited resources to achieve a more powerful litigation posture."  *Hawaii v. Standard Oil Co. of

Cal.*, 405 U.S. 251, 266 (1972).   Moreover, the Court has held that, "[i]n the absence of a direct

expression by Congress of its intent to depart from the usual course," class action relief is available.

*Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)   Just as it is not this Court's role to rewrite FCRA

24

to allow statutory damages only upon a showing of actual harm, so it is not this Court's role to rewrite FCRA to prohibit or restrict class action relief.[14]

To be sure, defendants correctly observe that there are various statutes for which Congress *has* expressly prohibited or restricted class relief.  *See, e.g.*, 15 U.S.C. § 6614 (limiting Y2K class actions); 29 U.S.C. § 732(d) (barring designated vocational rehabilitation programs from bringing class actions); 15 U.S.C. § 2310(e) (restricting consumer warranty class actions).  And Congress has even restricted the total class action recovery available under the three titles of the CCPA (of which FCRA is Title VI) that provide for statutory damages but that, unlike FCRA, are strict liability statutes.[15]  The three other CCPA titles that provide for statutory damages are:

- Truth in Lending Act (TILA), Title I of CCPA, 15 U.S.C. § 1640(a)(2)(B) (limiting recovery in class actions to "the lesser of $500,000 or 1 per centum of the net worth of the creditor"; strict liability);

- Fair Debt Collection Practices Act (FDCPA), Title VIII of CCPA, 15 U.S.C. § 1692k(a)(2)(B), (c) (same limits on relief; strict liability (although with an affirmative defense available; see Appendix 2 at page 42, *infra*)); and

- Electronic Fund Transfer Act (EFTA), Title IX of CCPA, 15 U.S.C. § 1693m(a)(2)(B), (c) (same limits on relief; strict liability (although with same affirmative defense available under FDCPA)).

---

[14] *See, e.g.*, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576 (1982) (upholding statutory damages in excess of $300,000 awarded to seaman because his employer improperly withheld $412.50 from his pay; commenting that "the legislature not infrequently finds that harsh consequences must be visited upon those whose conduct it would deter.  It is probably true that Congress did not precisely envision the grossness of the difference in this case between the actual wages withheld and the amount of the award required by the statute. . . .  The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not.") (citations omitted).

[15] For a table comparing all six CCPA titles that provide for civil liability, see Appendix 2 ("Civil Liability Provisions under Various Titles of the Consumer Credit Protection Act (CCPA)"), at page 42, *infra*.

Congress's decision to limit class relief under *other* statutes—including the three titles of CCPA that, unlike FCRA, impose strict liability for statutory damages—merely demonstrates that Congress knows that it can limit class-action relief and knows how to do so.  In fact, the same Congress that amended FCRA (Title VI of CCPA) to require statutory damages for *willful* violations, but without limiting class-action relief—the 104th Congress—enacted legislation that *did* limit class-action relief under two *other* titles of CCPA.[16]  And Congress has enacted many other statutes that, like FCRA, impose statutory damages without limiting class-action relief.  This is true of each of the privacy-related statutory damage actions listed at pages 21-22, *supra*, as well as the Copyright Act, 17 U.S.C. § 504(c), the Anticounterfeiting Consumer Protection Act of 1996, 15 U.S.C. § 1117(c), the Digital Millennium Copyright Act, 17 U.S.C. § 1203(c)(3), and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d).  Defendants cannot plausibly maintain that Congress's decision to restrict class-action relief under *some* statutory damage schemes means that the Due Process Clause *requires* it to do so for *all* statutory damage schemes.

Defendants suggest that they could not afford to pay the potential statutory damages.  But FACTA combats identity theft in part by prohibiting businesses from printing specific credit-card account information on receipts.  It is enforced in part by making violations prohibitively expensive, which is constitutionally acceptable.  As the Supreme Court has said, "a rule of liability which merely takes away the profits from [a copyright violation] would offer little discouragement to infringers. . . .  The statutory rule, formulated after long experience, . . . is designed to discourage

---

[16] The 104th Congress imposed a moratorium upon TILA class actions, Truth in Lending Class Action Relief Act of 1995, Pub. L. No. 104-12, 109 Stat. 161 (codified at 15 U.S.C. § 1640(*i*)); and limited class-action relief under Title IV of CCPA (in the next chapter of the same consolidated appropriations bill that amended FCRA as Title VI of CCPA), Credit Repair Organizations Act, Pub. L. No. 104-208, sec. 2451, § 409(a)(2)(B), 110 Stat. 3009-454, 3009-460 (1996) (codified at 15 U.S.C. § 1679g(a)(2)(B)).

wrongful conduct." *F.W. Woolworth*, 344 U.S. at 233.  Contrary to what defendants suggest, the Due Process Clause "does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."  *Phillips Randolph*, No. 06-C-4968, 2007 WL 129052, at *3.  Another district court observed in rejecting a similar due-process argument in a TILA statutory damages class-action suit, "the class size is a direct result of defendant's large number of violations, for which it should not be rewarded."  *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007); *accord ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 50 P.3d 844, 851 (Ariz. Ct. App. 2002).

Although the Due Process Clause does not give greater protection to defendants in class-action suits than in other suits, the United States does recognize the large disparity which may appear between the defendants' conduct and the size of their potential liability if they are ultimately found to have acted willfully; these are the same concerns with which Judge Newman wrestled when he wrote separately in a Second Circuit decision issued in 2003, to address the interplay of statutory minimum penalties in a class-action suit that, he calculated, could result in $12 billion of statutory damages.  *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 25-29 (2d Cir. 2003) (Newman, J., concurring).  But as Judge Newman recognized, the appropriate judicial response is not to dismiss the action or refuse to certify a class.  Rather, as discussed below, *see* Section V.D, at page 37, *infra*, if a particular statutory damage award is ultimately found to be "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable," in violation of *Williams*, 251 U.S. at 67, the responsibility of the judiciary is to reduce the award sufficiently to comply with the Constitution.

**III.    FCRA IS NOT "VOID FOR VAGUENESS" BECAUSE IT DOES NOT IDENTIFY CRITERIA TO DETERMINE STATUTORY DAMAGES WITHIN THE $100 TO $1,000 STATUTORY RANGE**

Defendants contend that FCRA's statutory damages provision further violates due process because it does not identify factors that fact-finders must consider in determining statutory damages between $100 and $1,000 per willful violation.  To be sure, some statutes do mandate factors that courts or juries must consider (typically "among other relevant factors") in setting damages within a statutory range.  (This is true of the CCPA's other titles that provide for civil liability, although each of them is a strict-liability statute; *see* Appendix 2 ("Civil Liability Provisions under Various Titles of the Consumer Credit Protection Act (CCPA)") at page 42 below.)  But many other statutes impose statutory damage ranges without specifying mandatory factors to be considered in determining damages.  (This is true of the entire list of privacy-related statutory damage actions listed *supra* at pages 21-22 above.)  Most notable among these is the Copyright Act, which currently imposes statutory damages of $750 to $30,000 (and up to $150,000 per willfully infringed work).  17 U.S.C. § 504(c).[17]  FCRA's range of statutory damages, $100 to $1,000, is far smaller, and yet the Supreme Court has held that an award within the Copyright Act's statutory range could not be an abuse of discretion.  *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935); *accord Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990).  Likewise, the Arkansas statute that the Court evaluated in *Williams* set statutory damages between $50 to $300,

---

[17] Likewise, the Anticounterfeiting Consumer Protection Act of 1996 imposes an even broader range of statutory damages—from $500 to $100,000 (and up to $1 *million* for willful violations)—but does not specify any factors that must be considered in setting statutory damages.  15 U.S.C. § 1117(c).  The same is true of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d) (statutory damages of $1,000 to $100,000 per domain name; no guidance on determining statutory damages), and of the Digital Millennium Copyright Act, 17 U.S.C. § 1203(c)(3) (statutory damages of $200 to $2,500 for one set of violations, and of $2,500 to $25,000 for another; no guidance on determining statutory damages).

without identifying mandatory factors to be considered in setting damages; but the Court gave no indication that the absence of statutory guidance made the statute unconstitutional.  *Williams*, 251 U.S. at 64.

Among them, defendants cite only two precedents that, when read in context, may appear to support their assertion that the Due Process Clause requires that if a statute imposes a range of statutory damages, it must also specify at least one factor to be considered in setting damages.  The first is *Gore*: "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."  *Gore*, 517 U.S. at 574 (footnote omitted). This is a procedural, rather than substantive, due process requirement, and FCRA amply satisfies it by notifying businesses that they are subject to statutory damages of $100 to $1,000 per willful violation.  *See, e.g.*, *Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1008 (N.D. Ill. 2007) (rejecting claim that state statute was "unconstitutionally vague and arbitrary because a court could assess any amount 'up to $500' for each violation.  Countless state and federal laws provide for similarly structured penalties, and they have been upheld against due process challenges.") (citations omitted).

The second precedent that may appear to support defendants' position is *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966), *cited in* Def.'s SJ Mot. in *Rush v. Hooters of E. Birmingham*, at 5.  The Supreme Court there held that a Pennsylvania statute violated due process because it allowed juries to determine, without any standards or guidance, whether an acquitted criminal defendant should nonetheless be "sentenced" to pay the costs of prosecution.  *Id.  Giacco* found the challenged statute "invalid under the Due Process Clause because of vagueness and the absence of any standards sufficient to enable defendants to protect themselves against arbitrary and discriminatory impositions of costs."  *Id.*  As the Court found, the Due Process Clauses forbids a law

"so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Id.* at 402-03.  In other words, what made the Pennsylvania statute unconstitutional was that it did not identify what a defendant needed to do to avoid liability.  *Giacco* expressly stated that it "cast no doubt whatever on the constitutionality" of a criminal jury's "power to fix punishment within legally prescribed limits." *Id.* at 405 n.8.  And in *Pacific Mutual Life Insurance Co. v. Haslip*, the Supreme Court flatly rejected an attempted void-for-vagueness challenge to a punitive damage award based upon *Giaccio*: "That case, however, is not helpful. . . . The [unconstitutional Pennsylvania] statute did not concern jury discretion in fixing the amount of costs.  Decisions about the appropriate consequences of violating a law are significantly different from decisions as to whether a violation has occurred." *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 24 n.12 (1991).  Neither *Gore* nor *Giacco* provides a basis to hold FCRA unconstitutional because it fails to provide guidance on how to set statutory damages.  Moreover, if FCRA is unconstitutional for this reason, then so also are the Copyright Act and many other statutes.

## IV.   DEFENDANTS' OTHER CONSTITUTIONAL ARGUMENTS ARE MISPLACED

### A.    Punitive damages under FCRA would not be a multiple recovery or other due process violation

Several defendants contend that because FCRA authorizes punitive damages, 15 U.S.C. § 1681n(a)(2), in addition to actual or statutory damages, § 1681n(a)(1)(A), any punitive damage award would be an unauthorized multiple recovery and violate due process.  Def.'s SJ Mot. in *Harris v. Mexican Specialty Foods*, at 15-16; Def.'s SJ Mot. in *Floyd v. Express Oil*, at 17-18; Rave Defs.' SJ Mot. in *Grimes v. Rave Motion Pictures*, at 17-18.

30

To the contrary, due process does not prohibit a defendant's being exposed to both actual or statutory damages and punitive damages.  In *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 14 (1991), the Supreme Court found no due process violation where Alabama common law authorized both compensatory and punitive damages against an employer for the fraud of its employee, because it found that Alabama had a rational interest in providing employers with an additional incentive to comply with the law.  Similarly here, Congress had ample reason to provide financial institutions and other persons subject to FCRA with strong incentives to comply with FCRA's requirements.  The same argument that FCRA's statutory and punitive damage provisions constitute a prohibited double penalty was considered at length and rejected in *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 341-42 (N.D. Ill. 2002).  The availability of punitive damages does not violate due process.

**B.    Equal protection does not require FCRA to give fact-finders guidance on how to determine statutory damages**

At least one defendant contends that because FCRA does not provide fact-finders with standards to consider when determining statutory damages, the statute violates equal protection. *Rush v. Hooters of E. Birmingham*, R. 21 at 9-10.  The argument rests upon a criminal-sentencing decision issued a quarter-century ago, which—although not mentioned by the defendant—was reversed on appeal.  *United States v. Welden*, 568 F. Supp. 516, 534-35 (N.D. Ala. 1983), *rev'd in pertinent part sub nom. United States v. Satterfield*, 743 F.2d 827, 841-43 (11th Cir. 1984).  Even in the criminal context, "'there is no requirement that two persons convicted of the same offense receive identical sentences.'  A sentencing authority must be given wide latitude in fixing the punishment for convicted offenders." *Satterfield*, 743 F.2d at 842 (quoting *Williams v. Illinois,* 399 U.S. 235, 243 (1970)).  FCRA does not violate equal protection.

31

### C.      It does not violate due process to certify a class under FACTA

At least two defendants contend that the Due Process Clause would make it unconstitutional to certify a class, and expressly move the Court either to refuse to certify a class or to strike the complaints' class allegations.  Def.'s SJ Mot. in *Harris v. Mexican Specialty Foods*, at 16-20; Def.'s SJ Mot. in *Floyd v. Express Oil*, at 18-20.  To the contrary, as observed above, class-action recovery is available unless Congress expressly says otherwise.  *Califano*, 442 U.S. at 700.  Class actions enable "plaintiffs to pool claims which would be uneconomical to litigate individually.  For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  To hold that due process forbids class-action suits seeking statutory damages would effectively insulate large-scale violators from any enforcement at all.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *accord Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654, 662 (N.D. Ala. 2002) (FCRA class-action suit; "the cost of investigating and trying these cases individually likely exceeds the value of any statutory and/or punitive damage award that may be due to any particular class claimant."); *Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 618 (N.D. Ill. 2007) (FCRA class-action suit) (same).  The Supreme Court has previously held that the "potentially ruinous effect" of a class-action suit seeking more than actual damages under a consumer-protection statute is no reason to preclude relief.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344-45 (1979) (consumer class-action suit seeking treble damages under the Clayton Act).  Concerns about the potential scope of such damages, the Court held, "are not unimportant considerations, but they are policy considerations more properly addressed to Congress than to this Court."  *Id.* at 345.

This is not a case "[w]here defendants are being sued for statutory damages for unintentional acts under a strict liability standard." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (distinguishing *Ratner v. Chem. Bank N.Y. Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972), in which the court declined to certify a class due to the "possibly annihilating punishment" that might arise under TILA's strict-liability standards).   Rather, FCRA requires evidence of willfulness before statutory damages are allowed.   Nor is this a case "where damages are being sought for technical violations of a 'complex regulatory scheme, subject to different reasonable interpretations.'" *Id.* (distinguishing *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)).   The defendants in all four cases appear to acknowledge printing expiration dates on customers' receipts, *see* U.S. Resp. to Defs.' Statements of "Undisputed Facts," *supra*, at page 5, ¶ 3, and the defendants in at least two cases also appear to acknowledge printing non-truncated account numbers, *see id.*, ¶¶ 3(a), 3(c).   Nor does it appear that defendants assert that FACTA is reasonably interpreted as allowing them to do so.   Due process does not forbid certifying classes in these cases.   What due process does do (as discussed below, *see* Section V.D, at page 37, *infra*) is authorize reducing a constitutionally excessive statutory damages award if and when one is imposed.

## V.   PROCEDURAL AND CASE-MANAGEMENT ISSUES RAISED BY THE COURT

During its February 14, 2008, hearing, the Court raised questions about several procedural and case-management issues.   Because the Court suggested that it might be constrained to find FCRA's damages provision unconstitutional unless it found adequate answers to these concerns, the United States seeks to address them here.

### A.    Jury instructions under FCRA

During the February 14, 2008, status hearing in these four cases, the Court stated that, among other concerns about FCRA's constitutionality, "the biggest thing I worry about" is "how to charge a jury" on determining damages within the $100 to $1,000 statutory range in the absence of statutory guidelines. Tr. 2/14/08 status h'rg at 14-15; *see also id.* at 27, 33-34. It is important to recognize that it may not be necessary to instruct a jury at all on determining statutory damages. Depending upon what discovery reveals, the plaintiffs in some or all of these cases might decide to accept the minimum statutory damage of $100 per violation in advance of trial. *See, e.g.*, *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 376 (1973) (based upon facts of the case, approving district court's decision to award the minimum amount of statutory damages for TILA violation). If they do so, it appears the Court should *not* ask the jury to calculate the statutory damages that result, because doing so would only provide a gratuitous opportunity for jury nullification. *BMG Music v. Gonzalez*, 430 F.3d 888, 892-93 (7th Cir. 2005); *accord Simpleville Music v. Mizell*, 451 F. Supp. 2d 1293, 1299-1300 (M.D. Ala. 2006).

If a jury does need to be directed to determine statutory damages, it is of course important to provide appropriate instructions; but as discussed above, *see* Section III *supra*, pp. 28-30 above, the United States respectfully urges that due process does not require that a statute imposing a statutory damage range must also mandate factors to be considered when setting damages. Indeed, other statutes impose far broader ranges of statutory damages than FCRA does, also without mandating specific factors that must be considered in setting damages; and these other statutes have led to jury instructions and caselaw discussing how to determine statutory damages. This Court may properly borrow appropriate elements from such jury instructions and caselaw. As an example, the

Anticounterfeiting Consumer Protection Act of 1996 authorizes statutory damages between $500 and $100,000—and up to $1 million for willful violations—in cases "involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods and services." 15 U.S.C. § 1117(c).  However, as the Southern District of New York commented wryly, "[t]he statute itself does not afford much guidance as to how the courts are to fix appropriate amounts in statutory damage cases."  *Guess?, Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998), *rev'd on other grounds sub nom. Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998).  Nonetheless, the court went on to apply the common-law method, by analogizing caselaw interpreting and applying *other* statutes, to identify pertinent criteria for setting damages under the Anticounterfeiting Consumer Protection Act.  Thus, in its next sentence, the court observed that "cases decided under the Copyright Act, which deals with a similar problem and a similar legislative grant of discretion, afford guidance here."  *Id.*[18]  The Copyright Act itself also provides no guidance in setting statutory damages, and yet model jury instructions are available on that topic.  3B Kevin F. O'Malley, Jay E. Grenig, & the Hon. William C. Lee, *Federal Jury Practice & Instructions* § 160.93 (5th ed. 2001) ("Statutory damages").

### B.    The Court may approve a settlement of less than $100 per class member

During the status hearing, the Court asked for the parties' views on whether it could approve a potential FCRA class settlement that provided anything less than $100 per class member.  Tr. 2/14/08 status hr'g, at 10.  The answer is yes.  Under Fed. R. Civ. P. 23(e)(2) (as amended effective

---

[18] Similarly, the Eastern District of Pennsylvania drew upon Copyright Act cases to identify appropriate criteria to determine statutory damages under this statute: "In analyzing the appropriate statutory award for copyright infringement cases, courts consider the defendant's profits, as well as saved expenses, the plaintiff's lost revenues, and the defendant's state of mind."  *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002).

Dec. 1, 2007), a court may approve a settlement that would bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate."  In its leading case on the topic, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), the Eleventh Circuit identified six factors that are relevant:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Depending upon the facts in a particular case, a proposed settlement may be approved "even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988).  In a non-precedential decision earlier this year, the Eleventh Circuit applied the *Bennett* factors in affirming a district court's approval of a FCRA class settlement that provided most class members a free credit report and no cash—even though, as the Eleventh Circuit explicitly observed, this was a much smaller recovery than FCRA's minimum statutory damages of $100.  *Dikeman v. Progressive Exp. Ins. Co.*, ___ Fed. App'x ___, No. 07-10547, 2008 WL 786618, at *2 (11th Cir. Mar. 26, 2008) (*per curiam*) (unpublished opinion).[19]  But a district court cannot value class members' claims for statutory damages as being worth nothing at all without explanation.  *See Mirfashi v. Fleet Mortgage Corp.*, 450 F.3d 745, 750 (7th Cir. 2006).

---

[19] Likewise, the Western District of Pennsylvania recently approved class-action settlements in two separate FACTA credit-card receipt cases against restaurant chains, under which class members received vouchers for restaurant items worth an average of $4.38 in one case and $8.00 in the other. *Palamara v. Kings Family Rests.*, No. 07-CV-317, 2008 WL 1818453, at *4 (W.D. Pa. Apr. 22, 2008) (Lancaster, J.); *Klingensmith v. Max & Erma's Rests., Inc.*, No. 07-C-0318, 2007 WL 3118505, at *5 (W.D. Pa. Oct. 23, 2007) (Lenihan, M.J.).

### C.        Pending legislation

At the status hearing, the Court asked the parties to advise it on how the current litigation might be affected by proposed legislation to amend FCRA currently pending in Congress.  Tr. 2/14/08 status hr'g at 13. The United States has found one such bill.  It would "clarify" that merchants who print expiration dates on credit-card receipts, but who do not print account numbers (and otherwise comply with FACTA), are not in "willful noncompliance" of FCRA under 15 U.S.C. § 1681n.  Credit and Debit Card Receipt Clarification Act of 2007, H.R. 4008, 110th Cong. (2007) (referred to the Subcomm. on Financial Institutions & Consumer Credit of the H. Comm. on Financial Services Jan. 11, 2008)  If enacted, the bill's retroactive effect would be governed by *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

### D.        Procedure to reduce a constitutionally excessive damage award

The United States has urged that the Court should defer any decision on whether a potential FCRA statutory damage award would be in excess of what due process allows until after an award is issued.  As discussed above, the test is whether the statutory damage award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable," taking into account such factors as "the interests of the public" and "the need for securing uniform adherence" to the law.  *Williams*, 251 U.S. at 67.  If a class-action statutory damage award under FCRA " would be unconstitutionally excessive [it] may be reduced."  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

An important Eleventh Circuit decision issued in 1999 discusses at length the constitutional authority (indeed, requirement) for a court to determine whether a jury's damage award is consistent with due-process limitations, and if not, to reduce the jury award by just as much as required to

avoid due-process excessiveness.  *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328-32 (11th Cir.  1999).  The Court of Appeals carefully distinguished between remittitur—where an excessive jury award is reduced because of a discrepancy between the evidence and the size of the award—and a *constitutionally* required reduction.  *Id.* at 1331.  "Unlike a remittitur, which is discretionary with the court and which we review for an abuse of discretion, *a court has a mandatory duty to correct an unconstitutionally excessive verdict* so that it conforms to the requirements of the due process clause."  *Id.* (citations omitted; emphasis added).  This Court has previously followed *Johansen* to reduce what it found to be a constitutionally excessive jury award.  *McClain v. Metabolife Int'l, Inc.*, 259 F. Supp. 2d 1225, 1234-35 (N.D. Ala. 2003) (Acker, J.).  And in *Texas v. American  Blastfax, Inc.*, the Western District of Texas issued a written decision in 2000 in which it denied the defendant's motion to dismiss on grounds that the TCPA's mandatory statutory damage amount of $500 per violation was constitutionally excessive.  *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090-91 (W.D. Tex. 2000).  The following year, after a trial on damages, the same court found that the proven TCPA violations would yield a $2.34 *billion* statutory damages award against two individuals and a fifteen-employee company.  *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900 n.8 (W.D. Tex. 2001).  Rather than award this amount, the court found it appropriate to award a far, far smaller amount of damages:  $459,375.  The Court should here follow the same procedure laid out in *Johansen* and that it applied in *McClain*, and wait until there is a damage award before determining whether the Constitution requires reducing it.

## **CONCLUSION**

For the above-stated reasons and the reasons given in plaintiffs' responses to defendants' summary judgment motions, Intervenor-Plaintiff United States of America respectfully urges that the Court deny defendants' summary judgment motions.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

Dated: May 9, 2008
      Washington, D.C.

GREGORY G. KATSAS
Acting Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE
ALICE MARTIN
United States Attorney

  s/ Joyce White Vance
JOYCE WHITE VANCE
Assistant United States Attorney
Telephone: 205-244-2209
E-mail: Joyce.Vance@usdoj.gov
Facsimile: 205-244-2171
1801 Fourth Ave. N.
Birmingham, AL 35203-2101

JACK HOOD
Assistant United States Attorney
Alabama Attorney No. D41J
1801 Fourth Ave., North
Birmingham, AL 35203-2101
Telephone: (205) 244-2103
Facsimile: (205) 244-2171
E-mail: jack.hood@usdoj.gov

EUGENE M. THIROLF
Director, Office of Consumer Litigation
KENNETH L. JOST
Deputy Director, Office of Consumer Litigation

  s/ Daniel K. Crane-Hirsch
DANIEL K. CRANE-HIRSCH
Massachusetts Bar (BBO) No. 643302
Trial Attorney, Office of Consumer Litigation
U.S. Department of Justice
PO Box 386
Washington, DC  20044-0386
Telephone: 202-616-8242
Facsimile: 202-514-8742
E-mail: daniel.crane-hirsch@usdoj.gov

**APPENDIX 1: Legislative History of 1996 Amendments to FCRA'S Damage Provisions**

Congress modified FCRA's damage provisions only after considerable deliberation.  During the 104th Congress, which enacted the FCRA damages provision at issue here, Congress considered four bills to modify FCRA and issued one report.  *See* H.R. 561, 104th Cong. (1995); S. 650, secs. 401-425, 104th Cong. (as reported by S. Comm. on Banking, Housing, & Urban Affairs Dec. 14, 1995); S. 709, 104th Cong. (1995); S. 1379, 104th Cong. (1995); *see also* S. Rep. No. 104-185 (1995).   The legislation to amend FCRA was ultimately enacted as part of the omnibus appropriations bill for 1996, H.R. 4278, secs. 2401-2422, 104th Cong. (1996).  This bill incorporated S. 650 as reported from committee, which in turn combined features of H.R. 561 and S. 709.

The legislative history from prior Congresses is especially instructive because the Congress that enacted the CCRRA amendments did not conduct hearings on them.  S. Rep. No. 104-185, at 65 (1995) (views of Sens. Mack, Faircloth, Bennett, and Grams).

The 103d Congress considered six bills to modify FCRA (one of which was passed by both houses but did not become law), conducted two hearings, and issued two reports.  *See* H.R. 619, 103d Cong. (1993); H.R. 630, 103d Cong. (1993); H.R. 1015, 103d Cong. (1993); H.R. 1197, 103d Cong. (1993); S. 783, 103d Cong. (1993) (as passed by Senate May 4, 1994, and as passed with amendments by House Sept. 27, 1994); H.R. 5178, 103d Cong. (1994); *see also Consumer Reporting Reform Act of 1993: Hearing Before the S. Comm. on Banking, Housing, & Urban Affairs*, 103d Cong. (1993); *H.R. 1015; Consumer Reporting Reform Act of 1993: Hearing Before the Subcomm. on Consumer Credit & Insurance of the H. Comm. on Banking, Finance, & Urban Affairs*, 103d Cong. (1993); S. Rep. No. 103-209 (1993); H.R. Rep. No. 103-486 (1994).

The 102d Congress considered ten bills to modify FCRA, conducted four hearings, and issued one report.  *See* H.R. 194, 102d Cong. (1991); H.R. 421, 102d Cong. (1991); H.R. 633, 102d

Cong. (1991); H.R. 670, 102d Cong. (1991); H.R. 1751, 102d Cong. (1991); S. 1809, 102d Cong. (1991); S. 1853, 102d Cong. (1991); H.R. 3596, 102d Cong. (1992); H.R. 4806, 102d Cong. (1992); S. 2776, 102d Cong. (1992); *see also Fair Credit Reporting Act: Hearings Before the Subcomm. on Consumer Affairs & Coinage of the H. Comm. on Banking, Finance, & Urban Affairs*, 102d Cong. (June 6, 1991 (762 pages) and Oct. 24, 1991 (491 pages)); *Fair Credit Reporting Act: Hearings Before the Subcomm on Consumer & Regulatory Affairs of the S. Comm. on Banking, Finance, & Urban Affairs*, 102d Cong. (1991); *Consumer Problems with Credit Reporting Bureaus: Hearings Before the Subcomm. on Consumer of the S. Comm. on Commerce, Science, & Transportation*, 102d Cong. (1992); H.R. Rep. No. 102-692 (1992).

The 101st Congress considered six bills to modify FCRA and conducted two hearings. *See* H.R. 909, 101st Cong. (1989); H.R. 1566, 101st Cong. (1989); H.R. 3740, 101st Cong. (1989); H.R. 4122, 101st Cong. (1990); H.R. 4213, 101st Cong. (1990); S. 2764, 101st Cong. (1990); *Fair Credit Reporting Act: Hearings Before the Subcomm. on Consumer Affairs & Coinage of the H. Comm. on Banking, Finance, & Urban Affairs*, 101st Cong. (1989); *Amendments to the Fair Credit Reporting Act: Hearings Before the Subcomm. on Consumer Affairs & Coinage of the H. Comm. on Banking, Finance, & Urban Affairs*, 101st Cong. (1990).

42

| APPENDIX 2:  Civil Liability Provisions under Various Titles of the Consumer Credit Protection Act (CCPA) | | |
|---|---|---|
| **Title** | **Liability standard** | **Civil liability provisions** |
| Truth in Lending Act, Title I of CCPA, 15 U.S.C. § 1640(a) (in CCPA as enacted in 1968; class action relief limited in 1974) | Strict liability. | For individual actions, actual damages, *plus* various ranges of statutory damages—$100 to $1,000 for many—depending upon transaction type.  For class actions, actual damages, *plus* "such amount as the court may allow," capped at the lesser of $500,000 or 1% of defendant's net worth.  Section 1640(a), para. 2, specifies particular factors to be considered "among other relevant factors" in determining class-action awards. |
| Credit Repair Organizations Act, Title IV of CCPA, 15 U.S.C. § 1679g (added 1996) | Strict liability. | Actual damages, *plus* punitive damages of "such additional amount as the court may allow."  Section 1679g(b) specifies particular factors to be considered "among other relevant factors" in determining class-action punitive-damage awards. |
| Fair Credit Reporting Act (FCRA), Title VI of CCPA, 15 U.S.C. §§ 1681n, 1681*o* (added 1970; amended 1996) | Negligence for actual damages; willfulness for statutory damages. | For negligent violations, actual damages.  For willful violations (under 1996 amendments enacted by CCRRA), either actual damages, or statutory damages between $100 and $1,000, *plus* such punitive damages "as the court may allow." |
| Equal Credit Opportunity Act, Title VII of CCPA, 15 U.S.C. § 1691e(b) (added 1974) | Strict liability. | Actual damages, *plus* punitive damages of up to $10,000.  Class-action punitive-damage awards capped at the lesser of $500,000 or 1% of defendant's net worth.  Section 1691e(b) specifies particular factors to be considered "among other relevant factors" in determining punitive damages. |
| Fair Debt Collection Practices Act, Title VIII of CCPA, 15 U.S.C. § 1692k (added 1977) | Strict liability (although see next column for affirmative defense). | For individual actions, actual damages *plus* "such additional damages as the court may allow" up to $1,000;.  For class actions, actual damages *plus* "such additional damages as the court may allow," capped at the lesser of $500,000 or 1% of defendant's net worth.  Section 1692k(b) specifies particular factors to be considered "among other relevant factors" in determining awards.  Affirmative defense available if defendant shows violation was unintentional and resulted from bona fide error, "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." |
| Electronic Fund Transfer Act, Title IX of CCPA, 15 U.S.C. § 1693m (added 1978) | Strict liability (although see next column for affirmative defense). | For individual actions, actual damages *plus* statutory damages between  $100 and $1,000.  For class actions, actual damages *plus* statutory damages in "such amount as the court may allow," capped at the lesser of $500,000 or 1% of defendant's net worth.  Section 1693m(b) specifies particular factors to be considered "among other relevant factors" in determining awards.  Affirmative defense available if defendant shows violation was unintentional and resulted from bona fide error, "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." |

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record as follows:

Counsel in *Grimes v. Rave Motion Pictures*:

Jay Aughtman
E-mail: jay.aughtman@beasleyallen.com
Scarlett M. Tuley
E-mail: scarlette.tuley@beasleyallen.com
Beasley Allen Crow Methvin Portis & Mile
272 Commerce St.
PO Box 4160
Montgomery, AL 36103-4160

William Perry Brandt
E-mail: perry.brandt@bryancave.com
Heather S. Esau Zerger
E-mail: hsesauzerger@bryancave.com
Bryan Cave Llp
3500 One Kansas City Place
1200 Main St.
PO Box 419914
Kansas City, MO 64141-6914

Joshua D. Jones
E-mail: jjones@maynardcooper.com
A. Inge Selden, III
E-mail: iselden@maynardcooper.com
Maynard Cooper & Gale PC
1901 6th Ave. N.
Birmingham, AL 35203-2618

Dylan C. Black
E-mail: dblack@bradleyarant.com
James W. Gewin
E-mail: jgewin@bradleyarant.com
Bradley Arant Rose & White
PO Box 830709
Birmingham, AL 35283-0709

Alexander W. Jones, Jr.
E-mail: irmaj@pm-j.com
William S. Pritchard, III
E-mail: billyp@pm-j.com
Pritchard Mccall & Jones Llc
800 Financial Center
505 N. 20th St.
Birmingham, AL 35203-2605

Counsel in *Harris v. Mexican Specialty Restaurants*:

Jonathan H. Waller
E-mail: jwaller@waller-law.com
Edward E. Angwin
E-mail: eangwin@waller-law.com
Waller Law Office
2140 11th Ave. S., Suite 222
Birmingham, AL 35205

Joshua D. Jones
E-mail: jjones@maynardcooper.com
Maynard Cooper & Gale PC
AmSouth Harbert Plaza, Suite 2400
1901 6th Ave. N.
Birmingham, AL 35203-2618

43

Counsel in *Rush v. Hooters of East Birmingham*:

Micah S. Adkins
E-mail: madkins@msnattorneys.com
Richard A. Bearden
E-mail: rbearden@msnattorneys.com
Massey Stotser & Nichols PC
1780 Gadsden Highway
PO Box 94308
Birmingham, AL  35220-4308

Robert W Capobianco
E-mail: capobianco@elarbeethompson.com
Alisa Pittman Cleek
E-mail: cleek@elarbeethompson.com
Elarbee Thompson Sapp & Wilson LLP
800 International Tower
229 Peachtree St. NE
Atlanta, GA 30303

Donna Eich Brooks
E-mail: dbrooks@lehrmiddlebrooks.com
Lehr Middlebrooks & Vreeland PC
2021 Third Avenue North
PO Box 11945
Birmingham, AL 35202-1945

Counsel in *Floyd v. Express Oil Change*:

Andrew C. Allen
E-mail: ecf@whatleydrake.com
W. Tucker Brown
E-mail: ecf@whatleydrake.com
G. Douglas Jones
E-mail: ecf@whatleydrake.com
Othni J. Lathram
E-mail: ecf@whatleydrake.com
Adam P. Plant
E-mail: aplant@whatleydrake.com
Whatley Drake & Kallas LLC
2001 Park Place N., Suite 1000
PO Box 10647
Birmingham, AL 35202-0647

Keith S. Anderson
E-mail: kanderson@bradleyarant.com
Dylan C. Black
E-mail: dblack@bradleyarant.com
John E. Goodman
E-mail: jgoodman@bradleyarant.com
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Ave. N. Seventh Floor
PO Box 830709
Birmingham, AL 35283-0709

Christopher D. Glover
E-mail: Chris@hoganandglover.com
Douglas Brett Turnbull
E-mail: brett@hoganlawoffice.com
Hogan & Glover PC
2017 Morris Ave., Suite 300
Birmingham, AL  35203


    **s/ Daniel K. Crane-Hirsch**
DANIEL K. CRANE-HIRSCH
Massachusetts Bar (BBO) No. 643302
Office of Consumer Litigation
U.S. Department of Justice
PO Box 386
Washington, DC  20044-0386
Telephone: 202-616-8242
Facsimile: 202-514-8742
E-mail: daniel.crane-hirsch@usdoj.gov