IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JULIE BEST GRIMES, etc.   } | |
| } | |
| Plaintiff,   } | |
| } | CIVIL ACTION NO. |
| v.   } | 07-AR-1397-S |
| } | |
| RAVE MOTION PICTURES   } | |
| BIRMINGHAM, L.L.C., et al.,   } | |
| } | |
| Defendants.   } | |

\* \* \* \* \*

| | |
|---|---|
| BOBBIE HARRIS, etc.,   } | |
| } | |
| Plaintiff,   } | |
| } | CIVIL ACTION NO. |
| v.   } | 07-AR-1930-S |
| } | |
| MEXICAN SPECIALITY FOODS,   } | |
| INC., d/b/a LA PAZ   } | |
| RESTAURANTE & CANTINA,   } | |
| } | |
| Defendant.   } | |

\* \* \* \* \*

| | |
|---|---|
| EDMUND RUSH, etc.,   } | |
| } | |
| Plaintiff,   } | |
| } | CIVIL ACTION NO. |
| v.   } | 07-AR-2154-S |
| } | |
| HOOTERS OF EAST BIRMINGHAM,   } | |
| } | |
| Defendant.   } | |

\* \* \* \* \*

1

```
WILLIAM C. FLOYD, etc.        }
                              }
     Plaintiff,                }
                              }       CIVIL ACTION NO.
v.                            }       07-AR-2043-S
                              }
EXPRESS OIL CHANGE, L.L.C.,   }
                              }
     Defendant.                }
```

## MEMORANDUM OPINION

All four of the above-entitled cases are assigned to the undersigned. They have the following other common features, making them cookie-cutter cases:

1. Each is based on an alleged violation by a vendor of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §§ 1681c(g), and 1681n, the statutory provisions that have spawned so much litigation in federal courts that the multi-district panel has recently picked two competing transferee courts to handle it. *See In re Oilily Fair & Accurate Credit Transactions Act Litig.*, -- F.Supp.2d --, 2008 WL 1395541 (J.P.M.L. Apr. 10, 2008); *In re Texas Roadhouse Fair & Accurate Credit Transactions Act Litig.*, -- F.Supp.2d --, 2008 WL 926079 (J.P.M.L. Apr. 7, 2008). This court is resisting the temptation to wait for these four cases to be transferred.

2. Each case is brought by a single customer who seeks to represent a Rule 23, Fed. R. Civ. P., class of similarly situated individuals against his vendor.

3. Each seeks the damages that, according to FACTA, must be awarded under a strict liability theory in the event of a willful violation of FACTA.  Each plaintiff expressly eschews any claim for actual damages.  In addition to automatic damages, each plaintiff claims the punitive damages and attorneys fees that are also allowed by FACTA.  The descriptions of the four putative classes expressly exclude all persons who want to pursue claims for actual damages.

4. Each case is now before the court on a defendant's motion for summary judgment.  All motions are based on the contention that the FACTA provisions invoked by plaintiffs are unconstitutional.  More precisely, defendants claim that the challenged statutory provisions are both facially defective and are confiscatory in application to these particular defendants and thus violate "due process".

5. Each motion for summary judgment is accompanied by a declaration that satisfactorily demonstrates the catastrophic effect that a class judgment would have on that defendant.  No plaintiff has sought, pursuant to Rule 56(f), Fed. R. Civ. P., to obtain evidence to refute the financial information provided by the defendant. Each defendant concedes the numerosity, commonality and typicality necessary for class certification under Rule 23, Fed. R. Civ. P.  As a matter of simple arithmetic, when the financial condition of each defendant is considered in conjunction with the expected number of FACTA violations, a class recovery would put each

defendant out of business.  Annihilation is assured if each member of the class gets what FACTA purports to guarantee him.

6.   Each defendant notified the United States of the constitutional challenge as required by Rule 5.1, Fed. R. Civ. P. The United States, as advocate for Congress, has intervened and filed a carefully written brief in opposition to the motions for summary judgment.  The issues have also been well briefed by the other parties.

7.   All motions for summary judgment are now under submission. Because the dispositive questions in all four cases are identical, the motions will be addressed together.

### Introduction

This court fully comprehends, and totally agrees with, the doctrine of separation of powers inherent in the Constitution of the United States, namely, that members of the judicial branch must not substitute their conception of good public policy for a statute enacted by the legislative branch.  Congress is responsible for deciding issues of public policy.  It is only when Congress crosses a line clearly drawn by that same Constitution that the judicial branch must exercise its responsibility and duty to intervene and to protect rights guaranteed by that very same Constitution.  These four cases present one of those rare instances when that line was crossed.

The statutory provisions here under review were enacted for the

avowed and salutary purpose of protecting credit card users from identity theft. The here pertinent FACTA provisions read as follows:

15 U.S.C. § 1681c(g).

    **Truncation of credit card and debit card numbers**

    **(1) In general**

    Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

    **(2) Limitation**

    This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

    **\* \* \***

15 U.S.C. § 1681n.

    **Civil liability for willful noncompliance**

    **(a) In general**

    Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

    **(1)(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

    **(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages

>sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
>**(2)** such amount of punitive damages as the court may allow; and
>
>**(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Defendants mount two separate lines of attack on FACTA insofar as it purports to impose strict liability for willfully failing to truncate credit card receipts. Both constitutional criticisms provide irrefutable reasons for this court to declare that FACTA violates the "due process" clause of the Constitution. The Fifth Amendment provides, *inter alia*, that no person (this includes corporations) can be deprived of property without due process of law. If these defendants are exposed to class action treatment of their FACTA violations, as they will be if this court does not rule in their favor, they will be deprived of "due process". Without undertaking to write a law review article, or to write briefs for the anticipated appellees, this court, with some hesitation, but with little doubt, has reached the conclusion that the above-quoted provisions of FACTA, as applied to these defendants, are unconstitutional. Because this court knows that it will not have the final word, it will only briefly outline its rationale, citing little case authority because the propositions of law the court relies on are well understood, virtual truisms.

## How Vague Can a Statute Be and Still Pass Constitutional Muster?

The most obvious denial of "due process" that facially appears in this statutory scheme comes from its vague description of the damages that must be awarded to a single victim against a single vendor for a single willful failure to truncate a customer's electronically produced credit card receipt, even though no actual damages are sustained.  Under § 1681n(a)(1)(A), anyone who seeks actual damages must prove those damages and must prove that they were proximately caused by the vendor's willful noncompliance.  This is a burden these four plaintiffs obviously cannot undertake.  The credit card receipts they received from the various vendor-defendants were undoubtedly taken by the various plaintiffs to their various lawyers before the receipts could get into the hands of identity thieves.  Without having sustained actual damages, credit-card using customers, whether or not they trolled for their non-compliant receipts, can sue their vendors if the vendor recklessly disregarded the FACTA obligation to truncate the credit card receipt (something relatively easy to prove) and can automatically recover "**damages of not less than $100 and not more than $1,000**" for each violation.  If the same customer returns to the same establishment five times in five hours and uses his credit card each time, there will be five FACTA violations, each of which will trigger a strict liability recovery of "**not less than $100 and not more than $1,000**".

The possibility for a misuse of credit cards **by customers** reaches astronomical proportions more than the possibility of misuse of credit card information **by thieves.**

These four plaintiffs, and the United States, have not been able to provide this court with a jury instruction that could satisfactorily explain to a jury how to go about fixing the amount of an award under § 1681n(a)(1)(A). Not only does a willful violation entitle a plaintiff to statutory damages, but also to "punitive damages as the court may allow". FACTA does not purport to take away the Seventh Amendment right to trial by jury. Jury trials require understandable and rational criteria for any award of damages. If the statutory damages in FACTA were fixed at a stationary $500 instead of in an indeterminate amount, the preparation and delivery of a jury charge would be simple and constitutional. Congress, instead, here said "not less than $100 and not more than $1,000".

The concept of "actual damages" is well understood and can be explained by a court in a way to make a jury understand that its purpose is to compensate or to restore the injured party. To the contrary, the statute here under consideration provides no guidance for deciding between $100 and $1,000, leaving it to the whim of the jury, that is, unless the court violates the doctrine of separation of powers and assumes the role of legislator as the only way to make sense of the present non-sensical language. Plaintiffs and the

United States point to some statutes that have certain characteristics similar to the language in this statute, but they point to no statute quite as vague or as impossible to explain to a jury as this one.

Courts and juries cannot be called upon to make up the rules as they go.  Courts cannot be expected to tell a jury, "**Just do what you think is right**" (so long as you do not award less than $100 or more than $1,000).  "Doing what is right" does not meet the standard of "due process".  Many a jury has done what it thought was right, and it was wrong.  As an enforcer of the Seventh Amendment, this court must insist upon a jury's having a chance at fairly performing its adjudicative function and not simply flying by the seat of its pants.

The words "**not less than $100 and not more than $1,000**" constitute an almost perfect illustration of the concept "void for vagueness".  There is no way short of legislation to remove the vagueness and ambiguity in these words.  They make it impossible to conduct a fair trial.  To charge a jury using this loose language would be to invite an unanswerable question from any intelligent jury.  This court could not in good conscience tell a jury to award "not less than $100 and not more than $1,000," and then wait for the jury's puzzled look.

If a jury is allowed to wander indiscriminately between $100 and $1,000 for each willful FACTA violation, one jury can decide

9

that a particular violation calls for $100, while another jury can decide that precisely the same violation by the same vendor is worth $1,000, while other juries can , willy nilly, award something in between.  Congress is, of course, presumed to know what it is doing, a presumption here in jeopardy.  Congress is not perfect, just as the courts are not perfect.

Congress may have here inadvertently mandated class treatment of **all** FACTA cases in which no actual damages are sustained.  No thinking lawyer will file a case like these four without expecting class treatment.  It makes no economic sense to file a single action for a single plaintiff against a single vendor in a single transaction, that is, unless the bare possibility of recovering punitive damages and attorneys fees encourages a few lawyers to do so.  Perhaps these defendants should be conceding class status.  In fact, this court predicts that none of these defendants will continue to resist class treatment if they do not get from this court and the reviewing courts, a declaration that this statute, insofar as it applies to these defendants, is unconstitutional.  The reason for this prediction is that there are already several FACTA cases in other federal courts in which a putative class has been certified and in which a settlement has been reached for "coupons" (or the equivalent) and attorneys fees.

If, as some plaintiffs argue, Congress meant in § 1681n(a)(1)(A) implicitly to allow a jury to slide between $100 and

$1,000, depending upon what it finds to be the **degree** of a particular defendant's willfulness, the word "willful" will receive a new meaning.  Nothing in the FACTA language suggests any difference between how a jury is to react to **slight** willfulness and to **serious** willfulness.  Could the willfulness of a large and successful vendor call for more punishment than the willfulness of a mom-and-pop store?  If the degree of willfulness is a matter for jury consideration, a subsequent award of punitive damages is the remedy expressly provided for punishing egregious conduct.  This court assumes that the statutory words "the court", in assigning the right to impose punitive damages, means "the jury" in a jury case.  Any adjustment upward from the FACTA minimum $100 would necessarily be **punitive**, and therefore would trespass upon the punitive damages provision that immediately follows.  "Due process" does not tolerate a defendant's being punished twice for the same conduct.

Plaintiffs and the United States concede that the award of more than $100 in a particular transaction would represent punishment of the willful conduct of the vendor.  They cannot admit, and therefore do not concede, that punishment under § 1681n(a)(1)(A) renders meaningless or redundant the subsequent language that allows an award of punitive damages under § 1681n(a)(2).  When this issue was brought up during oral argument, counsel for one of the plaintiffs suggested that his client would be willing to amend his complaint to eliminate his claim for punitive damages.  He hoped that such an

11

amendment would obviate the constitutional question. Such an amendment would solve nothing. The question of double punishment inhering in §§ 1681n(a)(1)(A) and 1681n(a)(2) cannot be ignored. How to punish a violator with a substantial money judgment after he has already been punished with a monetary award exceeding the minimum of $100, is a question that defies an answer. The potential that double punishment only exacerbates the problem of how to instruct a jury using the FACTA language.

If the classic words "void for vagueness" have meaning, they perfectly describe this statutory language. The language simply creates an unmanageable problem for courts who cannot be expected to be draftsmen and to judicially innovate solutions that would be an exercise of the legislative function.

Congress apparently recognizes some of the problems it has created in FACTA. It is now busy considering corrective measures. This court cannot wait to see what, if anything, Congress will do that can resolve the unavoidable constitutional issues here presented by these defendants.

### The Confiscatory Effect of the Strict Liability Provision

The United States, as intervenor, argues that it would be premature for this court to consider the "due process" implications of FACTA insofar as it may result in an award of **excessive** damages. The United States insists that the court wait for the actual outcome

in these cases before evaluating them for their constitutional dimensions. Should defendants' cry of impending financial disaster and annihilation be put off until disaster has predicably befallen them after a great expenditure of time and money, including the court of providing notice to hundreds of unaware and uncomplaining class members? The very thought of having to consider post-judgment motions for a reduction of predictably confiscatory awards sends chills down this court's spine. Chilly or not, this court has enough spine not to postpone a decision on a crucial threshold matter when a decision on that matter by some court, is inevitable.

If FACTA's legislative history reveals a rationale for punishing the producer of electronically produced receipts, while not punishing untruncated hand-written receipts, this court has not found it. Both kinds of receipts involve interstate commerce and can be stolen.

It does not take a haruspex to predict with pinpoint precision that classes will be certified in these cases. Almost perfect proof of this is found in *Meehan v. Buffalo Wild Wings, Inc.*, -- F.R.D. --, 2008 WL 548767 (N.D. Ill. 2008). It is also easy to predict that when each class member automatically recovers what he is entitled to (**it is mandated by Congress that each victim receive "not less than $100"**), these defendants will be headed to the bankruptcy court. It is theoretically possible, of course, that Congress intended this result. Whether or not this was its

intention, the Fifth Amendment prohibition against the taking of property without "due process", stands in the way of the judicial implementation of any such congressional intention.

FACTA makes no distinction between the possibility of awarding punitive damages after actual damages have been proven, and after no actual damage whatsoever has been sustained, much less proven. The imposition of punitive damages without any actual damages whatsoever, is a stranger to the Supreme Court which recently said in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 426, 123 S.Ct. 1513, 1524 (2003):

> [C]ourts must ensure that the measure of punishment is both reasonable and **proportionate to the amount of harm** to the plaintiff and to the general damages recovered.

(emphasis supplied).

To impose punitive damages **without the suffering of any harm** is inherently disproportionate. Nominal damages can, of course, represent or substitute for actual damages. Nominal damages may or may not open the door to an award of proportionate punitive damages, but an award of damages that **are by statute expressly not compensatory in nature**, cannot open that door. *State Farm*'s holding is no more than a recognition and elaboration of the easily understood principle enunciated in *St. Louis Iron Mountain & Southern Railway Co. v. Williams*, 251 U.S. 63, 40 S.Ct. 71 (1919), wherein an earlier Supreme Court held that a penalty can be so severe and so disproportionate to the actual damages sustained that

it contravenes due process of law.  Such a contravention becomes even more obvious when the same conduct is being punished twice.

If and when class action status is granted in these cases, the only alternative for these defendants is bankruptcy, that is, unless this court should become willing to play games and to ignore the congressional order to award at least $100 to every class member. This court can see no honest way to avoid certifying a class, and no honest way to approve a settlement that awards less than $100 to each class member.  These defendants probably know that they have not found a court who will approve a "coupon" settlement.  Congress said "not less than $100", and this court must follow Congress, even if it means bankruptcy for every business in the country, that is, of course, unless this Congressional enactment is invalid, as this court thinks it is.

To wait for the assured destruction of these four defendants before removing their exposure to the destructive effects of this unconstitutional statute would be both unfair and a great waste of judicial time and effort, and this court respectfully declines the request of the United States to put off the inevitable.

### Conclusion

Based on the foregoing, FACTA is, on its face and in its application to these defendants, a bomb that has already exploded or is sure so to explode that it needs defusing.  There is no point in waiting to see if these plaintiffs can prove the obvious, namely,

15

that defendants did, in fact, willfully fail to truncate the credit card receipts of the plaintiffs.  Either summary judgment for defendants must be granted now, or summary judgment for the plaintiffs will be granted later.

A separate order granting all defendants' motions for summary judgment will be entered.

DONE this 28th day of May, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE