# Analysis & Perspective

## CLASS ACTION CERTIFICATION

## Ascertainability: An Overlooked Requirement for Class Certification

By Joel S. Feldman, Sarah Hughes Newman, and Anna C. Schumaker

In the realm of class action litigation, Federal Rule of Civil Procedure 23 (Rule 23), and its state equivalents, outline the major requirements for class certification. The explicit requirements of Rule 23 therefore frame the classic battleground for determining whether a lawsuit qualifies for class treatment.

Often overlooked, however, is a critical, implicit, preliminary requirement for class certification, known as "ascertainability." In order to satisfy the ascertainability prerequisite, plaintiff must demonstrate the ability to define the putative class in terms that make the class members objectively identifiable.

This article describes the ascertainability requirement and explores the three different ways courts have applied it as a basis to deny class certification.

### The Ascertainability Requirement and Its Rationale

Before Rule 23 comes into play in a class action, the moving party must show the court that an identifiable class exists.[1] Although ascertainability does not appear in Rule 23, both state and federal courts recognize it as an implied preliminary element of class certification.[2]

This threshold inquiry encompasses two requirements: (1) the class must be adequately defined, and (2) class members must be clearly ascertainable by reference to objective criteria.[3] A precise and ascertainable class allows the court to determine whether a potential class action could be maintained.[4] Courts apply this requirement to ensure that class identification is manageable, and to preserve class members' due process rights through accurate notice.

One key rationale for a clear class definition is that a court must find it "administratively feasible" to determine which individuals are members of the proposed class.[5] A plaintiff may not, accordingly, include subjective criteria within a class definition. When a class definition includes subjective criteria then, by definition, determining who falls within the class boundaries requires individualized factual determinations that preclude administrative feasibility. Examples of subjective criteria include: state of mind, criteria that require an inquiry into the merits of individual class members' claims, and criteria that depend on the outcome of the case.[6]

A precise class definition must allow the identification of a presently ascertainable class by using objective criteria.[7] Otherwise stated, the class definition needs to allow the court to know who is in the class and who is excluded.[8] The class description cannot be so broad

---

Joel S. Feldman is a partner at Sidley Austin LLP's Chicago office. He is a global coordinator for the Financial Services/Consumer Class Action Practice Team, and also heads the Sidley Insurance Class Action practice area. Sarah Hughes Newman and Anna C. Schumaker are associates at Sidley Austin LLP in the Insurance and Financial Services group, and their practice involves class action defense, reinsurance litigation, and complex litigation. The authors can be reached by email to: jfeldman@Sidley.com, snewman@Sidley.com, and acschumaker@gmail.com, respectively.

The authors thank Laura Bayard, J.D. candidate for 2009, for her contributions in researching and drafting this article.

---

[1] *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584, 2006 U.S. Dist. LEXIS 95576, at *11 (S.D. Fla. Aug. 31, 2006); *Lamumba Corp. v. City of Oakland* ("*Lamumba*"), No. C. 05-2712, 2007 U.S. Dist. LEXIS 81688, at *7-8 (N.D. Cal. Nov. 2, 2007).

[2] *Kiobel v. Royal Dutch Petroleum Co.*, 02 Civ. 7618, 2004 U.S. Dist. LEXIS 28812, at *15 (S.D.N.Y. Mar. 31, 2004); *Lamumba*, 2007 U.S. Dist. LEXIS 81688, at *7-8.

[3] *Rose v. Saginaw County*, 232 F.R.D. 267, 271 (E.D. Mich. 2005); *Conigliaro*, 2006 U.S. Dist. LEXIS 95576, at *12.

[4] *Brooks v. Norwest Corp.*, 103 P.3d 39, 46 (N.M. Ct. App. 2004).

[5] *Adair v. Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2004); *Sw. Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.*, 198 S.W.3d 115, 117 (Ark. 2004).

[6] *Guillory v. Am. Tobacco Co.*, No. 97 C 8641, 2001 U.S. Dist. LEXIS 3353, at *10 (N.D. Ill. Mar. 19, 2001) (class definition based on state of mind was not sufficiently definite); *Brooks*, 103 P.3d at 46-47 (determining class membership would require individualized inquiries into the facts and merits of each class member's claim); *Intratex Gas Co. v. Beeson* ("*Intratex*"), 22 S.W.3d 398, 404 (Tex. 2000) (existence of class turned on the outcome of the case).

[7] *Intratex*, 22 S.W.3d at 403-04.

[8] *Rose*, 232 F.R.D. at 271; *Brooks*, 103 P.3d at 47.

Exhibit "A"

that it includes individuals who lack standing to maintain an action.[9] A class is therefore not ascertainable when it is defined as consisting "of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant."[10] Requiring injury for inclusion within a class makes it difficult to identify class members, violates the policy against hearing the merits of the case during class certification, and creates manageability problems.[11]

A second underlying rationale for the ascertainability requirement stems from the importance of insuring that class members' interests are adequately and fairly represented.[12] This includes the necessity of determining which individuals are affected by the litigation.[13] Inextricably linked to the protection of class members' interests is the critical task of providing notice of settlement or successful adjudication. Without notice, class members cannot exercise their right to opt out of a suit and elect not to be bound by any judgment.[14] Only a precise class definition also allows courts to identify individuals who are entitled to notice.[15] An objectively ascertainable class thus allows courts to determine who is bound by a judgment, who is entitled to relief, and who can enforce an injunction against a defendant.[16]

## How Courts Apply the Ascertainability Requirement

We discuss below the three major strands of analysis courts employ to adjudicate the ascertainability requirement. While these strands differ, the rationales driving them remain consistent: maintaining the manageability of the class action device, and preserving the due process rights of potential class members.

### Subjective or Amorphous Class Definitions

Courts invoke the ascertainability requirement when the class definition is too broad or requires subjective analyses for class membership. Denial of class certification on this ground occurs because the proposed class definition involves either subjective prerequisites to class membership, or it encompasses individuals that did not suffer from the defendant's alleged conduct. In these cases, to determine class membership, the court must undertake considerable time and expense to evaluate whether potential class members fall within or outside of the class definition.

The factual analyses necessary in these cases are not directly linked to the cause of action. The issue, instead, is whether the court can objectively locate individuals who have standing to sue the defendant.

One common example of a subjective or amorphous class definition is where the definition includes the mental state of the class members. In such situations, a court must first determine whether any class member satisfies the specified mental state *before* any person can qualify as a member of the putative class. Because there are no objective means to determine the mental state of potential class members, class definitions that incorporate a subjective mental state fail to satisfy the preliminary ascertainability requirement.[17] "Such definitions frustrate efforts to identify class members, contravene the policy against considering the merits of a claim in deciding whether to certify a class, and create potential problems of manageability."[18]

*Oshana v. Coca-Cola Co.*[19] provides a good example of a class definition failing ascertainability because it incorporated the mental state of the class members. In *Oshana*, plaintiff claimed that Coca-Cola allegedly failed to disclose that fountain Diet Coke, unlike Diet Coke® from a can or a bottle, includes Saccharin® (canned or bottled Diet Coke® is sweetened with Aspartame® only). The class definition, however, included all persons who purchased fountain Diet Coke®.[20] Class membership thus depended upon whether potential class members purchased Diet Coke® with knowledge that it contained Saccharin®. Because "an identifiable class does not exist if membership is contingent on a particular state of mind," the court held that the proposed class was not ascertainable. Rather than proffering a presently ascertainably class, class membership depended upon each potential class member's knowledge when they purchased the product.[21] The court noted that "[c]onsiderable cost and time would have to be expended by the court and parties before the class could even theoretically be identified."[22]

Courts also find that class definitions incorporating subjective characteristics fail the ascertainability requirement because they "yield[] considerable indeterminacy and imprecision."[23] Rather than creating imprecision, a class definition must produce a definite class capable of being located so that class notice can be sent out, and the court can manage the case efficiently.[24]

Another common example of an amorphous or subjective class definition arises when the proposed class definition is overly broad. A class definition is overly broad when the definition includes uninjured individuals. In these cases, individuals who lack standing become part of the class due to the vague class definition. These classes are not ascertainable because individuals with no injury become part of the class and recover from the defendant in the event of settlement or entry of judgment against the defendant.

*Conigliaro v. Norwegian Cruise Lines Ltd.*,[25] provides a clear example of an overbroad class definition.

---

[9] *Guillory*, 2001 U.S. Dist. LEXIS 3353, at *8-9; *Holmes v. Pension Plan of Bethlehem Steel Corp. and Subsidiary Cos.*, No. 98-CV-1241, 1999 U.S. Dist. LEXIS 10467, at *8 (E.D. Pa. June 30, 1999).

[10] *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001).

[11] *Rodriguez v. Gates*, No. CV 99-13190, 2002 U.S. Dist. LEXIS 10654, at *31-32 (C.D. Cal. May 30, 2002); *Conigliaro*, 2006 U.S. Dist. LEXIS 95576, at *13-14.

[12] *Brooks*, 103 P.3d at 45-46.

[13] *Intratex*, 22 S.W.3d at 403.

[14] *Id.*

[15] *Rose*, 232 F.R.D. at 271.

[16] *Id.*; *Rodriguez*, 2002 U.S. Dist. LEXIS 10654, at *32.

[17] *Manual for Complex Litigation (Third)* § 30.14, at 217-18 (1995) ("Definitions, particularly under [Fed. R. Civ. P. 23](b)(3), should avoid criteria that are subjective.").

[18] *Id.*

[19] 225 F.R.D. 575, 580-81 (N.D. Ill. 2005) (citing *Zapka v. Coca-Cola Co.*, No. 99 CV 8238, 2000 U.S. Dist. LEXIS 16552, at *7 (N.D. Ill. Oct. 26, 2000).

[20] *Id.* at 578.

[21] *Id.* at 580-81.

[22] *Id.* at 581.

[23] *Conigliaro.*, 2006 U.S. Dist. LEXIS 95576, at *20.

[24] *Guillory*, 2001 U.S. Dist. LEXIS 3353, at *9-10.

[25] 2006 U.S. Dist. LEXIS 95576, at *13-16.

COPYRIGHT © 2009 BY THE BUREAU OF NATIONAL AFFAIRS, INC.   LW   ISSN 0148-8139

In *Conigliaro*, plaintiff sought compensation for emotional injuries resulting from a cruise liner that passed through a severe storm. The court concluded that the definition failed the ascertainability test because it included an overly broad class; namely, the cruise ship undoubtedly included a material number of persons who suffered no emotional injury.[26] Similarly, in *State ex rel. Coca-Cola v. Nixon*,[27] the court addressed the same class definition as in *Oshana v. Coca Cola*. The court found the class definition overly broad, since there would be a large number of class members who were uninjured because they did not know or care whether Diet Coke® contained saccharin.[28]

Courts also apply the overly broad strand of ascertainability where the class definition includes individuals without claims properly before the court.[29] In *Rose v. Saginaw County*, the class definition included all detainees who were stripped of their clothing prior to administrative segregation. During summary judgment proceedings, however, the court entered liability determinations for a narrower class definition. The court concluded that the definition would include many additional inmates who did not share the named plaintiffs' characteristics—individuals who were "materially different" than the named plaintiffs. Such differences would create significant administrative hurdles for the court. Because of these differences, and the fact that the plaintiffs did not limit the definition in any way, the court ultimately would have to evaluate each class member differently. The court thus would be forced to analyze additional alleged violations to the named plaintiffs' violations, which would completely derail the efficiencies and purpose of the class action.

Even if the qualifications for class membership may be based on objective criteria, that does not necessarily mean that the class is ascertainable. For instance, in a Texas class action, the named plaintiffs alleged violations of the Telephone Consumer Protection Act.[30] To identify potential class members, the plaintiffs submitted a list of telephone numbers that allegedly received the communications the plaintiffs received from the defendants. Although the class was based on objective criteria, the court found the class unascertainable because plaintiffs presented no evidence that the logs could actually be used to determine class members' names.[31]

The driving force behind the overbroad and state of mind analyses is the concern that individuals with no right to recovery may become part of a class with an overbroad definition, as both types of classes require a prerequisite analysis of subjective characteristics of potential class members. In refusing to certify such classes because the definitions are too subjective, courts note the considerable time and expense that would arise from the necessity of identifying class members before any consideration of the merits.

### Individualized Inquiry

Courts also deny class certification based on the preliminary ascertainability requirement when an individualized inquiry into the facts or merits must occur to determine class membership. Resolving even a single fact to determine class membership can be an administrative nightmare that results in failure to satisfy the ascertainability requirement. In *Fisher v. Ciba Specialty Chemicals Corp.*,[32] for example, class membership turned on whether a particular piece of property was income-producing as of a date certain. To determine this one fact, "[d]epositions would need to be taken, documents would have to be produced, and arguments would need to be heard,"[33] for *every single class member*. The result "would be a series of mini-trials just to evaluate the threshold issue" of class membership.[34] Such a procedure would generate "massive administrative burdens" that would counteract any efficiency gains from the class action procedure.[35]

The more complicated the factual determination that must be made for each class member, the easier it is for a court to conclude that the class is non-ascertainable. In *Brooks v. Norwest Corp.*,[36] an extensive factual inquiry would be required to determine which bank customers had received overdraft charges as a result of the bank's posting order. The only way to determine class members would be through "an individual and thorough analysis of each member's account and a comparison to other methods" for each overdraft fee that was charged.[37] Because of the "enormous time and expense involved" in such highly individualized inquiries, the class was not ascertainable as a practical matter.[38]

Some class definitions may require individual inquiries into the merits as well as the facts of each potential class members' case. For example, in *Rodriguez v. Gates*, the proposed class included all persons whose constitutional rights were violated by a particular police unit.[39] This definition left the court with no objective way to determine class membership without deciding the merits of each class member's claim. Like the concerns over preliminary factual inquiries, this inquiry into the merits of each case creates administrative problems that undermine the benefits of the class action. Determining class membership "would require the Court, before receipt of a proof of claim, to hold a full trial on the merits of that purported class member's claim."[40]

An inquiry into the merits of individual class members' cases, in addition to creating manageability prob-

---

[26] *Id.*
[27] 249 S.W.3d 855, 861-62 (Mo. 2008).
[28] *Id.* at 861.
[29] *See Rose*, 232 F.R.D. at 270-71; *see also Holmes*, 1999 U.S. Dist. LEXIS 10467, at *9-14 (finding that a class that included individuals whose claims had been previously dismissed was overly broad, denying certification).
[30] *Intercontinental Hotels Corp. v. Girards & Girards, P.C.*, No. 05-02-01604-CV, 2004 Tex. App. LEXIS 2178, at *3-5 (Tex. App. – Dallas Mar. 2, 2004).
[31] *Id.* at 5. Arkansas state courts follow the same line of reasoning, finding that a class "cannot be excessively broad or amorphous." *Ferguson v. Kroger Co.*, 37 S.W.3d 590, 593 (Ark. 2001).

[32] 238 F.R.D. 273, 301 (S.D. Ala. 2006).
[33] *Id.* at 302.
[34] *Id.*
[35] *Id.; see, e.g., Adair*, 221 F.R.D. at 577-78, in which the court held that there was no way to determine "whether any particular one of MONY's 657,547 whole-life insurance policies was part of an ERISA plan without doing the same kind of fact-intensive analysis that was necessary [] to determine if [the named plaintiff's] life-insurance policies were part of an ERISA plan."
[36] *Brooks*, 103 P.3d at 47.
[37] *Id.*
[38] *Id.*
[39] 2002 U.S. Dist. LEXIS 10654, at *33.
[40] *Id.* at *34 (emphasis omitted).

lems, also disrupts the class action process. Merits inquiry impinges on the parties' rights to a jury trial, since once the court has determined class membership, there would be little for a jury to do at trial. An individualized merits inquiry to determine class membership thus "turns Rule 23 on its head" because the Court must address the merits of class members' claims before a class is certified.[41]

### Fail-Safe Classes

In some cases, a class definition that is tied to the merits of the case may create an impermissible "fail-safe" class. A "fail-safe" class cannot fail for the plaintiff because the class definition is based upon the defendant's liability. If the plaintiff wins the case, the class exists and its members are bound to the favorable judgment. But if the plaintiff loses the case, the class does not exist, so the potential class members are not bound by the loss and may pursue their own cases. Courts have held that this unbalanced situation violates the principles of res judicata and have declined to allow fail-safe classes to be certified. A fail-safe class bypasses the requirement that there must be an ascertainable class before a judgment on the merits of the case. This conflates the class certification and merits determination phases of the class action in a way that is grossly unfair to the defendant.

A "fail-safe" class is created when the class is "framed as a legal conclusion."[42] When the class definition includes a reference to the defendant's liability, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability is made. Both the court and the parties must therefore "await the outcome of the litigation to determine who, if anyone, is in the class."[43] An example of a fail-safe class definition includes workers "who were entitled" to overtime pay but did not receive it.[44] Since the central issue of the case was whether the workers were "entitled" to overtime, membership in the class could not be determined until after a trial on the merits of the case. A fail-safe class "turns Rule 23 on its head by requiring that the court address the merits of plaintiffs' claims before certifying a class."[45]

A fail-safe class presents both manageability and due process concerns. Because "the scope and size of the class is impossible to determine without a final determination on the merits," the court cannot make reasoned decisions as to the superiority and manageability of the class action.[46] Allowing a fail-safe class is unfair to the defendant because it allows the class representative "to secure the benefits of proceeding with a class-action suit without first satisfying the requirements for maintaining one."[47]

Certifying a fail-safe class also presents due process concerns because it "inevitably creates one-sided results."[48] If the defendant is found liable, class membership is then ascertainable and the litigation comes to an end, although the class members' rights to opt out of the litigation have been compromised. But if the defendant is found not liable, the class does not exist, and the proposed class members cannot be bound by the judgment.[49] "[A]ny or all" of the potential class members "could sue in another court . . . and escape the bar of res judicata."[50]

In Intratex Gas Company v. Beeson ("Intratex"),[51] for example, the Texas Supreme Court found that the trial court abused its discretion by certifying a fail-safe class. The proposed class definition included all producers "whose natural gas was taken by the defendant in quantities less than their ratable proportions."[52] Since whether Intratex took natural gas on a nonratable basis was the ultimate issue of liability in the case, class membership could not be determined until the end of the trial on the merits. If judgment is rendered for Plaintiffs, the producers' opt-out rights would be compromised because the judgment would be binding on them. "But if Intratex wins at trial, there is no class because its existence is dependent on a finding that Plaintiffs were taken from nonratably."[53] Without a way to determine class membership in advance of the trial, the class members could not be bound by the judgment.

A fail-safe class may also be created where the definition does not allow adverse judgments to be entered against individual class members, rather than the entire class. For example, in Genenbacher v. Centurytel Fiber Co. II, the class definition included property owners: (1) whose property was not subject to an easement, and (2) who did not give permission to the defendant for the installation of fiber-optic cables.[54] This definition created a fail-safe class because it was impossible to exclude putative class members who had easements or had given consent. If the defendant could prove an easement or consent, then the defendant would be entitled to judgment in its favor with respect to that particular piece of property. But the court could not enter an adverse judgment, since the property owner would no longer fit into the class definition. The definition creates a fail-safe class, because the class members either win or are not in the class—the individual class members cannot lose the case.

### Conclusion

A clear, precise, and objective class definition is critical to the success of the class action process. When such a clear and precise definition is lacking, then class certification must be denied due to failure to satisfy the preliminary, implied ascertainability requirement.

---

[41] Heffelfinger v. Elec. Data Sys. Corp., No. CV 07-00101, 2008 U.S. Dist. LEXIS 5296, at *46 n.57 (C.D. Cal. Jan. 7, 2008).
[42] Intratex, 22 S.W.3d at 404.
[43] Id. at 405.
[44] Heffelfinger, 2008 U.S. Dist. LEXIS 5296, at *42 (emphasis omitted).
[45] Id. at *46 n.57.
[46] Id.
[47] Intratex, 22 S.W.3d at 404.

[48] Id. at 405.
[49] Id.
[50] Heffelfinger, 2008 U.S. Dist. LEXIS 5296, at *46 (emphasis added).
[51] 22 S.W.3d at 398.
[52] Id. at 405.
[53] Id.
[54] 244 F.R.D. 485, 487 (C.D. Ill. 2007).