FILED

2010 Jan-29  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JULIE BEST GRIMES,           }
                             }
        Plaintiff,           }
                             }      CIVIL ACTION NO.
v.                           }      07-AR-1397-S
                             }
RAVE MOTION PICTURES         }
BIRMINGHAM, L.L.C., et al.,  }
                             }
        Defendants.          }


### MEMORANDUM OPINION

Plaintiff, Julie Best Grimes ("Grimes"), individually and on behalf of a putative class of similarly situated persons, moves for certification of the above-entitled action as a class action.  She alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), 15 U.S.C. § 1681c(g). Defendants, Rave Motion Pictures Birmingham, LLC, Rave Motion Pictures Birmingham II, LLC, Rave Motion Pictures Birmingham III, LLC, and Rave Reviews Cinema, LLC, (collectively "Rave"), oppose certification.

The case was earlier appealed to the Eleventh Circuit after this court held FACTA to be unconstitutionally vague and confiscatory.  *See Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 552 F. Supp. 2d 1302 (N.D. Ala. 2008).  The Eleventh Circuit reversed, holding that a jury can be trusted to fix the statutory damages at some figure between a minimum of $100 and a

maximum of $1,000 per violation.  As to the issue regarding confiscation, the Eleventh Circuit found FACTA to be constitutional on its face, but that an "as applied" challenge was premature because there has not been sufficient factual development in this case to form a basis for determining whether the concept applies. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301 (11th Cir. 2009).  The Eleventh Circuit sent the case back to this court to decide, *inter alia*, whether class treatment under Rule 23, F.R. Civ. P. is appropriate.  For the reasons that follow, the court finds that class treatment is not appropriate.

## FACTS

In 2003, Congress enacted FACTA as an amendment to FCRA. FACTA provides, *inter alia*, that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1) (2006).  Insofar as is pertinent to this case, FACTA's enforcement mechanism provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under

> false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a) (2006).

At about the time this court was erroneously holding FACTA to be unconstitutional on its face, Congress was enacting the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), a statute that insulated vendors from liability for violations based on the mere inclusion of the expiration dates of credit cards, as distinguished from the card owner's identifying numbers.[1]  Thus, merchants like Rave who, after December 4, 2006, willfully printed more than the last 5 digits of a consumer's credit card number on a digital receipt are liable for actual damages to the plaintiff, **OR** for statutory damages of not less than $100 and not greater than $1,000 per violation, for costs and

_____

[1] The Clarification Act amended the FCRA to provide:

For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.

The Clarification Act, Pub.L. 110-241, § 3(a), 122 Stat. 1565, 1566 (2007) (codified at 15 U.S.C. § 1681n(d) (Supp. 2008)).

attorneys fees, and for punitive damages if ordered by the court.[2]

Rave, in the 4 different manifestations named as defendants, owns and operates movie theaters in 12 states, including the State of Alabama. (Defs.' Br. in Opp'n, at 6; Nelson Aff ¶ 5.) The parties make no point of the fact that there are 4 defendants that appear to be separate corporate entities, each with different management and location. Therefore, the court will treat Rave as one enterprise for the purposes of this suit. At each of Rave's theaters, tickets are sold and receipts are generated at point of sale terminals located either at the box office or at a free-standing automated self-serve kiosk located at the specific theater. (Defs.' Br. in Opp'n, at 6.) These point of sale terminals and self-serve kiosks operate on software that can be configured to print only certain credit card information on receipts. (Defs.' Br. in Opp'n, at 7-8.) In late 2006, Rave upgraded the software that was being run on its terminals and kiosks. (Defs.' Br. in Opp'n, at 7.) Whether this was in response to FACTA does not appear.

In the spring of 2007, Rave was sued in Louisiana for an alleged FACTA violation based on its inclusion of credit card expiration dates on the receipts being generated. (Defs.' Br. in Opp'n, at 8.) As a result, Rave began a system-wide audit of its

---

[2] FACTA exempts merchants who do not generate electronic receipts, but instead handwrite receipts or use imprint machines, from its truncation requirement. *See* 15 U.S.C. § 1681c(g)(2) (2006).

sales software to ensure full compliance with FACTA. (Defs.' Br. in Opp'n, at 8.) During that audit, Rave found that some point of sale terminals and self-serve kiosks were not properly configured to meet FACTA standards because some machines were printing the expiration dates of credit cards being used by customers. (Defs.' Br. in Opp'n, at 8-9.) However, the audit did not reveal that any terminal or kiosk was printing more than the actual last 5 digits of any customer's credit card number. (Defs.' Br. in Opp'n, at 10.) In other words, the check of terminals reflected FACTA compliance except that some terminals were still printing expiration dates. By August 9, 2007, the software on all of Rave's point of sale terminals and self-serve kiosks had been fully checked and configured to ensure that the receipts thereafter generated were fully compliant with all FACTA requirements. (Defs.' Br. in Opp'n, at 9; Pl.'s Br. in Supp., at 3-4.)

On July 27, 2007, Grimes filed her complaint, alleging that on two different occasions (May 25, 2007 and July 21, 2007) Rave had issued her a credit card receipt containing more than the last 5 digits of her credit card number. By August 9, 2007, Rave, in its four manifestations, had been served with the summons and complaint. On March 14, 2008, after discovery was completed, Rave moved for summary judgment as against Grimes individually. Grimes, of course, cannot be a class representative if she has no claim. The motion for summary judgment challenged FACTA's

5

constitutionality.  This court granted Rave's motion, whereupon Grimes appealed, obtaining the reversal and remand previously mentioned.

After remand, this court allowed discovery regarding the class certification issue.  On September 28, 2009, Grimes moved to certify the action under Rule 23, F.R. Civ. P.  Not only have briefs been filed on Grimes's motion, but on October 23, 2009, the court heard oral argument, during which the court ordered Grimes to present to the court a proposed form of class notice.  Grimes thereafter did so.  The text of Grimes's proposed class notice is as follows:

**CLASS ACTION SETTLEMENT NOTICE**

> If you are a consumer who used an American Express or any other credit card to purchase a ticket at any Rave Motion Picture Theater between December 4, 2006 and August 9, 2007 and were provided an electronically printed credit card receipt containing more than the last five digits of your credit card number, you should read this notice.  Your legal rights may be affected.  This notice pertains to the lawsuit **Grimes v. Rave Motion Pictures Birmingham, LLC** CV-1397-WMA, in the District Court for the Northern District of Alabama.
>
> The lawsuit alleges that the Defendants willfully violated the Fair and Accurate Credit Transaction Act (FACTA) by providing consumers with credit card receipts containing more than the last four digits of the credit card number.  The Defendant denies that it willfully violated any laws.  The Plaintiff does not allege any actual damages as a result of the alleged FACTA violations.  If you received a credit card receipt from Defendant with more than the last four digits of your credit card number printed on it, you may be entitled to, between $100 and $1000, should the Plaintiffs prevail at trial.
>
> The Court has appointed as class counsel, <u>Scarlette Tuley</u>, of the law firm, <u>Beasley, Allen, Crow, Methvin,</u>

6

Portis & Miles, PC and Alexander Jones, Jr. And William
Pritchard of Pritchard, McCall & Jones, LLC.   Class
counsel has requested a fee to be determined by the
Court.  Class counsel's fee, if any, will be paid by the
Defendants.  The Defendants are represented by James
Gewin and Dylan Black of Bradley, Arant, Bolt & Cummings,
LLP and William Brandt and Heather Esau Zerger of Bryan,
Cave, LLP.
    You are not responsible for any attorney's fees
unless you decide to hire your own lawyer.  It is within
your rights to hire a lawyer and make an appearance in
this case, but it is not necessary to do so to be
eligible to participate in the class.  To participate in
the class, you must call _____ or write Rave
Class Action, P.O. Box 4160, Montgomery, AL 36103, and
include in the letter or message your address and phone
number so the appropriate forms can be sent you.

(Doc. 91, Ex. 1.)

## ANALYSIS

Both parties include in their briefs lengthy discussions of
whether or not Rave was aware of the requirements of FACTA when it
issued the receipts to Grimes, and whether or not any such
knowledge denotes the "willfulness" that is the *sine qua non* of
FACTA liability.  Admittedly, Congress would not have used the word
"willfully" if it had meant "automatically and without reference to
scienter."  At this stage, the question of whether Rave's conduct
was willful in its dealing with Grimes, or as to any other member
of the putative class, is not before the court.  The only question
before the court is whether Grimes has satisfied the requirements
of Rule 23(a) and (b), F.R. Civ. P., so as to make class treatment
the appropriate means for adjudicating the claim.

Although not explicit in Rule 23(a) or (b), courts have

universally recognized that the first essential ingredient to class treatment is the **ascertainability of the class**. *See, e.g.*, *Leysoto v. Mama Mia I, Inc.*, 255 F.R.D. 693, 696 (S.D. Fla. 2009) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)); *see also* 5 James Wm. Moore et al., Moore's Federal Practice § 23.21[1] (3d ed. 2008) ("**Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'**" (emphasis added)).   Thus, the named plaintiff must define the proposed class in a manner that adequately identifies its members. Who, exactly, are they, and how can they be located?

After the implicit requirement of ascertainability is met, Rule 23 explicitly requires that in order to proceed as a class the plaintiff must establish the 4 prerequisites in Rule 23(a), namely:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), F.R. Civ. P.   If these 4 prerequisites can be established, the class must also fit within at least one type of class actions recognized in Rule 23(b).   Grimes submits that her claims not only satisfy all of the above requirements of Rule 23(a), but also satisfy the requirements of Rule 23(b)(3), namely,

that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Rule 23(b)(3), F.R. Civ. P.

"'The decision to certify is within the broad discretion of the district court . . . .'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).   The court now undertakes to exercise its discretion based upon the information presented by the parties.

## I.   Ascertainability

The amended class description furnished by Grimes reads as follows:

> All persons to whom the Defendants provided an electronically printed purchase receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit and/or debit card number; said class seeks only statutorily defined damages as set out in 15 U.S.C. § 1681; said class excludes anyone who has incurred actual damages as defined in said statute; said class excludes anyone who has filed a similar individual action against the Defendants, judicial officers of the United States and State of Alabama and counsel for the parties in this action.

(Pl.'s Br. in Supp., at 1.)

Without being unduly critical of the grammar and/or sentence structure employed by Grimes, her description does not meet the standard of ascertainability.   As already recognized, "ascertainability" must exist before numerosity and typicality can

9

even be considered.  How many of the persons who purchased Rave tickets after December 4, 2006, the effective date of FACTA, sustained **actual** damages and therefore are not within the embrace of this class description?  Although Rave says that no one has made a claim of actual damages as a result of receiving a non-compliant receipt, theoretically every FACTA non-compliant receipt that may have been issued by Rave, except the two of which Grimes individually complains, caused **actual** damages to the thus victimized credit cardholder.  If all such are excluded, there may be no class.  The class description also still includes credit cardholders or consumers that may be business entities.  At least one federal court has held that non-human credit cardholders, such as corporations, do not have a cause of action under FACTA.  "Person" is usually defined to include business entities, but, according to that court, not in FACTA.  *See Pezl v. Amore Mio, Inc.*, 259 F.R.D. 344 (N.D. Ill. 2009), an opinion on appeal to the Seventh Circuit.  Does Grimes want to assume the risk of including corporate consumers in her class?  This court shared *Pezl* with Grimes during oral argument, but the proposed class notice she thereafter submitted does not account for the court's *Pezl* concerns.  The court also expressed its concern over the fact that the class description nowhere mentions that a non-compliant receipt, in order to trigger liability, must have been "willfully" provided to a customer, an essential element for every FACTA claim.

The mere mention in the class notice that Rave denies that it was "willful" does not alert would-be class members that they will bear the burden of proving "willfulness."

Courts do not delve into the merits of individual claims at the class certification stage. To do so would allow the prospective class representative "to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Thus, class certification is not appropriate if the court is called on to engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class. *See Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 301 (S.D. Ala. 2006); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003); *see also* 5 James Wm. Moore et al., Moore's Federal Practice § 23.21[3][c] (3d ed. 2008) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class."). Requiring the class to be clearly described places the court in a position to determine whether the class meets the pre-requisites for class treatment expressly set forth in Rule 23(a) and (b). For instance, because of its amorphous description, it is impossible at this moment to know whether Grimes's proposed class

is numerous enough, or too small, to warrant class treatment.

Grimes's putative class can never be ascertained without first conducting an individualized inquiry into the merits of each putative class member's claim. Rave does not maintain, nor has it ever maintained, a database or any paper record that preserves information sufficient to allow identification of any member of this proposed class. For very understandable security reasons, Rave does not retain credit card numbers in its files. Copies of receipts are not generated by Rave's point of sale software. The original receipts themselves are, of course, given to the customer.

On these thus far undisputed facts, there is no way to determine who was or was not issued a FACTA non-compliant receipt by Rave, except for those issued to Grimes, or to unknown and virtually unknowable persons who may have received and for some reason preserved them. It is ominously strange that despite the publicity that has surrounded this case, no person has intervened or sought to join Grimes as a plaintiff. Can purchased publicity after class certification accomplish what free publicity has not?

To repeat *ad nauseam*, certification of plaintiff's class would require the court to examine the receipts of self-identified members of the class, whether cajoled and prompted or not, in order to determine their status. Without a receipt, no plaintiff would have proof of a claim, the *sine qua non* of class membership. Such a plaintiff by plaintiff examination would not only be a task

beyond the court's logistical capacity, but would constitute a prohibited merits based analysis.

Grimes argues that Rave knows, or can find out, which of its self-serve kiosks and point of sale terminals "were configured correctly to mask data and which ones were lacking in configuration" because "a team went out to each theater after this lawsuit was filed and compiled a 'FACTA book' containing printed receipt exemplars from each terminal for different transactions." (Pl.'s Reply Br., at 3.)  Grimes argues on this basis that "Rave's compliance efforts . . . show that Rave is aware of which locations and even specific machines at those locations were capable of printing non-conforming receipts," and that "[t]his should make the customers who received noncompliant receipts more ascertainable not less." (Pl.'s Reply Br., at 3.)  This argument is unavailing.  It ignores the fact that in the course of its compliance efforts Rave found not one single machine, except the one used by Grimes, that was generating receipts that contained more than the last 5 digits of a credit card number.  (Defs.' Br. in Opp'n, at 10; Rakowski Aff. ¶ 36.)  Regardless of whether or not Rave knows which machines may have ever generated non-conforming receipts, Rave does not maintain or have available any database or paper record by which the names of persons who used a credit card at any particular kiosk or ticket terminal after December 4, 2006 and before August 9, 2007 can be ascertained.  To acquire membership in this class would

13

require self-identification in response to dragnet notices given by aggressive publication in newspapers in the 27 cities where Rave theaters are located (Oral Argument Tr. [Doc. 96], at 21.), followed by a merits based examination of each receipt presented by the few persons who might surprise the court.

The following proposed notice, drafted by the court, illustrates the problem:

> You may become a member of this class **if** you are a person (not a corporation) who made a purchase between December 4, 2006 and August 9, 2007 at a Rave theater using a debit or credit card and who received an electronically produced receipt; **and if** the said receipt included more than the last 5 digits of your card (not including the expiration date); **and if** you still have in your possession the receipt; **and if** you have reason to believe that the receipt was issued to you by Rave in willful violation of the federal law that prohibits furnishing such a receipt; **and if** you sustained no actual damages as a result of said noncompliant receipt; **and if** you are willing to submit to deposition in Birmingham, Alabama, upon request.

This court doubts that any such notice would produce a class that meets the numerosity requirement.  In fact, that doubt is so overwhelming that the court probably should not prolong the agony for either party.  Under the circumstances, there is no logical or fair way to determine if a class exists, much less who is in it. Rule 23 is not designed as a means for one aggressive plaintiff to cast a big net to see what he or she can catch, whether a lobster or a trout or a porpoise.  A Rule 23 net must be aimed at some known species of sea creature, whether in the Atlantic or Pacific. And if a plaintiff is trolling instead of casting a net, the hook

14

must have better bait on it than this bait.

Grimes alternatively contends that the need for an ascertainable class is obviated because the *cy pres* doctrine of fluid recovery should be employed. Grimes does not cite an Eleventh Circuit case holding that *cy pres* is a permissible substitute for ascertainability in a Rule 23 case. Moreover, Grimes's own brief reveals that *cy pres* is only relevant when an objectively ascertainable class has been certified and the aggregate damages sustained by the class have been proven. Grimes specifically argues that "**[w]here aggregate damages suffered by a class are shown**, courts have employed the 'fluid recovery' or *cy pres* model to handle manageability issues created by the inability to identify class members." (Pl.'s Br. in Supp., at 19) (emphasis added). Rave correctly points out that *cy pres* has only been employed when dealing with "**settlement funds** after those class members who could be identified with reasonable effort received their distribution." *Hoffer v. Landmark Chevrolet Ltd.*, 245 F.R.D. 588, 604 (S.D. Tex. 2007) (emphasis added). There is no precedent for using *cy pres* to distribute somehow aggregated **statutory** damages the owners of which are unknown, especially if each class member is guaranteed a minimum recovery of $100.

## II. Rule 23(a) requirements

Grimes blithely assumes that she has surmounted the ascertainability hurdle and asserts that the claims of the putative

class satisfy the commonality and typicality requirements of Rule
23(a).  She is wrong.  Her proposed limitation of class membership
to those "persons to whom the Defendants provided an electronically
printed purchase receipt at the point of sale or transaction, in a
transaction occurring after December 4, 2006, which receipt
displayed more than the last five digits of the person's credit
and/or debit card number," and her proposed elimination of those
persons who have "incurred actual damages as defined in said
statute," still leave it impossible to determine who the members of
the class are so that their claims can be compared for similarity
or dissimilarity.  (Pl.'s Br. in Supp., at 1.)  There may well be
some entities within this proposed class who are corporations and
thus subject to a defense not available to human consumers.  There
also may well be consumers within the class description who are not
victims of a "willful" violation.  There would be no purpose served
by including someone in the class who received a non-compliant
receipt by accident.  FACTA requires a **willful** act.  Also, there is
a question as to the **degree** of willfulness or disregard for FACTA,
a determination that arguably could result in different damages
between the minimum $100 and the maximum $1,000, or does one
mistake committed between December 4, 2006, and August 9, 2007,
create a statutory claim for all to enjoy the fruits of a similar,
if not identical, mistake?  Last but not least is the failure of
the class definition or Grimes's proposed notice to advise

16

consumers who received more than one non-compliant receipt that they may be entitled to more than one dose of statutory damages.

The court can readily imagine the following possible scenarios:

(1)   Customer walks up to the ticket booth and asks for a ticket, presenting a credit card. Seller informs customer that Rave has a computer problem and therefore can only accept cash. The customer says, "I don't have cash, and if you don't take my card, I'll never come back." "I really wanted to see this movie." The seller says, "You, apparently, do not know about the Fair and Accurate Credit Reporting Act." The customer says, "Don't worry about it." "I know all about the Act and I won't sue you." Rave's employee takes the credit card and issues a noncompliant receipt.

(2)   At a kiosk, Rave's machine malfunctions after a technician, sent by Rave, has tried unsuccessfully to fix the machine to make it comply with FACTA. It nevertheless delivers a noncompliant receipt. (The court hates to admit it, but its computer sometimes makes a mistake. In fact, the Supreme Court's computer has malfunctioned.)

(3)   Rave's employee in the ticket booth is brand new on the job, and FACTA has not been explained to her. Rave's corporate counsel and management is busily studying FACTA, trying to decide what to do about it. The employee issues a noncompliant receipt before she receives training or a compliant terminal.

(4)   Ticket seller says to customer, "Excuse me. I think our computer terminal is non-compliant with FACTA, so I will write you a handwritten receipt." The customer says "I am in a hurry to beat the crowd," and insists on a non-compliant receipt. After the customer receives the non-compliant receipt, he promptly gets out of line and runs to his lawyer's office.

17

> (5) Upon noticing a FACTA violation, a customer
> buys 100 separate tickets and invites all his
> friends to do the same, arguably creating
> numerosity, and also hoping to create an
> automatic entitlement to between $100 and
> $1,000.  Alternatively, if he worries so much
> about someone stealing his identity that he
> suffers damages in the form of mental anguish,
> he may decide to pursue actual damages,
> forgoing his assumed $100 to $1,000.

Which of these scenarios, if any, would create a cause of action under FACTA?  Grimes apparently believes that all of them would. The combinations and permutations are so myriad as to eschew commonality and typicality.

Grimes's proposed class notice is conspicuously entitled "Class Action **Settlement** Notice" (emphasis added), as if the case has been settled.  A class action cannot be settled until the class has been certified and its members notified.  How does Grimes propose to communicate with those unknown and unnamed plaintiffs who do not opt-out and are therefore automatically opted-in? "Commonality" and "typicality" requirements are not and cannot be met when the class is this ephemeral.

Assuming *arguendo* that Grimes has met the commonality and typicality requirements, she nevertheless fails to meet the numerosity requirement.  Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable*."*  Rule 23(a), F.R. Civ. P.  Although a plaintiff is not required to establish the exact number of class members, "[m]ere speculation and unsubstantiated allegations as to numerosity . . . are

insufficient to satisfy Rule 23(a)(1)." *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 537-38 (N.D. Ala. 2001).  There is no bright-line number of plaintiffs to satisfy the numerosity requirement, but "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1533 (11th Cir. 1986); *see also* 5 James Wm. Moore et al., Moore's Federal Practice § 23.21[1][b] n.6 (3d ed. 2007).  Grimes does not establish a class of 21 or more.  Her only argument regarding numerosity is that "[i]t is reasonable to deduce that the number of class members is in the thousands."   (Pl.'s Br. in Supp., at 6.) This court has nothing against Aristotlian powers of deduction, nor, for that matter, any objection to the use of common sense, but Grimes's leap of faith is based only on the fact that "[b]etween December 4, 2006, the effective date of [FACTA], and August 3, 2007, the date the complaint was served on Defendant, each of the 26 theaters sold somewhere between 755,000 and 5.5 million tickets." (Pl.'s Br. in Supp., at 6-7.)  Rave probably hopes that it has repeat customers.  The number of tickets sold does not prove which or how many customers received non-compliant receipts. Grimes has been unable to identify a single person, other than herself, who received a receipt at one of Rave's self-serve kiosks or point of sale terminals and who had more than the last 5 digits of his or her debit or credit card printed on it.  To repeat the

obvious, this class is unascertainable because neither Grimes nor Rave can provide a way to determine the number or identity of class members.  Guess work is not a substitute for logic and common sense.  If, hypothetically, and contrary to every indication in the record, there was a minimum of 755,000 FACTA violations, as suggested by Grimes, and each violation created an obligation of at least $100 to each customer, the constitutional issue of confiscation would again raise its ugly head and no longer be premature.  Nevertheless, this court will not address that issue because it would be unnecessary to this decision.  During oral argument Grimes conceded that under FACTA no member of the class, under any circumstances, can receive any less than the $100 statutory minimum.  Simple arithmetic says that $100 x 755,000 = $75,500,000, any way you slice it, and that's real money.

Rave's argument that Grimes cannot adequately represent the absent class members, is unpersuasive, if unneeded.  Adequacy of representation is measured by the following 5 factors:

> (1)  "'whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation'"; (2)  "'whether plaintiffs have interests antagonistic to those of the rest of the class'"; (3) whether the named plaintiffs "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative"; (4) whether the named plaintiffs have "demonstrated [s]ufficient participation in and awareness of the litigation"; and (5) whether the named plaintiffs have the ability to fund the litigation.

*Shelley v. AmSouth Bank*, No. CIV.A.97-1170-RV-C, 2000 WL 1121778,

at *5 (S.D. Ala. July 24, 2000) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-27 (11th Cir. 1987)). However, "[t]he requirements of commonality, typicality and adequacy 'tend to overlap.' *Id.* (citing *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)). Rave points out that Grimes is unaware of the legal intricacies of her Rule 23 action and simply defers to the judgment of her attorneys. Rave does not quarrel with the qualifications of the putative class attorneys. Instead, Rave argues that the fact that Grimes testifies that she will do whatever her lawyers tell her to do to fulfill her role as class representative is dispositive evidence of her failure meaningfully to participate in the litigation. To require Grimes to make strategy or legal decisions in the prosecution of her action would be to expect her to act as her own lawyer. Although the court has doubts about a single individual's representing an undeterminable number of people in a large number of states, Grimes has demonstrated the level of engagement to pass muster under the Rule 23(a)(4) adequacy requirement. Unless class representatives "'have abdicated their role in the case beyond that of furnishing their names as plaintiffs," the requirement that a class representative adequately represents the interests of the absent class members will be satisfied. If this were a case for class treatment, which it is not, Grimes would be an adequate class representative. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir.

21

1987) (quoting *Helfand v. Cenco*, 80 F.R.D. 1, 7-8 (N.D. Ill. 1977)).

## III.  Rule 23(b)(3) requirements

In addition to the requirements of Rule 23(a), a class action must also fit within **one** of the 3 classifications listed in Rule 23(b).  Here, Grimes only claims that she meets the requirements of subsection (3) of section (b).  To proceed under subsection (b)(3) a plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3), F.R. Civ. P.

Class actions are designed to conserve resources, increase efficiency, and promote uniformity, by litigating many similar claims in one case.  As the number of claimants increases, the superiority of class treatment also theoretically increases, because both judicial and attorney resources are reduced. Additionally, the risk of numerous inconsistent judgments is lessened by class treatment.  Finally, allowing the claims of numerous litigants to be decided in a single forum opens the courthouse doors to plaintiffs who, for financial reasons, would not be able to litigate viable claims.  However, class actions are not without societal costs.  Giving appropriate notice to a class can be an expensive, onerous task, especially in a case like this

one.  And, supervising a class action can be a drain on scarce judicial resources.  The smaller the class, and the more manageable separate individual actions are, the less desirable class treatment becomes.

In this case, Rave's audit of its point of sale terminals and kiosks reveals, without contradiction at this stage, that the problems that caused some FACTA non-compliant receipts to be generated were "random" and "isolated," a contention with which Grimes cannot quarrel except by speculation.  As of now Grimes is the only person who has been identified as having received a Rave receipt that exposed more than the last 5 digits of a credit card. Any class notice, no matter how prominently displayed and promoted, is not likely to elicit a class large enough to make class treatment the superior method of adjudication.  By denying class certification the court will likely be protecting plaintiff and plaintiff's counsel from themselves.  Moreover, because FCRA provides for an award of attorney's fees and costs in addition to statutory damages, *see* 15 U.S.C. § 1681n(a)(3) (2006), there is no financial impediment for a person who receives a non-compliant receipt from finding a good lawyer to bring an individual claim. According to Grimes, a person who seeks only statutory damages need only file suit, present his or her FACTA non-compliant receipt, prove some knowledge about FACTA by the vendor, and await a jury award of between $100 and $1,000, plus attorney's fees and costs,

and even punitive damages if the court finds that punitive damages are called for.  Individual actions are not only feasible, but they are much more manageable than a class action would be, especially where there might be victims in many states.  A class action is clearly not the superior method for fairly and efficiently adjudicating this controversy, that is if a controversy actually exists beyond the one between Grimes and Rave.  Grimes has not met the requirements of Rule 23(b)(3).  *See Bateman v. American Multi-Cinema, Inc.*, 252 F.R.D. 647 (C.D. Cal. 2008), which is now on appeal to the Ninth Circuit.

### CONCLUSION

Because Grimes has failed to show that the proposed class is objectively ascertainable, that her claim is common or typical of those of her proposed class, that the class is so numerous that individual treatment is impracticable, and that class treatment is the superior method of fairly and efficiently adjudicating the controversy, Grimes's motion for class certification will be denied by separate order.

DONE this 29th day of January, 2010.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE